Exhibit A

FILED

## AFFIDAVIT OF SERVICE

2020 OCT 27 PM 4: 12

**State of Kansas**

**County of Wyandotte**

CLE~~K~~ ME ~~D~~ ~~COURT~~
~~WYAN~~ ~~IT~~Y :**District Court Court**

R

PNL2020004611

Case Number: 2020-CV-000526

Plaintiff:
**EPHRAIM WOODS JR**

vs.

Defendant:
**KENDRA ROSS; MCGUIREWOODS LLP; CHERYL ROSS**

Received by JSSI Process Server on the 1st day of October, 2020 at 8:35 am to be served on **CHERYL ROSS, 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111**.

I, OTHNIEL PENN, being duly sworn, depose and say that on the **1st day of October, 2020** at **5:46 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **SUMMONS; PETITION FOR DAMAGES** with the date and hour of service endorsed thereon by me, to: **CHERYL ROSS** at the address of: **3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
10/1/2020  5:46 pm  SERVICE COMPLETE at 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111,

**Description** of Person Served: Age: 54, Sex: F, Race/Skin Color: Black, Height: 5'9, Weight: 200, Hair: Black, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. I have personal knowledge of the facts stated herein and they are true and correct.

JULIA ACOSTA
STATE
OF
TENNESSEE
NOTARY
PUBLIC
COUNTY OF SHELBY

Subscribed and Sworn to before me on

_____ day of __OCT__ , __2020__
by the affiant who is personally known to
me or produced identification.

X _____
NOTARY PUBLIC

My Commission Expires _____ 3/2 20 24

**OTHNIEL PENN**
PROCESS SERVER # B-233

**JSSI Process Server**
**3485 Poplar Aveune**
**Suite 207**
**Memphis, TN 38111**
**(901) 324-7006**

Our Job Serial Number: PNL-2020004611
Ref: 2020-CV-000526

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

**DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS**

Petitioner/Plaintiff
  Ephraim Woods Jr

Respondent/Defendant
  Cheryl Ross
  3547 Spottswood Ave
  Memphis, TN 20006

SERVED

Service of Process
by
JSSI Process Server

**SUMMONS**
**(Out of State)**

**2020-CV-000526**

To the above named respondent:

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer to the petition with this court and to serve a copy upon the petitioner's attorney, , , , , within 30 days after service of summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition. Any related claim which you may have against the petitioner may be stated as a counterclaim in your answer, or you will thereafter be barred from making such claim in any other action.

Kristi L. Hill
Clerk of the District Court

Dated:   9/9/2020

Deputy Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*   **RETURN OF SERVICE OF SUMMONS**   \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I hereby certify that I have served this summons:**

☑ (1) Personal service By delivering a copy of the summons and a copy of the petition to each of the following defendants on the dates indicated: _OCTO,SFL_ ,20 _20_.

☐ (2) Residence service. By leaving a copy of the summons and a copy of the petition at the usual place of residence of each of the following defendants on the dates indicated:_____ , 20_____.

☐ (3) Residence Service and Mailing. By leaving a copy of such summons and a copy of the petition at the usual place of residence of the defendant and mailing by first-class mail a notice that such copies have been left on _____ , 20_____ at _____.

☐ (4) Agent Service. By delivering a copy of such summons and a copy of the petition to the agent, _____, authorized by appointment or by law to receive service of process on _____ , 20 _____.

☐ (5) No service. The following defendants were not found in this county:

Dated:   _10/1/20_

(Signature)

461(

JSSI Process Server

**Prio..., STANDARD**

Received: 10/1/2020 at 8:35 am
**Court Date:      Filed:**

SERVED

**Field Sheet #2020004611**



**SERVE:**
**CHERYL ROSS, 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111**

**SPECIAL INSTRUCTIONS:**
**Attempts**          Server: **OTHNIEL PENN**   URGENT          **SUMMONS**

| Date | Time | Comments |
|------|------|----------|
| 1. 10/1 | 1:56P | N/A |
| 2. 10/1 | 5:46P | SERVED |
| 3. / | | |
| 4. / | | |
| 5. / | | |
| 6. / | | |
| 7. / | | |
| 8. / | | |

**Actual Service Info**
10/1/20  5:46P  Type: ___INV___          Married?_____
Served on: CHERYL ROSS          Military?_____          As:_____
Address:_____
Comments:_____
_____
_____

Miles_____
Hours_____
Additional Addr: 1  2  3
Courier_____
Out of Pocket Costs
_____  _____
_____  _____
_____  _____

Age 54   Sex M (F)   Race BLACK   Height 5'9   Weight 200   Hair BLACK   Glasses Y (N)

Case Number: 2020-CV-000526   Wyandotte   District Court
Plaintiff                                    Defendant
EPHRAIM WOODS JR                   CHERYL ROSS

Type of Writ: **SUMMONS; PETITION FOR DAMAGES**

Client:  EPHRAM WOODS
Firm:    EPHRAIM WOODS
Phone:   (913) 314-0299    Fax:
Client Reference Number:  2020-CV-000526



I acknowledge that I am in receipt of the legal papers named
herein and that they were presented to me by the process server

Cheryl Ross
PRINT NAME OF RECIPIENT

_____          10-1-2020
SIGNATURE OF RECIPIENT          DATE

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8 1c

October 16, 2020

Cheryl Ross (Defendant)

3547 Spottswood Ave

Memphis, Tennessee 38111



I Herein state as the defendant of said cases listed below in acknowledgment of said summons from petitioners from the District Court Wyandotte County, Kansas regarding complaints as to file suit against Cheryl Ross. I Cheryl Ross accept the summons and therefore I Cheryl Ross (Defendant) will be prepared to appear in court. Therefore within this acknowledgement are all petitioners case numbers and petitioners names.

2020-CV-000537 Dwight Johnson

2020- CV-000536 Fatimah Muhammad

2020-CV-00538 Raasikh Robertson

**2020-CV-000526 Ephraim Woods**

10-19-2020

Signature

Notary Signature        10-19-2020

My Commission Expires
September 20, 2021

## DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS

Petitioner/Plaintiff
    Ephraim Woods Jr

Respondent/Defendant
    Cheryl Ross
    3547 Spottswood Ave
    Memphis, TN 20006

### SUMMONS
#### (Out of State)

**2020-CV-000526**

To the above named respondent:

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer to the petition with this court and to serve a copy upon the petitioner's attorney, , , , , within 30 days after service of summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition. Any related claim which you may have against the petitioner may be stated as a counterclaim in your answer, or you will thereafter be barred from making such claim in any other action.



Kristi L. Hill
Clerk of the District Court

_____
Deputy Clerk

Dated:  9/9/2020

*************************  **RETURN OF SERVICE OF SUMMONS**  *************************

**I hereby certify that I have served this summons:**

☐ (1) Personal service By delivering a copy of the summons and a copy of the petition to each of the following defendants on the dates indicated: _____ ,20_____ .

☐ (2) Residence service. By leaving a copy of the summons and a copy of the petition at the usual place of residence of each of the following defendants on the dates indicated:_____ , 20_____ .

☐ (3) Residence Service and Mailing. By leaving a copy of such summons and a copy of the petition at the usual place of residence of the defendant and mailing by first-class mail a notice that such copies have been left on _____, 20_____ at _____.

☐ (4) Agent Service. By delivering a copy of such summons and a copy of the petition to the agent, _____, authorized by appointment or by law to receive service of process on _____, 20_____ .

☐ (5) No service. The following defendants were not found in this county:

Dated: _____    _____
                                                     (Signature)

FILED
2020 DEC 17 PM 3:
CLERK DISTRICT COURT
WYANDOTTE COUNTY KANS.
BY
DEPUTY

**IN THE TWENTY-NINTH JUDICIAL DISTRICT COURT, WYANDOTTE COUNTY, KANSAS CIVIL DEPARTMENT**

## MOTION FOR DEFAULT JUDGEMENT

Ephraim Woods
Private Individual
2111 N. 10th Street
Kansas City, KS 66104
Petitioner

CASE #: **2020-CV-0526**

DIVISION NO. 3

vs.

**KENDRA ROSS** (Daughter)
Private Individual
782 Saxon Court
Charlottesville, VA 22901

Ward of:
Gillian Chadwick
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621
*and*
MCGUIREWOODS LLP
Elizabeth A. Hutson, Jonathan T. Blank,
Katlyn Farrell, Benjamin P. Abel
2001 K Street NW, Suite 400
Washington, DC 20006

As her residence is allegedly under protection the above is being served on **KENDRA ROSS'** behalf.

**CHERYL ROSS** (Mother)
Private Individual
3547 Spottswood Ave.
Memphis, TN 38111
Defendant(s)

# MOTION OF DEFAULT JUDGEMENT

I, Petitioner EPHRAIM WOODS pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and Rule 77.2(I)(6) of the Local Rules for the United States District Court for the District of Kansas and Kansas Statute 60-255 - Default and KANSAS 29TH JUDICIAL DISTRICT LOCAL RULE 206 - DEFAULT

OR UNCONTESTED HEARINGS respectfully requests that the Judge enter default against Defendants Kendra Ross and Cheryl Ross. In support of this request, Plaintiff relies upon the record in this case, the Court's Memorandum and Order stating that all Defendants "have been served with process and the time has passed for each to answer or otherwise respond to Plaintiff's Complaint and the affidavit submitted herein. I, being the plaintiff intend to file a motion for default judgment presenting evidence for damages pursuant to Rule 55(b) of the Federal Rules of Civil Procedure if this Request is granted and the Clerk enters default against the Defendants.

Respectfully submitted,

_____                          Date: 12/17/2020_____

EPHRAIM, last name of woods
Private Individual
2111 N. 10th Street
Kansas City, KS 66104

# AFFIDAVIT OF SERVICE AND SUPPORT OF REQUEST FOR DEFAULT

I, EPHRAIM WOODS state as follows:

1. I am the plaintiff of Record in the above-captioned matter and I am familiar with the file, records, and pleadings in this matter.

2. The complaint/statement of claim was filed on September 11th, 2020.

3. Summons were issued to Defendants Kendra Ross and Cheryl Ross, respectively.

4. Defendant Cheryl Ross was served with a copy of the summons and complaint on October 1st, 2020, as reflected on the ROA Report by the proof of service filed on October 27th, 2020.

5. Defendant Kendra Ross was served with a copy of the summons and complaint on October 1st, 2020, as reflected on the ROA Report by the proof of service filed on October 27th, 2020.

6. Kendra Ross and Cheryl Ross' answer to the complaint was due on November 1st, 2020 for Cheryl Ross and November 7th, 2020 for Kendra Ross, respectively.

7. As of this filing at least 30 additional days for a response on top of the procedural 30 day time frame has been allotted.

8. Defendants have failed to appear, plead, or otherwise defend within the time allowed and therefore are now in default.

9. Plaintiff requests that the clerk of court enter default against Defendants Kendra Ross and Cheryl Ross.

Respectfully submitted,

AFFIANT SIGNATURE: _Quee NMB_          Date: _12/17/20_
EPHRAIM, WOODS JR.
Private Individual
2111 N. 10th Street
Kansas City, KS 66104

NOTARY SIGNATURE: _Jacqueline Punch_          SEAL:

Jacqueline E. Punch_____
NOTARY PRINTED FULL LEGAL NAME:

```
JACQUELINE PUNCH
Notary Public – State of Kansas
My Appointment Expires /2 /2 20 21
```

Acknowledgement:

STATE OF KANSAS_____COUNTY OF WYANDOTTE_____
The foregoing instrument was acknowledged before me this 17th day of December, 2020 by Ephraim Woods Jr. who is personally known to me or who has produced a valid state government identification card.

# CERTIFICATE OF SERVICE

I EPHRAIM, "last name of woods" certify that on  December 17th, 2020 I sent a true copy of this filing to Cheryl Ross, Kendra Ross and all other relevant parties involved at the addresses listed below via first class mail, postage prepaid:

Date: 12/17/2020_____

Ephraim "last name of woods"
2111 N. 10th Street
Kansas City, KS [66104]


**Kendra Ross**
Private Individual
782 Saxon Court
Charlottesville, VA 22901

**And**

**Kendra Ross**
Ward of:
**Gillian Chadwick of**
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621

and

**Kendra Ross**
**Ward of:**
**MCGUIREWOODS LLP**
Elizabeth A. Hutson, Jonathan T. Blank,
Katlyn Farrell, Benjamin P. Abel
2001 K. Street NW Suite 400
Washington, DC 20006

As her (Kendra Ross) residence is allegedly under protection the above is being served on Kendra Ross' behalf.

**Cheryl Ross**
Private Individual
3547 Spottswood Ave.
Memphis TN 38111

**DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS**

Petitioner/Plaintiff
    Ephraim Woods Jr

Respondent/Defendant
    Cheryl Ross
    3547 Spottswood Ave
    Memphis, TN 20006

**SUMMONS**
**(Out of State)**     **2020-CV-000526**

To the above named respondent:

You are hereby notified that an action has been commenced against you in this court.  You are required to file
your answer to the petition with this court and to serve a copy upon the petitioner's attorney, , , , , within 30
days after service of summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.  Any
related claim which you may have against the petitioner may be stated as a counterclaim in your answer, or you
will thereafter be barred from making such claim in any other action.

Kristi L. Hill
Clerk of the District Court

Dated:   9/9/2020

_____
Deputy Clerk

*********************     **RETURN OF SERVICE OF SUMMONS**     *********************

**I hereby certify that I have served this summons:**

☑ (1)  Personal service By delivering a copy of the summons and a copy of the petition to each of the following
    defendants on the dates indicated: _____ ,20 _____ .

☐ (2)  Residence service.  By leaving a copy of the summons and a copy of the petition at the usual place of
    residence of each of the following defendants on the dates indicated: _____ , 20 _____ .

☐ (3)  Residence Service and Mailing.  By leaving a copy of such summons and a copy of the petition at the usual
    place of residence of the defendant and mailing by first-class mail a notice that such copies have been left on
    _____ , 20 _____ at _____ .

☐ (4)  Agent Service.  By delivering a copy of such summons and a copy of the petition to the agent,
    _____ , authorized by appointment or by law to receive service of process on
    _____ , 20 _____ .

☐ (5)  No service.  The following defendants were not found in this county.

Dated: _____

_____
(Signature)

## AFFIDAVIT OF SERVICE

**State of Kansas**                    **County of Wyandotte**                    **District Court Court**

Case Number: 2020-CV-000526

Plaintiff:
**EPHRAIM WOODS JR**

vs.

Defendant:
**KENDRA ROSS; MCGUIREWOODS LLP; CHERYL ROSS**

Received by JSSI Process Server on the 1st day of October, 2020 at 8:35 am to be served on **CHERYL ROSS, 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111.**

I, OTHNIEL PENN, being duly sworn, depose and say that on the **1st day of October, 2020** at **5:46 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **SUMMONS; PETITION FOR DAMAGES** with the date and hour of service endorsed thereon by me, to: **CHERYL ROSS** at the address of: **3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
10/1/2020 5:46 pm SERVICE COMPLETE at 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111.

**Description of Person Served:** Age: 54, Sex: F, Race/Skin Color: Black, Height: 5'9, Weight: 200, Hair: Black, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. I have personal knowledge of the facts stated herein and they are true and correct.



Subscribed and Sworn to before me on

_____ day of _____, _____
by the affiant who is personally known to
me or produced identification.

X _____
NOTARY PUBLIC

My Commission Expires _____ 3/ 20 2 ?

**OTHNIEL PENN**
PROCESS SERVER # B-233

**JSSI Process Server**
**3485 Poplar Aveune**
**Suite 207**
**Memphis, TN 38111**
**(901) 324-7006**

Our Job Serial Number: PNL-2020004611
Ref: 2020-CV-000526

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

# JSSI Process Server

**Prio..._. STANDARD**

**Field Sheet #2020004611**



Received: 10/1/2020 at 8:35 am
**Court Date:**     **Filed:**

## SERVE:
## CHERYL ROSS, 3547 SPOTTSWOOD AVE, MEMPHIS, TN 38111

**SPECIAL INSTRUCTIONS:**

**SUMMONS**

| Attempts | | Server: **OTHNIEL PENN** | |
|---|---|---|---|
| Date | Time | Comments | |
| 1. | | | |
| 2. | | | |
| 3. / | | | |
| 4. / | | | |
| 5. / | | | |
| 6. / | | | |
| 7. / | | | |
| 8. / | | | |

**Actual Service Info**

_____ _____ Type: _____     Married? _____
    Military? _____     Miles _____
Served on: _____ As: _____     Hours _____
Address: _____     Additional Addr:  1  2  3
Comments: _____     Courier _____
_____     Out of Pocket Costs
_____
_____
_____

Age _____  Sex M F  Race _____  Height _____  Weight _____  Hair _____  Glasses Y N

Case Number: 2020-CV-000526   Wyandotte  District Court
Plaintiff     Defendant
EPHRAIM WOODS JR     CHERYL ROSS

Type of Writ: **SUMMONS; PETITION FOR DAMAGES**

Client:  EPHRAM WOODS
Firm:   EPHRAIM WOODS
Phone:  (913) 314-0299   Fax:
Client Reference Number:  2020-CV-000526



I acknowledge that I am in receipt of the legal papers named
herein and that they were presented to me by the process server

_____
PRINT NAME OF RECIPIENT

_____
SIGNATURE OF RECIPIENT          DATE

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8 1c

**DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS**

Petitioner/Plaintiff
    Ephraim Woods Jr

Respondent/Defendant
    Kendra Ross
    782 Saxon Court
    Charlottesville, VA 22901

**SUMMONS**
**(Out of State)**          **2020-CV-000526**

To the above named respondent:

You are hereby notified that an action has been commenced against you in this court.  You are required to file
your answer to the petition with this court and to serve a copy upon the petitioner's attorney, , , , , within 30
days after service of summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.  Any
related claim which you may have against the petitioner may be stated as a counterclaim in your answer, or you
will thereafter be barred from making such claim in any other action.



Kristi L. Hill
Clerk of the District Court

Dated:   9/9/2020

Deputy Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*    **RETURN OF SERVICE OF SUMMONS**    \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I hereby certify that I have served this summons:**

☐   (1)   Personal service By delivering a copy of the summons and a copy of the petition to each of the following
           defendants on the dates indicated: _____ ,20_____ .

☐   (2)   Residence service.  By leaving a copy of the summons and a copy of the petition at the usual place of
           residence of each of the following defendants on the dates indicated:_____ , 20_____ .

☑   (3)   Residence Service and Mailing.  By leaving a copy of such summons and a copy of the petition at the usual
           place of residence of the defendant and mailing by first-class mail a notice that such copies have been left on
           _OCTOBER 7th_____ , 20 _20_  at _10:13 am_____ .

☐   (4)   Agent Service.  By delivering a copy of such summons and a copy of the petition to the agent,
           _____ , authorized by appointment or by law to receive service of process on
           _____ , 20_____ .

☐   (5)   No service.  The following defendants were not found in this county:

Dated: _11/9 /2020_____          _____
                                                                                          (Signature)



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

McGuireWoods LLP
200 "K" STREET NW
SUITE #400
WASHINGTON, DC 20006

9590 9402 5694 9346 2376 88

2. Article Number (Transfer from service label)
7019 0160 0000 9234 2888

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type

2020 OCT 27 PM 4:10   FILED

USPS TRACKING #

9590 9402 5694 9346 2376 88

United States Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, address, and ZIP+4® in this box®

EPHRAIM WOODS
2111 N. 10th STREET
KANSAS CITY, KS 66104



**IN THE 29th JUDICIAL DISTRICT
DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
710 N. 7th Street
Kansas City, KS 66101**

EPHRAIM, last name of woods
Private Individual
2111 N. 10th Street                                    CASE #: **2020-CV-000526__**
Kansas City, KS [66104]
Petitioner

vs.

**KENDRA ROSS** (Daughter)                             **DIVISION NO. 3**
Private Individual
782 Saxon Court
Charlottesville, VA 22901

Ward of:
Gillian Chadwick
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621
*and*
MCGUIREWOODS LLP
Elizabeth A. Hutson, Jonathan T. Blank,
Katlyn Farrell, Benjamin P. Abel
2001 K Street NW, Suite 400
Washington, DC 20006

As her residence is allegedly under protection the above is being served on **KENDRA ROSS'** behalf.

**CHERYL ROSS** (Mother)
Private Individual
3547 Spottswood Ave.
Memphis, TN 38111
Defendant(s)

## MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

COMES NOW the Petitioner EPHRAIM WOODS to request that the clerk of court enter a default for a default judgement against defendant Kendra Ross and Cheryl Ross, pursuant to Federal Rule of Civil Procedure 55(a). The return date in this matter was November 2nd, 2020.

As of the date of filing this motion, the Defendant(s) have not filed an Appearance with the Court. I, the plaintiff, EPHRAIM WOODS respectfully submit this Memorandum in support of Default judgment in the amount of $1,740,000 against defendants Kendra Ross and Cheryl Ross. In support of this motion for default judgment I have enlisted the following facts:

## I. INTRODUCTION

On September 5th, 2017 Kendra Ross with the help and support of MCGUIREWOODS LLP and Gillian Chadwick of Washburn University School of Law filed a civil complaint against Royall Jenkins, The United Nation of Islam, The Value Creators and The Promise Keepers "herein after: The United Nation of Islam et al".

Throughout the time of her open federal case Kendra Ross has used the system of law (or the color of it) in her favor by painting a fraudulent picture of a victim who has been trafficked throughout the United States of America without the consent of her mother, treated like chattel property and cheaply discarded as being less than human.

Kendra Ross by and through MCGUIREWOODS LLP lawyers and Washburn University School of Law via attorney/professor Gillian Chadwick have painted Royall Jenkins the community of The United Nation of Islam et al as being nothing more than a human/sex trafficking cult through their personal media appearances and public civil complaint filings.

Not one truthful fact has been presented during the time of her open federal case; only misinterpreted information used to plagiarize what Royall Jenkins and The United Nation of Islam et al has established for their own personal pursuit of unjust enrichment. While conveniently and purposely omitting all of the progress that Royall Jenkins and The United Nation of Islam et al established around the USA and specifically here in Kansas City, KS such as: housing, a Diner, Service Station, School, Laundromat, Wellness Center, Civilization Center, Supermarket/Bakery, Construction Company, Sewing Factory, Barber Shop, Coach and School Buses (most of which was other peoples junk which We revitalized and renewed, ergo – *from things to people*).

All of the aforementioned (and more) where set-up as classrooms offering healthier eating options, clean and renovated living opportunities, education that reaches beyond job training, natural healing modalities, industrial innovations etc in areas where opportunities of such are generally zero to none (like in the Quindaro corridor; the same corridor where my dad grew up at 107 Quindaro Blvd and graduated from Sumner High class of 51' or my Grand Dad toiling in Armours packing house for decades).

However, we're just a human and sex trafficking cult; by Kendra Ross' fraudulent account.

On May 23rd, 2018 this same court case ended by way of a motion to default to the courts claiming that there was no adequate representative on Royall Jenkins and The United Nation of Islam et al' behalf.

On September 11th, 2020 I, EPHRAIM, last name of woods being a former and current member of these communities filed a civil complaint explaining that Kendra Ross' fraudulent and ridiculous accusations that she and her occult of lawyers concocted are false and a complete misinterpretation - to which - her mother Cheryl Ross should have came forward, intervened and told the truth concerning Royall Jenkins and what The United Nation of Islam et al and all it's true members who participated stood for.

I presented facts which included under the agreed contract of each participating individual within the community known as The United Nation of Islam; that when anyone became a member of the community they were informed of the guidelines and terms of the existing conditions to live and operate within the community (whether in a Fulltime or Part Time capacity). Those who choose to join and/or live in the community agreed to the terms of the contract; if you refuse to live by the terms of the contract then you were free to leave at any time. These facts show that no one was being bound and held the way it was interpreted by Kendra Ross by and through MCGUIREWOODS LLP and Gillian Chadwick of Washburn University School of Law so deceitfully displayed in their civil complaint and court hearings.

Kendra Ross and her siblings were given food, clothing, shelter, bills and expenses paid without the financial assistance from her mother. Kendra Ross received an education, healthcare at will, transportation expenses paid, clothing and more. Like in any *civilized* home around the world a child is required to participate with duties/chores in the home/community. This may include but it's not limited to: cooking, cleaning, childcare for smaller children. It is not a crime nor is it _forced labor_ for a minor to participate in said activities. 'IF' the aforementioned activities is a crime then I've made a huge oversight and I will pursue clarity as to what is lawful and unlawful as it pertains to 'household duties' and a minor child's involvement in said activity (ex. I guess I'm supposed to pay my 11 year old son to take out the trash each week; even though I'm already paying Deffenbaugh to pick it up?).

Throughout the time of the Ross vs. Jenkins et al federal case there were no facts, evidence or sworn affidavit(s) on record from Kendra Ross' mother (Cheryl Ross) verifying that she was abducted or human trafficked. Furthermore, you cannot find on the record in any of Kendra Ross' federal court filings where she stated that she (Kendra Ross) was ever raped, loaned out for sexual favors, mentally or physically assaulted by ANYONE in our community nor can it be found ONE firsthand witness to substantiate any of her false accusations.

Kendra Ross' mother brought Kendra Ross and her other siblings to The United Nation of Islam at a young age. Kendra Ross' mother Cheryl Ross was fully aware of the rules and instructions that involved being part time or full time; because all members were informed of these matters upon entering into the community. With that said there is no crime in Kendra Ross traveling since her mother Cheryl Ross was aware and gave consent.

## II. RELEVANT FACTUAL BACKGROUND

Kendra Ross by and through MCGUIREWOODS LLP and Gillian Chadwick of Washburn University School of Law placed in her civil complaint that Royall Jenkins runs a cult that operates from the base of forced labor by its members. This is a very false and bold statement made by individuals that have no firsthand knowledge of how the community operates because they were never a part of it.

The United Nation of Islam et al operated from a set of righteous principles that magnified peace and civilization. The United Nation of Islam had a system of both fulltime and part-time participants. Within the full time position you are informed before accepting a full time role that your bills and expenses will be paid. The circumstances of how your bills are paid, how your expenses are paid, how you acquire funds, pocket cash, transportation, food, clothing, shelter, hair maintenance and more were all explained prior to one entering into Full or Part-time status.

This agreement is the same information that Cheryl Ross (Kendra Ross' mother) agreed to on behalf of her and her minor children at the time. With that being said The United Nation of Islam had businesses that served several purposes. The businesses served as a form of income to secure the full-time members by way of providing food, clothing, shelter, hygiene needs and more.

The businesses also served as classrooms for Youth and Youthful students to learn hands-on skills, pool our resources and broaden their thoughts beyond having a job into owning a business that uplifts communities and magnifies life. The businesses also served as a gateway to unlock the generational acceptance of poor eating habits, broken families, low morals, lack discipline and the lack of living an inspiring and fruitful life. This maxim is achieved by providing an example to cause the local citizens to operate these local businesses and interact with the people to show a new and tangible way of life.

There is no crime in presenting new positive ideas and giving others the opportunity to participate if they so choose. The businesses were usually located in predominantly African American neighborhoods because this is where it's NEEDED the most. Once again these are facts one would only know if you were a member, a client OR perhaps a lawyer who does their due diligence (in accordance with ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY: EC 7-5, EC 7-6, EC 7-9, EC 7-26, EC 7-28 and CANON 9) without the pursuit of monetary gain by way of subterfuge.

### III. PROCEDURAL BACKGROUND

1. On September 15th, 2017 Kendra Ross filed a civil complaint against Royall Jenkins and The United Nation of Islam et al.

2. On September 11th, 2020 I, EPHRAIM WOODS filed a civil complaint against Kendra Ross and her mother Cheryl Ross.

3. Cheryl Ross was served on October 1st, 2020 at 3547 Spottswood Avenue Memphis, TN 38111 by a registered process server.

4. Kendra Ross is currently and allegedly under witness protection and her address is unavailable therefore she was served by way of her current counsel of McGuireWoods LLP on October 7th, 2020.

5. In the state of Kansas you have 30 days to respond to a complaint filed against you.

6. The 30 day time period was up on November 1st, 2020 for Cheryl Ross and November 7th, 2020 for Kendra Ross.

7. During the 30 day timeframe for Kendra Ross and her mother Cheryl Ross there was no relative or acceptable legal response on record.

8. As of this filing I have allotted at least 30 additional days for a response on top of procedural 30 day time frame and I'm now filing this motion in request for a default judgment.

9. On October 2nd, 2020 a certified mailing of the complaint was sent to Washburn University School of Law via attorney/professor Gillian Chadwick as they are part of the law firm that has KENDRA ROSS under alleged witness protection.

10. Purportedly on October 28th, 2020 decided double down her wet signature by filing an *untitled* statement with the court that stated: "I Cheryl Ross accept the summons and therefore I Cheryl Ross {Defendant} will be prepared to appear in court." [Which contained no certificate of service or proof of service]

11. Allegedly, on December 5th, 2020 defendant Cheryl Ross attempted to answer my initial complaint with an unintelligible and nonsensical letter to the court that:

    a. did not address the court nor I properly and,

    b. did not follow the local rules (nor federal) of practice and procedure and,

    c. did not format her paperwork properly per court standards and,

    d. did not demonstrate any evidence or factual grounds based in KANSAS statutory law to show just cause for dismissal of my claim and,

    e. did not provide any firsthand witnesses to support her "request for dismissal" and,

f.  did not rebut the fact that she (Cheryl Ross w/ wet signature) signed the SUMMONS; PETITION FOR DAMAGES dated 10/1/2020 and knew the time frames allotted for a proper response and,

g.  did not request a continuance or extension of time to file a reasonable response and,

h.  apparently, willingly and purposefully decided not to adhere to rules of practice and procedure of this court and,

i.  does not demonstrate a proof of service to the plaintiff in any shape, form or fashion.

## IV. CONCLUSION

For all of the facts stated above (and more) I humbly ask for this case to be placed into default judgment. I ask that the defendants Kendra Ross and Cheryl Ross pay restitution in the amount of $1,740,000 for damages caused. I humbly ask that all charges/warrants against Royall Jenkins be dropped and Royall Jenkins be made whole with a clean record in the eyes of the law.

I request that a news article and social media presentment be released stating an apology from Kendra Ross to begin the process of cleaning up the heinous accusations that she spun and clung to as though a shred of it were true and factual.

Kendra Ross, Cheryl Ross, money, this lawsuit, a law firm or school (all put together) cannot instill dignity, courage, morality, faith or intelligence in me. However, the process of fighting back through this claim and placing it on the record builds character, strength, knowledge and the fearlessness needed to bring The Truth to Light in the annals of Universal Law.


Truthfully and Respectfully submitted,


_____ Date: December 17th, 2020

EPHRAIM, last name of woods
Private Individual
2111 N. 10th Street
Kansas City, KS 66104

## CERTIFICATE OF SERVICE

I EPHRAIM, "last name of woods" certify that on December 17th, 2020 I sent a true copy of this filing to Cheryl Ross, Kendra Ross and all other relevant parties involved at the addresses listed below via first class mail, postage prepaid:

_____Date 12/17/2020

Ephraim "last name of woods"
2111 N. 10th Street
Kansas City, KS [66104]


**Kendra Ross**
Private Individual
782 Saxon Court
Charlottesville, VA 22901

**And**

**Kendra Ross**
Ward of:
**Gillian Chadwick of**
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621

and

**Kendra Ross**
**Ward of:**
**MCGUIREWOODS LLP**
Elizabeth A. Hutson, Jonathan T. Blank,
Katlyn Farrell, Benjamin P. Abel
2001 K. Street NW Suite 400
Washington, DC 20006

As her (Kendra Ross) residence is allegedly under protection the above is being served on Kendra Ross' behalf.

**Cheryl Ross**
Private Individual
3547 Spottswood Ave.
Memphis TN 38111

MotionforDefaultJudgmentE.Woodsvs.K.Ross&C.Ross-12/7/2020

# IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

EPHRAIM WOODS
Plaintiff/Petitioner

2020 SEP -9  AM 10: 42

CLERK
WYANDE                KANSAS

BY

Vs

Case No. _20CV526_
Chapter 60

KENDRA ROSS and CHERYL ROSS
Defendant(s)/Respondent(s)

## REQUEST AND SERVICE INSTRUCTION FORM

To: The Clerk of the District Court

The Clerk of the Court will issue a Motion and Notice of Hearing in the above entitled action to (list name and address of the person(s) to be served)

**CHERYL ROSS**: Mother Private Individual 3547 Spottswood Ave. Memphis, TN 38111_____

**KENDRA ROSS**: Daughter Private Individual 782 Saxon Court Charlottesville, VA 22901_____

**Gillian Chadwick Washburn University School of Law** 1700 SW College Avenue Topeka, KS 66621__

**MCGUIREWOODS LLP** Jonathan T. Blank, Katlyn Farrell, Benjamin P. Abel, Elizabeth A. Hutson

2001 K Street NW, Suite 400 Washington, DC 20006_____

The Clerk is hereby instructed to effect service as follows:

__ a. Certified mail service by the undersigned pro se litigant, who understands that the responsibility for obtaining service shall be their own. The Return of Service (green card) must be filed with the Clerk of the Court prior to the Hearing date.

__ b. Personal Service through the Office of the Civil Process Server. (Party to be served must live in Wyandotte County, Kansas)

__ c. Personal Service through the Office of the Sheriff of_____ County, State of _____
      (A money order made out to that Sheriff's Office must accompany paperwork)

✓__ . K.S.A. 60-308 (a) Proof and Effect and (b) Submitting to Jurisdiction. Personal Service through a professional agent outside of this state.

Signature

IN THE 29th JUDICIAL DISTRICT
DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
710 N. 7th Street
Kansas City, KS 66101

EPHRAIM, last name of woods
Private Individual
2111 N. 10th Street
Kansas City, KS [66104]
Petitioner

CASE # 20CV526

vs.

**KENDRA ROSS** (Daughter)
Private Individual
782 Saxon Court
Charlottesville, VA 22901

Judge Klappee
# 6

Ward of:
Gillian Chadwick
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621
*and*
MCGUIREWOODS LLP
Elizabeth A. Hutson, Jonathan T. Blank,
Katlyn Farrell, Benjamin P. Abel
2001 K Street NW, Suite 400
Washington, DC 20006

As her residence is allegedly under protection the above is being served on **KENDRA ROSS'** behalf.

**CHERYL ROSS** (Mother)
Private Individual
3547 Spottswood Ave.
Memphis, TN 38111
Defendant(s)

### PETITION FOR DAMAGES

COMES NOW the Petitioner EPHRAIM WOODS and moves the Court to set a **Hearing and for Jury Trial** and in support of said motion lists the following reasons:

1. **BREACH OF CONTRACT AND MEMORANDUM OF AGREEMENT**
2. **DEFAMATION AND SLANDER**
3. **DAMAGES AND FULL RESTITUTION AND TO BE MADE WHOLE**

and attaches a copy of (his/her) documentation to support said argument.

## PARTIES

1. At all times relevant to the allegations contained herein, Plaintiff was, and still is, a resident of Wyandotte County.

2. At all times relevant to the allegations contained herein, Defendants(s) were a resident of Wyandotte County and then moved however, the Breach of Contract, Slander, Defamation and Libel were committed in this County.

WHEREFORE, the Petitioner EPHRAIM WOODS moves the Court for an Order of the Court.

## FOUNDATION

Memorandum of Agreement under a contract and Legal Definition. A Memorandum of Agreement ("MOA"), also known as a memorandum of understanding, is a formal business document used to outline an agreement made between two separate entities, groups or individuals.

I, Ephraim "last name of woods" being a private individual and a member of the Community known as the United Nation of Islam at one time, a member of the Value Creators at one time and a member of the Promise Keepers set forth this claim of injury caused by Kendra Ross in her capacity as a private individual and her birth parent (Mother) Cheryl Ross in her capacity as a private individual.

Under the agreed contract of each participating individual within the community known as The United Nation of Islam; that when anyone became a member of the community they were informed of the guidelines and terms of the existing conditions to live and operate in the community (Whether in a Fulltime or Part Time capacity). Those who choose to join and/or live in the community agreed to the terms of the contract; if you refuse to live by the terms of the contract then you were free to leave at any time. The following are few examples:

Today you have similar agreements in Housing Associations or volunteer services for State and Federal Agencies.

Agenda 21 is one of several global plans of action designed to create a coalition of government, business, and non-governmental organizations (NGO's) under the auspices of the United Nations. When fully operational, this system of Global Governance, will command a One World Court, a One World Army, a One World Media, etc. all working in lock-step to gain total control over all human activity and all of the Earth's wealth.

Listed below are former living and work agreements made by those who choose to work and live within these type of communities in the United States and these communities were not called a "cult." From the 1900's up until the early 1950's many workers/employees, especially those in the mining and logging industry were paid in a form of currency issued by their employer known as "company scrip."

## Example similar agreement

Company scrip: is scrip (a substitute for government-issued legal tender or currency)

Lumber company scrip in Wisconsin, for example, forest-products and lumber companies were specifically exempted from the state law requiring employers to pay workers' wages in cash. Lumber and timber companies frequently paid their workers in scrip, which was redeemable at the company store. Company-run stores served as a convenience for workers and their families, but also allowed the companies to recapture some of their labor expenses. In certain cases, employers included contract provisions requiring employees to patronize the company stores. Employees who wanted to change their scrip to cash generally had to do so at a discount.

Coal scrip is "tokens or paper with a monetary value issued to workers as an advance on wages by the coal company or its designated representative". As such, coal scrip could only be used at the specific locality or coal town of the company named. Because coal scrip was used in the context of a coal town, where there are usually no other retail establishments in that specific remote location, employees who used this could only redeem their value at that specific location

Gamification describes the incentivisation of people's engagement in non-game contexts and activities by using game-style mechanics. Gamification leverages people's natural tendencies for competition, achievement, collaboration, and charity. Tools employed in game design, such as rewarding users for achievements, "leveling-up," and earning badges, are carried into the real world to help motivate individuals to achieve their goals or boost performance.

There are many examples of gamification, the most well-known perhaps being frequent flyer rewards programs offered by airlines. The important measurable metrics of success from gamification include the level of engagement, influence, brand loyalty, time spent on an activity, and the game's ability to go viral.

Homeowners' Association Sample Rules is a written contract of a group of property owners, typically condominium owners, describing their joint ownership obligations and rights. The association agreement usually allows members to approve new owners before a sale and gives the right to charge each resident for agreed upon building operating expenses.

In the United States, a homeowner association (or homeowners' association, abbreviated HOA, sometimes referred to as a property owners' association or POA) is a private association often formed by a real estate developer for the purpose of marketing, managing, and selling homes and lots in a residential subdivision. Typically the developer will transfer control of the association to the homeowners after selling a predetermined number of lots. Generally any person who wants to buy a residence within the area of a homeowners association must become a member, and therefore must obey the governing documents including Articles of Incorporation, CC&Rs (Covenants, Conditions and Restrictions) and By-Laws, which may limit the owner's.

A cooperative agreement is a legal agreement between the federal government and any other entity. A cooperative agreement occurs when the federal government transfers something of value, usually money, to a state government, municipality or private company for a public purpose. In a cooperative agreement, substantial interaction goes on between the federal government and the other party.

## 31 U.S. Code § 6305. Using cooperative agreements

An executive agency shall use a cooperative agreement as the legal instrument reflecting a relationship between the United States Government and a State, a local government, or other recipient when—

**(1)** the principal purpose of the relationship is to transfer a thing of value to the State, local government, or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government; and

**(2)** substantial involvement is expected between the executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement.

## LEGAL DEFINITION OF A VOLUNTEER

### 29 CFR § 553.101 - "Volunteer" defined.

**(a)** An individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours. Individuals performing hours of service for such a public agency will be considered volunteers for the time so spent and not subject to sections 6, 7, and 11 of the FLSA when such hours of service are performed in accord with sections 3(e)(4) (A) and (B) of the FLSA and the guidelines in this subpart.

**(b)** Congress did not intend to discourage or impede volunteer activities undertaken for civic, charitable, or humanitarian purposes, but expressed its wish to prevent any manipulation or abuse of minimum wage or overtime requirements through coercion or undue pressure upon individuals to "volunteer" their services.

**(c)** Individuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer.

**(d)** An individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.

### 29 CFR § 553.100 General.

Section 3(e) of the Fair Labor Standards Act, as amended in 1985, provides that individuals performing volunteer services for units of State and local governments will not be regarded as "employees" under the statute. The purpose of this subpart is to define the circumstances under which individuals may perform hours of volunteer service for units of State and local governments without being considered to be their employees during such hours for purposes of the FLSA.

## THE MEMORANDUM OF AGREEMENT

When Cheryl Ross and her minor children which includes Kendra Ross (and others) came to the community known as the United Nation of Islam in the year of 1995; when it was under the control of Royall "last name of Jenkins", Cheryl Ross had to go through a training course to ensure she was aware of what she was agreeing to.

The Contract Agreement, if Cheryl Ross agreed to be in a Full Time status and work within the community she would receive the following for herself and her children: **housing, medical, food, clothing** and **schooling** for her children including her Daughter Kendra Ross. They also received

training for job skills in other communities that could be located in other States if they choose to be part of the community.

This agreement was violated once Kendra Ross became the age of majority (18 years of age) and decided to leave the community; this is the identical contract that Cheryl Ross agreed to when Kendra Ross was still a minor under the jurisdiction and control of her mother.

Additionally, Kendra Ross returned back to the community of the United Nation of Islam once she was of legal age, of her own free will and married a Brother (a member named Nigel) within the community. After which Kendra Ross again decided to leave and return to the outside system outside of the community. This is called free will.

A brief history of the United Nation of Islam under the guidance of Royall "last name of jenkins" at the time Kendra Ross was a minor which is when all of her alleged claims have occurred against this community.

Since 2010-2012 the United Nation of Islam has gone through the troubled waters of being hi-jacked by former members who indentified the cash value of this community. This community was taken over and then left to perish until, the original members returned to reclaim what remained after the pillaging of the UNOI.

Kendra Ross' actions in 2017 were long after being out of the community (UNOI) however, she was still under the memorandum of agreement/contract to which she has received the benefits of while as a minor under Mother Cheryl Ross' jurisdiction.

Kendra Ross was never a member of the Value Creators or that of the Promise Keepers.  But by her action of claiming human trafficking and labor claims against the United Nation of Islam is a contract violation to the agreement of being a member. The Value Creators did not surface until July 6th, 2015 as enclosed and labeled as 'Evidence H' [Exhibit H].

The same memorandum of agreement/contract is the same with the Value Creators and the Promise Keepers.

The suit against the communities/people has caused irreparable damage against these communities/ people.

The people of these communities have loss the right to work in the community, schooling, medical treatment from the community, food, housing and etc.

## INTRODUCTION

1. Defamation, Libel and Slander remains a shockingly prevalent practice throughout the world and it has become an epidemic in the United States.

a. False accusations circulate worldwide with blinding speed through internet social media via all types of electronic devices: TV's, smart phones, tablets etc which causes a person or their business entities to lose public trust in them and/or their products and services.

b. Slander victimizes vulnerable persons by defrauding and forcing them to close businesses, change names, relocate, lose sales and gainful employment.

2. I, Ephraim "last name woods" the plaintiff knows this first hand.

   a. From 1994 until it's *unauthorized* decommission on December 31st, 2012 (executed by the criminal activities of UNOI Officers Akiba and Kaaba Majeed, Henry Munoz, Yunus Rassoull and Attorney Wayman W. Favors) I accepted membership with the organization named the United Nation of Islam with the understanding that any goods, services or time invested that were rendered from my fleshly being would be donated (whether monetary or physical goods) on a volunteer basis.

      • Similar to religious organizations such as the Amish, Hutterites or Mennonites that are not considered "cults".

   b. Evidence of the UNOI unauthorized decommission (as issued by former UNOI Temple Secretary Erica Bennerman) via a document entitled "National Announcements" with the Gmail time stamp dated 12-31-12 is enclosed and labeled as 'Evidence G' [Exhibit G].

3. As Defendant(s) Kendra and Cheryl Ross (Mother and Daughter) were and are completely aware of the fact that there were clear steps and information for every potential member;

   a. this procedure was called "processing" in the United Nation of Islam which generally consisted of attending three public meetings and,

   b. then being asked if you'd like to move forward with orientation classes.

   c. The processing member then wrote a savior's letter (a written contract/agreement) which was the standard for all UNOI Members that were of the age of majority (18 years) and,

   d. then in turn, mailed it to UNOI HQ's for approval.

      • Two samples of this UNOI contract/agreement is enclosed and labeled as 'Evidence A' [Exhibit A].

4. As President George Washington stated; "To speak evil of any one, unless there is unequivocal proofs of their deserving it, is an injury for which there is no adequate reparation."

   a. Fortunately, the state and federal laws prohibit this contemptible practice such as 2017 KANSAS Statute Article 24. - REGULATION OF CERTAIN TRADE PRACTICES 40-2404. Unfair methods of competition or unfair and deceptive acts or practices; title insurance agents, requirements; disclosure of nonpublic personal information; rules and regulations.

   (2) *False information and advertising generally.* Making, publishing, disseminating, circulating or placing before the public, or causing, directly or indirectly, to be made,

published, disseminated, circulated or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, misrepresentation or statement with respect to the business of insurance or with respect to any person in the conduct of such person's insurance business, that is untrue, deceptive or misleading.

(3) *Defamation.* Making, publishing, disseminating or circulating, directly or indirectly, or aiding, abetting or encouraging the making, publishing, disseminating or circulating of any oral or written statement or any pamphlet, circular, article or literature that is false, or maliciously critical of or derogatory to the financial condition of any person, and that is calculated to injure such person.

b. **2011 Kansas Code Chapter 21. - CRIMES AND PUNISHMENTS Article 40. - CRIMES INVOLVING VIOLATIONS OF PERSONAL RIGHTS: 21-4004. Criminal defamation.**

(a) Criminal defamation is communicating to a person orally, in writing, or by any other means, information, knowing the information to be false and with actual malice, tending to expose another living person to public hatred, contempt or ridicule; tending to deprive such person of the benefits of public confidence and social acceptance; or tending to degrade and vilify the memory of one who is dead and to scandalize or provoke surviving relatives and friends.

(b) In all prosecutions under this section the truth of the information communicated shall be admitted as evidence. It shall be a defense to a charge of criminal defamation if it is found that such matter was true.

(c) Criminal defamation is a class 'A' nonperson misdemeanor.

c. Along with federal law 28 U.S. Code § 4101. Definitions: The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.

5. I, Ephraim "last name woods" boldly and bravely return to this jurisdiction – the epicenter of Kendra Ross's initial breach of contract and DEFAMATION and SLANDEREROUS deception – and bring this action to enforce anti-breach of contract and defamation under federal and state laws.

6. In KENDRA ROSS' original "Verified Complaint" (USDC of Kansas # 2:17-cv-02547-DDC-TJJ refer to 'Evidence B' [Exhibit B]) on pages 5 and 6 Kendra Ross specifically names me; Ephraim Woods as a **"Defendant"**, states that I'm a resident of the state of Kansas, then states "all named **Defendants** directly and knowingly benefitted financially and otherwise from trafficking Ms. Ross" and,

a.  subsequently harassed me and my family at my home and other locations for two and a half years (and counting) with hundreds of *false* claim court documents, phone calls, depositions and,

b.  terrorized me personally with Federal Marshall law enforcement officers coming to my home and,

c.  Federal Marshalls arresting me in the federal court building District of Kansas, Kansas City Division under the guise of mistaken identity and,

d.  All of the aforementioned harassment took place even after I was told that I was not a party or a defendant in Kendra Ross' original complaint or proceedings.

7.  On October 3rd, 2018 Kendra Ross decided with *specific intent* to spread her fraudulent claims by appearing on national television by making a personal appearance on the NBC Today Show with Megyn Kelly without presenting one shred of evidence or 1st hand witness to validate her false allegations (Not even her biological mother Cheryl Ross as a witness was present).

  • As of the date of this filing the video can be viewed publically at: https://www.today.com/video/value-creators-trafficking-victim-opens-up-about-path-to-justice-1335692355747

  • If needed I've secured a copy of this broadcast if is taken down from the site listed above before trial.

8.  Kendra Ross' national television appearance on the NBC Today Show with Megyn Kelly (and her attorney Elizabeth Hutson) paved the way for an episode on the A&E series entitled "Cults and Extreme Belief" S01:E04 - U.N.O.I. to be broadcast nationwide on cable T.V. and the internet; once again labeling our community as a "cult."

  • As of the date of this filing the video can be viewed publically at: https://youtu.be/lx5dU-UVg60 or https://www.afterbuzztv.com/cults-and-extreme-belief-s1-u-n-o-i-e4-afterbuzz-tv-aftershow/

  • If needed I've secured a copy of this broadcast if is taken down from the sites listed above before trial.

9.  Kendra Ross' statements falsely claimed that I, Ephraim "last name woods" was associated with the following violations that Judge Daniel D. Crabtree clearly listed on March 3rd, 2020 Docket Entry #266 in his MEMORANDUM AND ORDER under section I. Background:

"On September 15, 2017, plaintiff Kendra Ross filed a Complaint against Royall Jenkins, The Value Creators, Inc. (f/k/a The United Nation of Islam, Inc.), The Value Creators LLC, and The Value Creators, Inc. Doc. 1. The Complaint asserts 16 federal and state law claims.2 The federal claims include violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589, 1590, and 1595, for **human trafficking and forced labor**; the FairLabor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, for **unpaid wages**; and the **Racketeer Influenced and Corrupt Organizations Act** ("RICO"), 18 U.S.C. § 1961. Three groups of claims comprise the state law claims: **(1) violations of human trafficking laws; (2) violations of**

minimum wage laws; and (3) violations of Kansas tort and quasi-contract law. Plaintiff asserted that defendants have violated **Kansas, New York, New Jersey, and Ohio human trafficking laws.** Plaintiff also claimed that defendants have violated minimum wages laws for those same states. Finally, plaintiff alleged that defendants have violated Kansas laws for conversion, unjust enrichment, and both intentional and negligent infliction of emotional distress. On May 23, 2018, the court entered default judgment against defendants Royall Jenkins, The Value Creators, Inc. f/k/a The United Nation of Islam, Inc., The Value Creators LLC, and The Value Creators, Inc (the "Judgment Debtors"). *See* Doc. 41."

10. KENDRA ROSS and CHERYL ROSS both knew after at least 15 years of participation and membership with the United Nation of Islam that all of the abovementioned statement on line 9 is false, misleading and is a complete breach of contract.

## I BEING A PLAINTIFF AND INJURED PARTY IN THIS ACTION HAS LOST THE FOLLOWING; DAMAGES:

1. Lost businesses in Baltimore, MD, New Haven, CT, Chicago, IL, Kansas City, KS and Atlanta, GA which consisted of restaurants/catering, a bakery, trucking, construction and food product wholesaling.

2. Loss of Bank Accounts: Bank of America shutdown our business accounts and funds were frozen and seized from the Value Creators.

3. My personal Bank of America bank accounts and credit line were also closed with no explanation.

4. Wells Fargo froze our business accounts of the Value Creators.

5. Lost revenue and potential revenue from Royall's Finest Coffee due to the slanderous statements made by Kendra Ross in her filing of August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – a photo of the product is enclosed and labeled as 'Evidence C' [Exhibit C].

6. Lost revenue and potential revenue from Royall Essence tea beverage due to the slanderous statements made by Kendra Ross in her filing of August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – a photo of the product is enclosed and labeled as 'Evidence D' [Exhibit D].

7. Lost revenue and potential revenue from Royall Dressing salad dressing due to the slanderous statement s made by Kendra Ross in her filing of August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – a photo of the product is enclosed and labeled as 'Evidence E' [Exhibit E].

8. Lost revenue and potential revenue from the Royall Touch eatery located in Kansas City, KS due to the slanderous statements made by Kendra Ross in her filing on August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – a photo of the business and business documents are enclosed and labeled as 'Evidence F' [Exhibit F].

9. Lost revenue and potential revenue from the Supreme Eatery cafeteria/catering business in Baltimore, MD due to the slanderous statements made by Kendra Ross in her filing on August 17th, 2017 "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT – a photo of the business and business documents are enclosed and labeled as 'Evidence I' [Exhibit I].

10. Loss of my right to practice the 1st Amendment right of the Bill of Rights "freedom of religion" without interference from the government or being profiled as being a "cult".

## CONCLUSION

Cheryl Ross had sole power, authority and jurisdiction over Kendra Ross during the time frames when the fraudulent human trafficking and labor claim against Royall "last name of jenkins" / The United Nation of Islam / The Value Creators was made against all three of these communities. Cheryl and Kendra Ross both knew that members of the United Nation of Islam DID NOT receive any form of payment as established in "Title 18 U.S. Code § 8.Obligation or other security of the United States defined":

> The term "obligation or other security of the United States" includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and canceled United States stamps.

In the simplest of terms; Cheryl and Kendra Ross both knew and understood that "Full Time" members of the United Nation of Islam received: FOOD, CLOTHING, SHELTER, EDUCATION, COMMUNICATION, MEDICAL and TRANSPORTATION in an organized and systematic fashion in EXCHANGE for the VOLUNTEER services that were rendered from each mentally competent and able bodied fleshly being (member) in the United Nation of Islam. There were no tricks or ploys in this contractual agreement and this was known and clear, upfront.

Even with Cheryl and Kendra Ross knowing the above statement to be true Kendra Ross still decided to launch a collateral attack and inflict irreparable damage to my reputation and the community that I've served with since May 1994 in her desire for unjust enrichment.

Since Cheryl and Kendra Ross filed no criminal charges nor is there any criminal charges against The UNOI or anyone in it; Kendra Ross made the conscience decision to pursue unjust enrichment through filing a *Civil* "VERIFIED COMPLAINT" in the UNITED STATES DISTRICT COURT over 5 years after she left The UNOI in her pursuit of unjust enrichment. Her pursuit was started after The UNOI was left

defunct for 2.5 years and another 2.5 years after The Value Creators was established, in which, the latter entity Kendra Ross had no membership in.

I, Ephraim "last name woods" can produce dozens of competent firsthand witnesses that are willing to testify in a court of law or by sworn affidavit to validate my claims and debunk all Kendra Ross' fraudulent claims.

As a result of the Defendants' conduct, I, Ephraim "last name woods" has suffered significant emotional pain and suffering, for which I should be compensated in the amount of $1,740,000, or any other amount to be determined at trial.

WHEREFORE, I, Ephraim "last name woods" respectfully requests that this Court enter judgment against the Defendants on the damages listed above and award me at least $1,740,000, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## JURY TRIAL DEMAND

I, Ephraim "last name woods" hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, I, Ephraim "last name woods" the Plaintiff respectfully demand judgment in my favor and against Defendants Cheryl Ross and Kendra Ross as follows:

(1) Compensatory and special damages in an amount to be proven at trial;

(2) Lost wages, including income from business product investments causing product name changes, lost bank account, credit damage, evictions, vehicle repossession and business's closed in an amount to be proven at trial;

(3) Statutory penalties and liquidated damages according to proof at time of trial;

(4) Punitive and exemplary damages in an amount according to proof at the time of trial;

(5) Reasonable attorney's fees and costs; and

(6) Such other and further relief as the Court deems just and proper.

(7) Upon a DEFAULT JUDGMENT the plaintiff demands $1,740,000 (one million seven hundred and forty thousand dollars) plus attorney fees and any additional amounts that the court deems fair and just.

Respectfully submitted,

_____Date 9/5/2020

Ephraim "last name of woods"
2111 N. 10th Street
Kansas City, KS [66104]

## AFFIDAVIT OF FACT

I, Ephraim "last name woods", am the plaintiff in the above-captioned action. I am and have been a resident and Citizen of one of the states for the united states since my birth. I am fifty four (54) years of age and am of sound mind and body to make this affidavit of fact. I have read the foregoing Complaint and fully understand the factual allegations, and also understand the legal claims I am asserting in this action. I verify under penalty of perjury that the entire foregoing claim is true and correct to the best of my ability.

Date: September 5th, 2020 at 1:47 pm cst,

AFFIANT SIGNATURE:

Ephraim Woods, Jr._____
PRINTED FULL LEGAL NAME:

NOTARY SIGNATURE:

JACQUELINE PUNCH
Notary Public – State of Kansas
My Appointment Expires

SEAL:

Jacqueline E. Punch_____
NOTARY PRINTED FULL LEGAL NAME:

Acknowledgement:

STATE OF KANSAS_____COUNTY OF WYANDOTTE_____

The foregoing instrument was acknowledged before me this 5th day of September, 2020 by Ephraim Woods Jr. who is personally known to me or who has produced a valid state government identification card.

BreachofContractE.Woodsvs.K.RossC.Ross-9/5/2020

12

# EVIDENCE A-I
# (Exhibits A-I)

# EVIDENCE A
# (EXHIBIT A)

Date
Address
City, State and Zip Code
Area Code and Telephone Number

The Deliverer
Brother Solomon
United Nation of Islam
7124 Temple Hills Road
Suite # 137
Padgetts Corner
Camp Springs, Maryland 20748

Dear Saviour Allah The Deliverer:
I am in agreement with the wisdom
I hear coming from you. I would
like to reclaim my own and be
with you. I bear witness that there
is no God other than Allah and that
The Honorable Elijah Muhammad is
Thy Last Messenger and Servant. I
pray you accept me and give me
my Original name. My slave name
is as follows:

# EVIDENCE B
# (EXHIBIT B)

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Kansas

| | |
|---|---|
| Kendra Ross | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 2:17-cv-02547-DDC-TJJ |
| | ) |
| Royall Jenkins, and | ) |
| The Value Creators, Inc. f/k/a The United Nation of | ) |
| Islam, Inc., and The Value Creators LLC, | ) |
| and The Value Creators Inc. | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

    The Value Creators LLC
    2111 North 10th Street
    Kansas City, Kansas 66104

    Serve: Mr. Griegory Moten, Registered Agent
        1121 Quindaro Boulevard, Kansas City, Kansas 66104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

    Gillian Chadwick
    Washburn Law Clinic
    Washburn University School of Law
    Topeka, Kansas 66621

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____09/18/2017_____                    _____s/ Christian Ness_____
                                              *Signature of Clerk or Deputy Clerk*
                                              TIMOTHY M. O'BRIEN
                                              CLERK OF COURT
                                              259 Robert J. Dole U.S. Courthouse
                                              500 State Ave
                                              Kansas City KS 66101-2431

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 2:17-cv-02547-DDC-TJJ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____        _____
                                            *Server's signature*

                             _____
                                            *Printed name and title*


                             _____
                                            *Server's address*

Additional information regarding attempted service, etc:

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
#### Kansas City Division

KENDRA ROSS,

      *Plaintiff,*

      v.

ROYALL JENKINS,
1735 West Avenida De Amelia
Sahuarita, Arizona 85629,

    **Serve:** Mr. Royall Jenkins
            1735 West Avenida De Amelia
            Sahuarita, Arizona 85629,

*and*

THE VALUE CREATORS, INC.
f/k/a THE UNITED NATION OF ISLAM, INC.,
1121 Quindaro Boulevard
Kansas City, Kansas 66104,

    **Serve:** Mr. Griegory Moten
            Registered Agent
            1121 Quindaro Boulevard
            Kansas City, Kansas 66104,

*and*

THE VALUE CREATORS LLC,
2111 North 10th Street
Kansas City, Kansas 66104

    **Serve:** Mr. Griegory Moten
            Registered Agent
            1121 Quindaro Boulevard
            Kansas City, Kansas 66104,

*and*

THE VALUE CREATORS INC.,
2111 North 10th Street

Case No. _____

**JURY TRIAL DEMANDED**

1

Kansas City, Kansas 66104

　　Serve: Mr. Griegory Moten
　　　　　Registered Agent
　　　　　1121 Quindaro Boulevard
　　　　　Kansas City, Kansas 66104,

　　　　　　　　*Defendants.*

## VERIFIED COMPLAINT

Plaintiff Kendra Ross ("Ms. Ross"), by counsel and pursuant to Rule 3 of the Federal Rules of Civil Procedure, respectfully files this verified complaint ("Complaint") against Defendants Royall Jenkins ("Jenkins") and his organized business entities, Defendants The Value Creators, Inc. f/k/a The United Nation of Islam, Inc. ("UNOI"), The Value Creators LLC, and The Value Creators Inc. (all defendants collectively referenced herein as the "Defendants"). By this action, Ms. Ross seeks to recover compensation for the Defendants' trafficking with respect to forced labor and related unlawful activities, as well as to punish Defendants for their wrongful, immoral, and pernicious human trafficking in violation of numerous federal and state laws. For her Complaint, Ms. Ross states as follows:

### INTRODUCTION

1.　　Human trafficking remains a shockingly prevalent practice throughout the world, and it has become an epidemic in the United States. Human trafficking victimizes vulnerable persons by forcing, defrauding, or otherwise coercing them into sexual or labor exploitation.

2.　　Plaintiff Kendra Ross knows this first hand. From at least the time she was eleven years old until her escape ten years later, Defendant Royall Jenkins and other individuals under

2

his command in a cult – known then as the United Nation of Islam – trafficked her.[1] Jenkins, the self-proclaimed "Spiritual Head" of UNOI, intentionally separated Ms. Ross from her family and friends at a young age, and transported her around the eastern United States to forcibly work at Jenkins' different businesses.   Jenkins also coerced and commanded Ms. Ross to perform around-the-clock childcare for his immediate family, extended family, and friends, as well as for other prominent leaders within the cult. The Defendants *never* paid Ms. Ross for *any* of her hard labor, deprived her of an education that would permit her to become a productive member of mainstream American society, and subjected her to years of intimidation and psychological abuse to prevent her escape from the cult. The Defendants' actions forced Ms. Ross into involuntary servitude, and denied her fundamental rights of freedom, education, basic medical attention, and fair pay.

3.      Fortunately, the federal and state laws and policies prohibiting this vile practice of human trafficking are alive and well. Former President Bush has called human trafficking "one of the worst offenses against human dignity," and former President Obama has noted that "[o]ur fight against human trafficking is one of the great human rights causes of our time[.]" Congress has also recognized the countless human tragedies caused by human trafficking.  In 2003, it expanded the Trafficking Victims Protection Act[2] by granting survivors of human trafficking a private right of action to hold their former captors accountable, and to equip them with a legal remedy to compensate them for the abuses they suffered.

4.      Ms. Ross now bravely returns to this jurisdiction – the epicenter of her trafficking

---

[1]      As noted below, UNOI is distinct from the more widely known organization of the Nation of Islam, which is based in Chicago, Illinois, and has been led by Dr. Louis Farrakhan since 1977.

[2]      In 2008, Congress renamed The Trafficking Victims Protection Act as the Trafficking Victims Protection Reauthorization Act ("TVPRA").

3

– and brings this action to enforce anti-trafficking federal and state laws. Through this suit, Ms. Ross seeks the fair compensation owed to her by Jenkins and the other Defendants, to redress the egregious violations of Ms. Ross's basic human and civil rights, and to punish the Defendants for their appalling acts. This Court should bring Jenkins and his companies to justice and hold them all accountable and liable for their trafficking of Ms. Ross.

PARTIES

5.    Plaintiff Kendra Ross is a 26-year-old who, since 2013, resides in and is a citizen of a state other than the states of Arizona, Kansas, Connecticut, Maryland, and Delaware. She began living in a safe house in April 2015 to avoid detection by her former traffickers.[3]

6.    Defendant Royall Jenkins is currently a resident and citizen of the State of Arizona. During all times relevant to the events that form the basis of this Complaint, however, Jenkins primarily resided in Kansas City, Kansas. Jenkins' conduct that forms the basis of his personal liability to Ms. Ross (including, but not limited to, his actions related to trafficking Ms. Ross throughout the United States and his personal financial benefit from Mr. Ross' unpaid labor) primarily occurred in Kansas City, Kansas.[4]

7.    Jenkins and others incorporated The United Nation of Islam, Inc., in Delaware on or around June 1993. UNOI's date of formation in Kansas was on or around September 2, 1997. On or around July 31, 2015, The United Nation of Islam, Inc., formally changed its name in Kansas to The Value Creators, Inc. UNOI is a Delaware corporation and it maintained its principal place of business at 1608 North 13th Street, Kansas City, Kansas, at all times relevant

---

[3]    For this reason, Ms. Ross does not allege in this Complaint where she is a citizen other than that she is not a citizen of the states of Arizona, Kansas, Connecticut, Maryland, and Delaware.

[4]    Jenkins publishes a website that contains his writings, philosophies, and directives as "Allah in Person." That website is located at http://www.thephoenixtherisingoflife.com.

4

during this lawsuit. Defendant The Value Creators, Inc. f/k/a The United Nation of Islam, Inc., therefore, is a citizen of the States of Delaware and Kansas. The conduct that forms the basis of UNOI's liability to Ms. Ross (including, but not limited to, its decisions to traffic Ms. Ross throughout the United States to perform unpaid work at its affiliated businesses) primarily occurred in Kansas City, Kansas. At all times relevant to this lawsuit, Jenkins has been the business leader and "Spiritual Head" of UNOI.

8.      Jenkins and others organized Defendant The Value Creators LLC in the State of Maryland on or around November 7, 2014. At the time of organization, and presumably continuing to date, The Value Creators LLC has had at least three members: Defendant Jenkins. Mr. Ephriam Woods, and Mr. William Green. At all relevant times, Mr. Woods has been a resident of the State of Kansas, and Mr. Green has been a resident of the State of Connecticut. The principal place of business of The Value Creators LLC is 2111 North 10th Street, Kansas City, Kansas 66104. Accordingly, The Value Creators LLC is a citizen of the States of Maryland, Kansas, and Connecticut. The Value Creators LLC holds itself out as a business whose nature and character is the "opening of eateries, sales and development of health restorative products, transportation, educational, life coaching, agricultural, con[s]truction, clothing and community development."

9.      Jenkins and others incorporated Defendant The Value Creators Inc. in Kansas on or around April 16, 2015. The Value Creators Inc. maintains its principal place of business at 1121 Quindaro Boulevard, Kansas City, Kansas 66104. Accordingly, Defendant The Value Creators Inc. is a citizen of the State of Kansas. The Value Creators Inc. holds itself out as a business whose nature and character is the "educational development, business development, health and wellness, transportation, admin[istration] and finance and housing."

5

10.    In this Complaint, all three business-entity Defendants are collectively referred to as "The Value Creators". Generally, The Value Creators include the successor organizations to UNOI (the organization responsible for trafficking Ms. Ross), and they own the personal, real and intellectual property, as well as other assets. These assets were employed in the trafficking scheme that subjugated Ms. Ross for a decade of her youth. All named Defendants directly and knowingly benefitted financially and otherwise from trafficking Ms. Ross. Upon information and belief, Jenkins and other leaders of The Value Creator entities organized The Value Creators LLC in November 2014 and The Value Creators in April 2015 in order to shield UNOI's assets from legal action against UNOI.[5]

11.    The three business entities referred to as The Value Creators may not be the only business entities that benefitted from, or are liable for, the trafficking of Ms. Ross. As such, Ms. Ross reserves the right to join additional defendants as discovery may reveal.

JURISDICTION AND VENUE

12.    This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Trafficking Victims Protection Reauthorization Act (18 U.S.C. §§ 1589 *et. seq.*), the Fair Labor Standards Act (29 U.S.C. §§ 201 *et. seq.*), and the Racketeer Influences and Corrupt Organizations Act (18 U.S.C. §§ 1961 *et seq.*).

13.    This Court also has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between Ms. Ross (not a citizen of the states of Arizona, Kansas, Connecticut, Maryland, and Delaware), on the one hand, and each of the Defendants (citizens of the states of Arizona, Kansas, Connecticut, Maryland, and Delaware) on the other, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

---

[5]    The Value Creators' website, which contains the organization's core doctrines and messages to its devotees, is located online at http://www.thevaluecreators.org.

6

14.     This Court has supplemental jurisdiction over all asserted state law claims pursuant to 28 U.S.C. § 1367 because all state law claims are so related to, and arise from, the same common nucleus of operative facts from which the federal claims arise and, therefore, they form part of the same case or controversy under Article III of the United States Constitution.

15.     This Court has personal jurisdiction over each of the Defendants pursuant to KAN. STAT. ANN. § 50-638, and the exercise of personal jurisdiction over each of the Defendants is consistent with due process.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

I.     <u>Royall Jenkins and the United Nation of Islam.</u>

A.     <u>Royall Jenkins.</u>

17.     Prior to 1978, Jenkins was a member of the Nation of Islam under the leadership of Elijah Muhammad. Dr. Louis Farrakhan assumed the leadership of the Nation of Islam upon the death of Elijah Muhammad in 1978.

18.     Jenkins claims that, around the time of Elijah Muhammad's death, angels and/or scientists abducted him, escorted him through the galaxy in a spaceship, informed him that he was "The Supreme Being", and instructed him how to govern Earth.

19.     Upon his "return" to Earth, Jenkins split from Nation of Islam in 1978 and informally organized UNOI as a radical alternative to Dr. Farrakhan's Nation of Islam. Since that time, Jenkins has commanded that his UNOI followers refer to him as "Allah on Earth," "Allah in Person," or "The Supreme Being."

20.     Sometime in or after 1996, Jenkins founded "Heaven," which was a UNOI model

7

community in an economically depressed neighborhood of Kansas City, Kansas.  Jenkins later established additional UNOI communities across the United States, in, among other locations, Atlanta, Georgia; Dayton, Ohio; Newark, New Jersey; Harlem, New York; Temple Hills, Maryland; Mobile, Alabama; and Cincinnati, Ohio.  Upon information and belief, The Value Creators owns the personal, real, and intellectual property used by these communities in the nation-wide trafficking scheme at issue in this case.

21.    Jenkins has a large immediate family scattered around the United States.  He has had at least thirteen (13) wives,[6] and has fathered approximately twenty (20) children (collectively referenced in herein as the "Royall Family").  Jenkins refers to at least some of his wives as "concubines."  Members of the Royall Family reside in different locations across the United States.

22.    During times relevant to the events that form the basis of this action, Jenkins owned several houses on one particular street in Kansas City, Kansas, where his wives, children, and grandchildren lived.  Also during times relevant to the events that form the basis of this Complaint, Jenkins owned a house called the "House of Peace" in Kansas City, Kansas.  The "House of Peace" is in a secret location, only accessible by Jenkins and a few select people.

23.    Jenkins holds ownership interests in several businesses, including all three business entities collectively referred to herein as The Value Creators.  Jenkins and the rest of the Royall Family have directly benefitted financially from the revenues of these businesses, in large part because the businesses employ trafficked laborers who are not paid any wages for the work they perform for those businesses.

24.    In addition, Jenkins and the rest of the Royall Family have directly benefitted

---

[6]    UNOI instructs its male followers that "you can measure a man's wisdom by the number of wives he has."

financially from the trafficked laborers who are not paid any wages for the around-the-clock child care and housekeeping work they perform for Jenkins and his Royall Family.

25.     During all times relevant to the events that form the basis of this Complaint, Jenkins was the business and spiritual leader of UNOI, head of the Royall Family, and personally made all decisions regarding the trafficked laborers which benefitted himself, UNOI, and the Royall Family.

B.      The United Nation of Islam.

1.      Organization.

26.     Jenkins founded UNOI in or around 1978.  Since UNOI's founding, Jenkins has been the business and self-proclaimed "Spiritual Head" of UNOI.

27.     UNOI (and possibly other corporate entities) operated as the corporate entity for Jenkins' cult at all times relevant to Ms. Ross' trafficking.

28.     UNOI employed a hierarchical chain of command, starting with Local Secretaries, who reported to the National Secretary, who reported to Officers, who reported to Captains, who reported to Lieutenants, who reported to the National Lieutenant, who reported to Jenkins. Everyone in the chain of command ultimately reported to Jenkins.  Jenkins approved almost everything, if not everything, that happened in "his Nation."

29.     At all times relevant to this lawsuit, the top heads of UNOI included, but were not limited to, Kaaba Majeed (National Lieutenant for men), Etenia Kinard (National Lieutenant for women), James/Adam Winthrop (National Secretary for men),[7] Ayesha Mohammed (National Secretary for women), Yanus Rassoull, Joseph F. Kelly, and Lamira/Kareemallah Jenkins.

30.     At all times relevant to this lawsuit, UNOI divided its membership into two

---

[7]      Jenkins regularly changed the names of cult members without their permission or input. James/Adam Winthrop is one example.

9

groups: (1) "part time" followers, who have a life or job outside of UNOI community; and (2) "full time" followers, who work for UNOI, live in homes owned and operated by UNOI, and only interact with other UNOI followers. "Full time" followers were afforded a more respected status and were fully included in all UNOI activities, and UNOI heads put followers on "part time" status as a form of punishment. "Part time" followers were subjected to full-body searches before they were permitted to enter UNOI meetings. Individuals who were demoted to "part time" status could regain "full time" status by various demonstrations of penance, including formal apologies to UNOI heads expressing shame and contrition.

31.     UNOI employs a strict discipline system, which was primarily developed, approved, and enforced by Jenkins. Under this system, individuals could receive "Class A" discipline for severe misconduct (e.g., talking back to superiors or using an incorrect tone[8]). Followers subjected to "Class A" discipline were not permitted to speak freely to anyone, and instead had to ask permission of the individual they wanted to speak with (including small children) to speak during the period of punishment, which could range from fifteen (15) days to indefinitely. Followers subjected to "Class A" discipline were often forced to fast.

32.     Individuals could receive "Class B" punishment for moderately severe misconduct (e.g., playing too much, not cleaning one's bedroom, failing a home inspection). Followers subjected to "Class B" discipline were subject to public censure during meetings. Followers subjected to "Class B" discipline were also often forced to fast.

33.     Individuals could receive "Class C" punishment at the conclusion of Class A or Class B punishment as a parole mechanism. Individuals who received Class C punishment were observed more closely for UNOI violations for approximately thirty (30) days.

---

[8]     Jenkins mandated that anyone talking to him must use a tone equal to or lower than his tone or the tone of anyone in the Royall family.

34.     Individuals could receive "Class F" punishment for extremely severe misconduct (*e.g.*, being overweight, child molestation).[9] Followers subjected to "Class F" discipline were banished from UNOI.

35.     In April 2015 (after Ms. Ross was able to remove herself from the cult), Jenkins and other key leaders of UNOI organized The Value Creators and, upon information and belief, transferred substantially all of the assets relevant to this lawsuit to The Value Creators.

2.     UNOI Doctrine.

36.     UNOI doctrine focused primarily on the supremacy of Jenkins as God on Earth. As such, disciples of UNOI – and now The Value Creators – consider Jenkins' teachings as prophetical.

37.     Jenkins' teachings emphasize and prioritize the differences between the races and genders. Jenkins claims that the "Black Man" is superior to the "White Man," and that the "Black Man" created the "Black Woman" as a natural pleasure. Jenkins further teaches that women are inferior to men, and that women should completely submit to men to escape eternal damnation.

38.     These basic teachings mandated a very regimented and controlled family organizational structure within UNOI.  UNOI required female members to attend regular women's meetings, where women learned how to be "good housewives" and how to "submit" to their husbands.  UNOI required male members to attend regular men's meetings, where men learned how to lead and direct their wives and children.  Jenkins is the primary author of the educational materials for both the women's and men's gender role meetings.

39.     UNOI monitored women's body weights closely.  UNO weighs women every

---

[9]     Jenkins forced individuals to stay under a certain weight by threatening that at some point in the future, a spaceship would come to take followers to a new world, and only those individuals who could fit in the seats would be permitted to board.

11

Sunday before services. If a full-time female member was over an "ideal" weight, UNOI required her to fast. If a part-time female member was over an "ideal" weight, UNOI required her to pay a fee. Women were forced to meet with a psychic "doctor" to discuss their nutritional needs and diet.

40.     UNOI controlled the language that members were permitted to use. For example, members were not permitted to say "Bless You," "Please," or any words that began with the letter "P." UNOI instructed members to say "however" instead of "but" and to say "share with" instead of "told."

41.     UNOI employed an extensive system for courtship and marriage. Under this system, males submitted "bids" on females to Jenkins through his chain of command within the organization. The bids were either approved or disapproved as they flowed up the UNOI chain of command to Jenkins. Jenkins ultimately approved or disapproved those bids previously approved by his lower deputies. Jenkins' reasons for disapproving bids were often as simply as the individuals were "not meant for each other." There were no minimum age limits or restrictions regarding marriage among UNOI members.

42.     Once approved, the male engaged the females in three distinct stages of courtship. First, males were instructed to send an email to UNOI leadership. This email contained a list of individuals the male was interested in. The leader would then forward that email to a psychic doctor who he claimed knew which members were compatible with each other. Then, the doctor would notify the UNOI leadership with whom the member was compatible.

43.     After the male selected a female from this list, they would start "interviewing" (*i.e.* dating). At first, couples could only talk on the phone and in person. Then, they were permitted to have physical contact, but no sexual contact.

12

44.     If the union was permitted by UNOI leadership, the final step in this process was marriage.   Upon information and belief, no members who married within UNOI received government licenses to wed.

45.     The entire courtship process typically took five (5) months. UNOI officers would then conduct interviews with the males and females throughout the process for UNOI approvals.

3.     Education of Children and Adolescents Within UNOI.

46.     Jenkins authored the central literature for UNOI, including children's education curriculum.   This literature included some of the original teachings from Elijah Mohammed, along with literature authored by Jenkins.

47.     At all times relevant to this lawsuit, UNOI did not send its child and adolescent members to public school, and instead required their attendance in UNOI's own education system. Jenkins' teachings stated that public school systems are corrupt.

48.     UNOI's education system did not include properly certified teachers or teaching curriculum.   If individuals excelled in a particular subject area, UNOI would appoint them as teachers in that specified area.  UNOI's education system included courses on Jenkins' literature, science, and math.  Jenkins' teachings permeated all of the subjects in the children's education curriculum.   Courses often stopped abruptly and were not on a particular schedule or syllabus. During UNOI classes, young students were shown horror films such as "The Omen" and "Crazy as Hell."

49.     UNOI ran a school called the "University of the Art and Logistics of Civilization."  UNOI required all full time members to attend the "University of the Art and Logistics of Civilization."  Many other UNOI members attended classes by listening to Jenkins' recordings or conference calls led by other cult leaders in the living room of the home where

13

they were staying.

50.     The disciplinary system at UNOI schools involved paddling children for any infractions, even accidental.  For example, if a child accidentally touched one of Jenkins' children or grandchildren, they were beaten.

4.     Working In UNOI.

51.     UNOI forced its members to work in various businesses it owned, including, but not limited to, restaurants, bakeries, supermarkets, gas stations, a sewing factory, and a construction company.

52.     At all times relevant to this lawsuit, UNOI ran the business called "Food for Life Supreme."  Upon information and belief, The Value Creators currently owns and operates Food for Life Supreme.

53.     Food for Life Supreme operates or formerly operated at times relevant to this Complaint in Atlanta, Georgia; Newark, New Jersey; Harlem, New York; Temple Hills, Maryland; Dayton, Ohio; Cincinnati, Ohio; Mobile, Alabama; and Kansas City, Kansas.

54.     As detailed below, many members (including Ms. Ross) worked every day of the week with no breaks.  Many members worked at UNOI bakeries, restaurants, and schools for eight (8) hours shifts during the day and were then expected to do additional work (cooking, cleaning, childcare) when they returned to the home where they was staying.

55.     UNOI heads of household had several teenage members living with them, and the heads of household would dictate what their labor was at home.

56.     UNOI controls where and when members go to the supermarket and which groceries they are allowed to buy.  UNOI maintained a list of approved grocery stores and approved items for members to buy.  Members were required to fill out a grocery list for

14

approval for communal shopping runs.

57.     Many UNOI members, including Ms. Ross, received food stamps from the federal government.  All full-time members had to surrender their Electronic Benefit Transfer ("EBT") cards to UNOI leaders, and UNOI rationed funds from these cards by household, thereby controlling members' budget allowance from the federal government.  Members did not receive a ration that was equivalent to the ration provided to them individually through the EBT cards.

58.     UNOI and The Value Creators members work at UNOI businesses but are not paid for the work they perform.

### 5.     Health Care for Members of UNOI.

59.     At all times relevant to this lawsuit, UNOI did not provide its members with any health insurance.

60.     At all times relevant to this lawsuit, UNOI did not allow its members to receive medical care offered by individuals outside of UNOI.  Instead, UNOI only permitted its members to receive medical care from an individual named Dr. Marvin MacIntosh for all medical issues (e.g., obstetrics, gynecology, minor emergency medicine, pediatrics, etc.).  Upon information and belief, no UNOI members providing medical care are licensed physicians.

### 6.     The Demise of UNOI.

61.     In or around September 2011, Jenkins began changing his teaching on key doctrines such as death and free will.  Jenkins said UNOI would "be tested" and that he individually was "going through a testing period."  At the same time, the chain of command of UNOI began to dissipate, and Jenkins moved to Arizona, which he called "the land of peace."

62.     Following this "testing period," Jenkins and other leaders organized The Value Creators entities.

15

63. Despite the shift in teaching and "testing period," as of the date of the filing of this Complaint, Jenkins remains the leader of The Value Creators.

C. The Value Creators.

64. Jenkins and others established The Value Creators as a successor in interest to UNOI.

65. The Value Creators is effectively UNOI under a different name, and it includes all of the same (or similar) businesses and members.

66. Upon information and belief, The Value Creators essentially maintains the same doctrines, chain of command structure, "employment" practices, educational mandates, and health care directives the UNOI employed.

II. Ms. Kendra Ross

A. Early Life.

67. Ms. Ross was born in 1991 in Memphis, Tennessee.

68. In 1993, at the age of two, Ms. Ross moved to Atlanta, Georgia with her mother. Ms. Ross' mother was introduced to UNOI by the local temple leader shortly after settling in Atlanta. Ms. Ross' mother, and therefore Ms. Ross, joined UNOI around that time.

69. From age two (2) until age eleven (11), Ms. Ross and her mother were "part time" members of UNOI, meaning they participated in UNOI but lived outside of the organization.

70. When she was nine (9) years old, Ms. Ross began cooking and packaging food for UNOI fundraisers. All of the proceeds from these fundraisers directly went to the Defendants. Ms. Ross did not receive any compensation for this work.

71. Ms. Ross attended public school in the Atlanta area through the fifth grade.

B. Move To Kansas City, Kansas.

16

72.     In 2002, at the age of eleven, Ms. Ross and her mother moved to Kansas City, Kansas, where they were elevated to "full time" status members of UNOI.  Around that time, UNOI commanded Ms. Ross' mother to remove Ms. Ross from public school and to send her to a UNOI-run school.  Ms. Ross' mother obeyed the command.

73.     Beginning at age eleven, Ms. Ross was forced to work at a UNOI-run bakery and restaurant for a few hours before school and a full eight-hour shift after school.  Ms. Ross received a call from a UNOI Secretary instructing her to work in the bakery.  Ms. Ross was also forced to sell baked goods and work at catering events for UNOI.  Ms. Ross also worked at a UNOI home (cooking, cleaning, childcare) after working in the bakery.

74.     In 2003, at age twelve, Jenkins ordered Ms. Ross removed from her mother's home, and directed that she be sent to live in a women's household run by UNOI.  This household consisted of a few women with young girls, other girls around Ms. Ross' age, and Ms. Ross' sister.

75.     During this time, UNOI commanded Ms. Ross to maintain a strict diet of rice, beans, fruit, and salad.  As a result, Ms. Ross became severely malnourished.  Ms. Ross was not permitted to see a licensed doctor or otherwise receive medical attention for her malnourishment.

76.     From the age of eleven (11) through the age of fourteen (14), Ms. Ross worked approximately 8,320 hours at the bakery, and approximately 2,080 hours as a maid.  The prevailing wages at that time for Kansas City were $11/hour for her bakery services and $9/hour for her cleaning services.  Ms. Ross, however, was not compensated for any of this work.

77.     UNOI removed Ms. Ross out of UNOI-run school at the age of fifteen (15) in order to work at a UNOI-owned and operated diner and teach younger UNOI students.  At the diner, she prepared and cooked food.  UNOI never permitted Ms. Ross to attend any school,

17

UNOI or otherwise, after the age of fifteen (15).

78.     During a UNOI celebration, Ayesha Mohammad, one of Jenkins' wives, publicly called Ms. Ross and others to gather on a stage and announced where each of the individuals would be shipped for work. Ms. Ross did not have any prior notice of this forced move. Ms. Ross was forced to move to Atlanta within two (2) days of that announcement.

79.     Ms. Ross worked approximately 2,600 hours at the diner in 2006 and 2007. The prevailing wages at that time for a diner cook in Kansas City were $12/hour. Ms. Ross was not compensated for any of this work.

        C.      Move To Atlanta, Georgia.

80.     In 2007, at the age of 16, UNOI moved Ms. Ross to Atlanta, Georgia, without her permission. UNOI informed Ms. Ross, along with a few other members, of their forced move to Atlanta, Georgia at Jenkins' birthday party in Kansas. UNOI called the names of all members who were being forced to move and instructed them to come to the front of the stage, where they met with one of Mr. Jenkins' wives. Ms. Ross was relocated to Atlanta, Georgia a few days after this party.

81.     When UNOI moved Ms. Ross to Atlanta, Georgia, Ms. Ross' mother and sister were placed on part-time status and were living together. Ms. Ross' mother did not know that Ms. Ross would be moving to Atlanta.

82.     While in Atlanta, Ms. Ross was forced to work full-time in a restaurant owned and operated by UNOI without any pay. Her work consisted of preparing food for the restaurant and baking pies, cakes, and other pastries.

83.     While working at the restaurant in Atlanta, Ms. Ross severely cut her finger. She was not given any medical attention except for two band-aids to stop the bleeding.

18

84.     While in Atlanta, Ms. Ross lived in one of Jenkins' family homes with one of Jenkins' wives, one of Jenkins' concubines, the husband and son of the concubine's sister, another couple, and approximately twelve (12) other minors.   Jenkins had another home approximately twenty (20) minutes away from the home where Ms. Ross lived, where he consorted with his other wives while he was in town.

85.     After Ms. Ross returned home from the restaurant, UNOI forced her to prepare food, cook, and clean for the household of approximately fifteen (15) people.   Ms. Ross was never paid for any of this work.

86.     UNOI sent Ms. Ross back to Kansas because she did not have the "proper attitude" according to UNOI officials.   Ms. Ross was located in Atlanta for four (4) or five (5) months total.

87.     During the five (5) months she was in Atlanta, Ms. Ross worked approximately 1,320 hours as a cook at the restaurant, and approximately 308 hours as a house cook and maid. The prevailing wages at that time for Atlanta were $12/hour for her restaurant cooking services and $10/hour for her maid services.  Ms. Ross was not compensated for any of this work.

D.      <u>Move Back To Kansas City, Kansas.</u>

88.     Later that year, UNOI moved Ms. Ross back to Kansas City where she lived in a UNOI home with a few younger women, men, and couples.  In this home, Ms. Ross was subjected to physical and emotional abuse by the caretaker of the home.  Although she reported several injuries, she was not permitted to access the medical care of a licensed medical professional.

89.     Also during this time, Ms. Ross worked at a diner making meals for twenty-five (25) single UNOI men and also provided childcare for the children in the home.  Ms. Ross would

typically arrive at the diner at 8:00 a.m. and work until 5:00 p.m., seven (7) days a week. She also waited tables, but was not permitted to keep her tips. UNOI required that all tips be placed in the cash register. Upon returning to the home, Ms. Ross would clean, cook, and serve everyone until 8:30 p.m. or 9:00 p.m. each night.

90.    Mayesha Jenkins, the granddaughter of Royall Jenkins, called Ms. Ross while she was living in Kansas to tell her that she was moving to Newark, New Jersey. UNOI moved Ms. Ross to New Jersey a few days after she received this phone call.

91.    During her time in Kansas City, Ms. Ross worked approximately 6,552 hours at the diner, and approximately 2,184 hours as a maid. The prevailing wages at that time for Kansas City were $12/hour for her services at the diner and $10/hour for her housemaid and childcare services. Ms. Ross was not compensated for any of this work.

    E.    Move To New Jersey and New York.

92.    In April 2009, at the age of seventeen, Defendants forcibly moved Ms. Ross to New Jersey, where she worked in restaurants in Newark, New Jersey, and Harlem, New York. Her scope of work included preparing food, grilling, cooking, and waiting tables for the restaurant. She was not permitted to keep her tips and instead UNOI confiscated them.

93.    While working in UNOI restaurants in New Jersey and New York, UNOI leaders expressed concern about government officials discovering minors working at their restaurants. UNOI leaders (specifically, Kaaba Majeed, the National Lieutenant for men) instructed Ms. Ross and others to avoid any child labor investigators and that if the child labor investigation team visited the restaurant, she needed to leave and "take a walk."

94.    In addition to working at UNOI restaurants, Ms. Ross was forced to cook for an entire household of approximately twenty-five (25) UNOI members.

20

95.     During her time in New York and New Jersey, Ms. Ross worked approximately 1,820 hours as a cook at the restaurant, and approximately 156 hours as a maid and house cook. The prevailing wages at that time for the New York City area were $14/hour for her bakery services and $12/hour for her cleaning services. Ms. Ross was not compensated for any of this work.

96.     While in New Jersey, Maryum Mohammed (a "full time" member of UNOI) reported Ms. Ross to Antoinette Kelly, granddaughter to Royall Jenkins, and said that Ms. Ross did not clean a blender in the restaurant. Ms. Ross received a disciplinary phone call from a UNOI leader for this infraction.

97.     UNOI leaders told Ms. Ross that she had to leave New Jersey because she did not have the "right spirit." The next day, UNOI leaders forced Ms. Ross onto a UNOI delivery truck to move.

F.     Move To Dayton, Ohio.

98.     In 2009, at the age of eighteen (18), UNOI forcibly moved Ms. Ross to Dayton, Ohio. In Dayton, Ms. Ross lived in a group home, then with Jenkins and his family, and later with a UNOI couple who had been demoted to "part-time" status.

99.     While living with Jenkins and his family, Ms. Ross was forced to clean the entire home, with the exception of Jenkins' bedroom and bathroom because special permission was required to go into these areas.

100.     In Dayton, Ms. Ross worked for another UNOI restaurant. Her duties included preparing food and cooking for the carry-out and community customers. She worked six (6) days per week, beginning at 6:00 a.m. in the morning and at times working as late as 11:00 p.m. Other than Sundays, Ms. Ross never took a single day off work while she was in Dayton.

21

101.     During her time in Dayton, Ms. Ross worked approximately 2,652 hours at the restaurant, and approximately 78 hours as a maid.  The prevailing wages at that time for Dayton were $12/hour for her restaurant cooking services and $10/hour for her cleaning services.  Ms. Ross was not compensated for any of this work.

102.     While in Dayton, the government issued Ms. Ross a $150 per month food subsidy.  Without Ms. Ross's consent, UNOI confiscated Ms. Ross's subsidy for its own use every month she was in Dayton.

G.     Probation and Expulsion.

103.     In 2009, UNOI denmoted Ms. Ross to "part time" status after she refused to drink "bloodroot," a gin-based drink.  After Ms. Ross refused to drink "bloodroot," she was reported to Mayesha Jenkins, the granddaughter of Royall Jenkins.  Mayesha Jenkins informed her that she had three (3) days to find somewhere else to live, and that she would be placed on "part time" status.

104.     Later that same year, UNOI placed Ms. Ross on "away from us indefinitely" status and forcibly moved her to Tennessee, where she lived with her aunt (a non-UNOI member).  This was the first time since age two (2) that Ms. Ross lived with an individual who was not a member of UNOI.

H.     Coercion Back to UNOI.

105.     UNOI ensured Ms. Ross' subservience and silence by severely restricting her movement, communication, and lifestyle.  While she was with UNOI, UNOI restrained Ms. Ross through express or implied threats of force and harm if she attempted to leave.  Ms. Ross was regularly subjected to humiliating and degrading treatment at UNOI and Royall Family households and UNOI's businesses that made it clear that she was little more than an unpaid

22

servant or slave in the eyes of UNOI. Ms. Ross also endured verbal abuse and physical abuse at the businesses and households. Indeed, UNOI unlawfully violated Ms. Ross' personal liberty by subjecting her to forms of mental, physical, and economic coercion and cruelty.

106.    During the time Ms. Ross was on "indefinitely away from us" status, UNOI did not allow Ms. Ross to have any contact with her mother, sisters, or friends – all of whom were members of UNOI. As a result, Ms. Ross was alone because every person in her life from the age of eleven (11) was a member of UNOI.

107.    UNOI obstructed Ms. Ross' communications with her friends and family as a means to coerce and control Ms. Ross into rejoining UNOI. Specifically, UNOI understood that a member who was "away from us" would feel enormous pressure to rejoin UNOI once they entered mainstream American society because the UNOI community was so dissociated from mainstream society.

108.    Feeling that pressure to rejoin the only life she knew, Ms. Ross told leaders of the organization that she "wanted to make her record right with Allah," and had "learned her lesson" in April 2010. UNOI permitted Ms. Ross to move back to Dayton, Ohio, where she lived with her sister and continued to work at a UNOI restaurant without pay.

109.    For the next two (2) years, Ms. Ross worked approximately 10,608 hours at the restaurant, and approximately 312 hours as a maid. The prevailing wages at that time for Dayton were $12/hour for her cooking services and $10/hour for her cleaning services. Ms. Ross, however, was not compensated for any of this work.

I.    Marriage

110.    At age 20, UNOI facilitated a marriage between Ms. Ross and another UNOI member through a psychic doctor who claimed to have unique knowledge of compatibility

23

among UNOI members.

111.    Ms. Ross' UNOI marriage became official, according to UNOI terms, on October 10, 2011.

112.    Ms. Ross was forced to do all of the cooking, cleaning, and housework in the home she shared with her UNOI husband.

113.    UNOI husbands, including the individual to whom UNOI arranged a marriage with Ms. Ross, regularly practiced polygamy.

114.    Ms. Ross is no longer in a marriage recognized by the Defendants.

115.    Ms. Ross is not, and has never been, in a legal marriage.

J.      Escape From UNOI.

116.    Ms. Ross' painful ordeal ended only with the fracturing of UNOI and guidance of outside family members and non-profit organizations that learned of Ms. Ross' treatment.

117.    Finally, in 2012, at the age of 21, Ms. Ross gathered her courage and strength to escape from UNOI.

118.    In 2014, Ms. Ross was diagnosed with post-traumatic stress disorder ("PTSD") resulting from her trafficking. While she is able to control her PTSD and emotional health with properly-prescribed treatment, she still suffers from the psychological effects of a childhood of trafficking.

119.    Ms. Ross's first became emotionally healthy enough to file this lawsuit in 2017.

120.    Now, Ms. Ross seeks to bring Jenkins and his companies who trafficked her to justice in this Court to seek monetary compensation for approximately 40,000+ hours of forced labor, her pain and suffering of the trafficking and losing her childhood to the Defendants, and to punish the Defendants for their abhorrent and malicious trafficking practices.

24

## COUNT I
### (Civil Action Under Federal Law for Forced Labor)
### (Against All Defendants)

121.   Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

122.   Defendants knowingly provided or obtained the labor or services of Ms. Ross by means of force, threats of force, physical restraint, or threats of physical restraint to Ms. Ross.

123.   Defendants knowingly provided or obtained the labor or services of Ms. Ross by means of serious harm or threats of serious harm to Ms. Ross.

124.   Defendants knowingly provided or obtained the labor or services of Ms. Ross by means of a scheme, plan, or pattern intended to cause Ms. Ross to believe that, if she did not perform such labor or services, she would suffer serious harm or physical restraint.

125.   Defendants knowingly benefitted financially and/or by receiving anything of value from participating in a venture which has engaged in the providing or obtaining of forced labor or services by any of the means described herein, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of forced labor or services by any of such means.

126.   As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $451,196, or any other amount to be determined at trial.

127.   As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $2,250,000, or any other amount to be determined at trial.

128.   Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

129.    Pursuant to 18 U.S.C. § 1595, Ms. Ross is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count I and award her at least $7,701,196 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT II
### (Civil Action Under Federal Law for Trafficking)
### (Against All Defendants)

130.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

131.    Defendants knowingly recruited, harbored, transported, provided, and/or obtained by any means, Ms. Ross for her labor or services in violation of 18 U.S.C. §§ 1981 *et seq.*

132.    Defendants knowingly benefitted financially and/or by receiving anything of value from participating in a venture which has engaged in the trafficking of forced labor by any of the means described herein, knowing or in reckless disregard of the fact that the venture has engaged in the trafficking of forced labor or services by any of such means.

133.    As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $451,196, or any other amount to be determined at trial.

134.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $2,250,000, or any other amount to be determined at trial.

135.    Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

136.    Pursuant to 18 U.S.C. § 1595, Ms. Ross is entitled to recover damages and

26

reasonable attorney's fees for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count II and award her at least $7,701,196 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT III
(Civil Action Under Kansas Law for Victims of Human Trafficking)
(Against All Defendants)

137.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

138.    Defendants intentionally recruited, harbored, transported, and obtained Ms. Ross for labor or services through the use of force, fraud, or coercion for the purpose of subjecting Ms. Ross to involuntary servitude and/or forced labor.

139.    Defendants intentionally benefitted financially through participation in a human trafficking venture involving Ms. Ross and had reason to know that Ms. Ross was subjected to involuntary servitude and forced labor.

140.    Defendants knowingly coerced Ms. Ross' employment by obtaining or maintaining labor or services by causing or threatening to cause physical injury to any person; and threatening to withhold food, lodging, or clothing.

141.    Ms. Ross has suffered both personal and psychological injury as a result of Defendants' trafficking and forced labor operation.

142.    As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $241,904, or any other amount to be determined at trial.

143.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of

27

$1,200,000, or any other amount to be determined at trial.

144.    Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

145.    Pursuant to K.S.A. §§ 60-5003(a)-(b), Ms. Ross is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count III and award her at least $6,441,904 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT IV
### (Civil Action for Violation of Kansas Minimum Wage and Overtime Law)
### (Against All Defendants)

146.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

147.    Kansas law at the relevant time required Defendants to pay Ms. Ross at the minimum wage of $7.25 per hour.

148.    Defendants knowingly and willfully failed and refused to pay Ms. Ross the minimum wage required under Kansas law for the hours worked and services provided for Defendants by Ms. Ross while she worked in Kansas for Defendants.

149.    Defendants knowingly and willfully required or permitted Ms. Ross to work in violation of these standards, and knowingly and willfully failed and refused to pay Ms. Ross wages for overtime hours worked as required under Kansas law.

150.    Defendants have failed to keep adequate employment records and have not properly or adequately recorded Ms. Ross' hours worked.

151.    Defendants knowingly and willfully failed and refused to provide Ms. Ross with rest breaks and meal periods as required by Kansas law.

28

152.    Defendants' willful failure to pay Ms. Ross the overtime premiums required by law violates the overtime provisions of K.S.A. §§ 44-1202 *et. seq.*

153.    Defendants' failure to pay Ms. Ross minimum wages and overtime premiums was not in good faith, and Defendants had no reasonable grounds for believing that their failure to pay such wages and overtime premiums was not a violation of Kansas law.

154.    Ms. Ross is entitled to recover all unpaid minimum and/or overtime wages to which she is entitled, plus interest and attorney's fees and costs incurred in bringing the civil action. Ms. Ross is also entitled to liquidated damages in an amount equal to the minimum wages unlawfully not paid to her by Defendants and interest thereon.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count IV and award her at least $315,172 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT V
(Civil Action Under New York Law for Victims of Labor Trafficking)
(Against All Defendants)

155.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

156.    Defendants compelled and/or induced Ms. Ross to engage in labor or recruited, enticed, harbored, and/or transported Ms. Ross by means of intentionally requiring that the labor be performed to retire, repay, or service a real or purported debt that Defendants have caused by a systematic ongoing course of conduct with an intent to defraud Ms. Ross.

157.    Defendants compelled and/or induced Ms. Ross to engage in labor and/or recruited, enticed, harbored, and/or transported Ms. Ross by means of intentionally using force and/or engaging in any scheme, plan or pattern to compel and/or induce Ms. Ross to engage in and/or continue to engage in labor activity by means of instilling a fear in such person that, if the

29

demand is not complied with, Defendants would do one or more of the following:

  a. Cause physical injury, serious physical injury, or death to a person; and/or

  b. Engage in other conduct constituting a felony or unlawful imprisonment in the second degree in violation of N.Y. Penal Code § 135.05; and/or

  c. Expose a secret or publicize an asserted fact, whether true or false, tending to subject Ms. Ross to hatred, contempt, or ridicule.

158. As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $13,676, or any other amount to be determined at trial.

159. As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $65,000, or any other amount to be determined at trial.

160. Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

161. Pursuant to N.Y. Social Services Code § 483-bb(c), Ms. Ross is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count V and award her at least $5,078,676 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT VI
(Civil Action for Violation of New York Minimum Wage Law)
(Against All Defendants)

162. Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

163. New York law at that time required Defendants to pay Ms. Ross at the minimum

wage of $7.15 per hour.

164.   Defendants paid Ms. Ross less than the legal minimum wage prevailing at the time Defendants forced Ms. Ross to work in New York.

165.   Defendants' failure to pay Ms. Ross minimum wages was not in good faith, and Defendants had no reasonable grounds for believing that their failure to pay such wages and overtime premiums was not a violation of New York law.

166.   Pursuant to N.Y. Labor Code § 663(1), Ms. Ross should recover all unpaid minimum wages to which she is entitled, plus 100% of the unpaid wages as liquidated damages, plus pre-judgment interest and attorney's fees and costs incurred in bringing the civil action.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count VI and award her at least $28,257 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT VII
(Civil Action Under New Jersey Law for Victims of Human Trafficking)
(Against All Defendants)

167.   Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

168.   Defendants knowingly held, recruited, lured, enticed, harbored, transported, provided or obtained labor and/or services:

a.   by causing or threatening to cause serious bodily harm and/or physical restraint against Ms. Ross;

b.   by means of scheme, plan, and/or pattern intended to cause Ms. Ross to believe that she would suffer serious bodily harm or physical restraint; and/or

c.   by means of fraud, deceit, and/or misrepresentation against Ms. Ross.

31

169.    Defendants received value from their participation as organizers, supervisors, financiers, and/or managers in a scheme or course of conduct in violation of New Jersey human trafficking law.

170.    As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for which she should be compensated in the amount of $13,676, or any other amount to be determined at trial.

171.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $65,000, or any other amount to be determined at trial.

172.    Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

173.    Pursuant to N.J. Stat. § 2C:13-8.1, Ms. Ross is entitled to recover damages for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count VII and award her at least $5,078,676 plus pre-judgment interest.

### COUNT IX
(Civil Action Under New Jersey to Recover Amount of Minimum Wage)
(Against All Defendants)

174.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

175.    New Jersey law at that time required Defendants to pay Ms. Ross at the minimum wage of $7.25 per hour.

176.    Defendants refused to pay Ms. Ross the minimum and overtime wages required under New Jersey law for the hours worked and services provided for Defendants by Ms. Ross while she worked in New Jersey for Defendants.

32

177.   Defendants' failure to pay Ms. Ross minimum wages and overtime premiums was not in good faith, and Defendants had no reasonable grounds for believing that their failure to pay such wages and overtime premiums was not a violation of New Jersey law.

178.   Pursuant to N.J. Stat. § 34.11-56a25, Ms. Ross is entitled to recover all unpaid minimum and/or overtime wages to which she is entitled, plus interest and attorney's fees and costs incurred in bringing the civil action.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count IX and award her at least $14,326, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT X
### (Civil Action Under Ohio Law for Victims of Human Trafficking)
### (Against All Defendants)

179.   Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

180.   Defendants knowingly and/or knowingly attempted to recruit, lure, entice, isolate, harbor, transport, provide, obtain, and/or maintain Ms. Ross, and:

      a.   Defendants knew that Ms. Ross would be subjected to involuntary servitude;

      b.   Ms. Ross was seventeen (17) years of age at the time, and Defendants knew that Ms. Ross would be subjected to involuntary servitude and/or Defendants' knowing and/or knowing attempt at recruitment, luring, enticement, isolation, harboring, transportation, provision, obtaining, and/or maintenance of Ms. Ross was for the purpose of involuntary servitude.

181.   Ms. Ross has suffered both personal and psychological injury as a result of Defendants' trafficking and forced labor operation.

182.   As a result of Defendants' conduct, Ms. Ross has suffered economic damages, for

33

which she should be compensated in the amount of $163,020, or any other amount to be determined at trial.

183.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and physical pain and suffering, for which she should be compensated in the amount of $815,000, or any other amount to be determined at trial.

184.    Defendants' conduct warrants the Court's imposition of $5,000,000 in punitive damages against Defendants.

185.    Pursuant to Ohio Rev. Code § 2307.51, Ms. Ross is entitled to recover damages for Defendants' wrongful conduct.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count X and award her at least $5,978,020, plus pre-judgment interest.

## COUNT XI
### (Civil Action for Violation of Ohio Minimum Wage and Overtime Law)
### (Against All Defendants)

186.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

187.    Ohio law at that time required Defendants to pay Ms. Ross at the minimum wage of $7.30 per hour.

188.    Defendants refused to pay Ms. Ross the minimum and overtime wages required under Ohio law for the hours worked and services provided for Defendants by Ms. Ross while she worked in Ohio for Defendants.

189.    Ms. Ross was not permitted to receive any tips for her work.

190.    The corporate Defendants are not family-owned and/or operated businesses.

191.    Defendants' failure to pay Ms. Ross minimum wages and overtime premiums was not in good faith, and Defendants had no reasonable grounds for believing that their failure to

34

pay such wages and overtime premiums was not a violation of Ohio law.

192.    Pursuant to Ohio Rev. Code § 4111.10, Ms. Ross is entitled to recover all unpaid minimum and/or overtime wages to which she is entitled, plus interest and attorney's fees and costs incurred in bringing the civil action. Ms. Ross is also entitled to liquidated damages in an amount equal to the minimum wages unlawfully not paid to her by Defendants and interest thereon.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XI and award her at least $199,290, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT XII
### (Violations of the Federal Fair Labor Standards Act)
### (Against All Defendants)

193.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

194.    The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, provides that an employee employed in domestic service in a household shall be paid the minimum wage as required by law.

195.    Ms. Ross provided services on a daily and weekly basis for Defendants, so that at all relevant times each of the Defendants was a single employer or joint employer of Ms. Ross within the meaning of the 29 U.S.C. § 203(d). Defendants never paid Ms. Ross the minimum wage for the services that she provided to them.

196.    Defendants have violated 29 U.S.C. § 206 by failing to pay Ms. Ross the applicable minimum wage for every compensable hour of labor she performed.

197.    Defendants have violated 29 U.S.C. § 207 by failing to pay Ms. Ross the applicable overtime wages for every compensable hour of labor she performed.

198.    Defendants have violated 29 U.S.C. § 211(c) by failing to make, keep, and preserve specific employment-related records, including records of their employees and of the wages, hours, and other conditions and practices of employment maintained by Defendants. Defendants have not accurately recorded the actual number of hours that each employee works. Defendants have failed to keep adequate employment records and have not properly or adequately recorded Ms. Ross' hours worked during her employment.

199.    Pursuant to 29 U.S.C. § 216(b), Ms. Ross is entitled to recover all unpaid wages, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs in amounts to be proven at trial.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XII and award her at least $565,355, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT XIII
(Civil Action for Violation of Federal Racketeer Influenced and Corrupt Organizations Act)
(Against All Defendants)

200.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

201.    The Defendants are associated in fact and an "enterprise" within the meaning of 18.U.S.C. § 1961(4). At all relevant times as described in this Complaint, Defendants have been in an ongoing association for the purpose of executing essential aspects of the criminal worker exploitation scheme.

202.    Defendants, as an enterprise, have been engaged in the pattern and practice of human trafficking and forced labor as described in this Complaint in violation of, among other laws, 18 U.S.C. §§ 1589 & 1590.

203.    The predicate acts of criminal racketeering activity as described in this Complaint

constitute a "pattern of racketeering activity" as defined 18 U.S.C. § 1961(5). Defendants repeatedly committed the RICO predicate act of human trafficking and forced labor.

204.    Such acts of racketeering activity have been part of Defendants' regular way of doing business through the enterprise at least from 1978 through the present and therefore show a threat of continued criminal activity.

205.    Ms. Ross is a "person" with standing to sue within the meaning of 18 U.S.C. § 1964(c) because Defendants trafficked her around the United States and forced her to perform labor and services without compensation from ages eleven (11) through twenty (20).

206.    Ms. Ross was economically injured in the amount of $451,196 as a result of Defendants' racketeering practices.

207.    Defendants regularly moved goods and people across state lines and therefore were engaged in interstate commerce.

208.    Pursuant to 18 U.S.C. § 1964(c), Ms. Ross is entitled to threefold the damages she sustained and the cost of the suit, plus a reasonable attorney's fee.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XIII and award her at least $1,353,588 plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

### COUNT XIV
### (Conversion)
### (Against All Defendants)

209.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

210.    Ms. Ross owned and had the right to possess her government-issued subsidies.

211.    Defendants converted Ms. Ross' government issued subsidies by wrongful act inconsistent with the property rights of Ms. Ross.

212.    As a direct and proximate result of Defendants' conversion of Ms. Ross's government subsidies, Ms. Ross has been damaged in the amount of $5,400.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XIV and award her at least $5,400, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT XV
(Unjust Enrichment)
(Against All Defendants)

213.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

214.    Ms. Ross conferred a benefit on Defendants by performing labor and services for Defendants as described in this Complaint.

215.    Defendants were aware of the benefit conferred upon them by Ms. Ross.

216.    Defendants retained that benefit without compensating Ms. Ross for the benefit she conferred on Defendants.

217.    Defendants' retention of the benefits Ms. Ross conferred on them without compensating Ms. Ross is inequitable and unjust.

218.    The value of the benefit conferred on Defendants is approximately $451,196.

219.    Ms. Ross is entitled to recover $451,196 from Defendants as a remedy for their unjust enrichment.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XV and award her at least $451,196, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

COUNT XVI
(Intentional Infliction of Emotional Distress)
(Against All Defendants)

38

220.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

221.    Defendants acted intentionally and/or recklessly in subjecting her to a culture that trafficked her and forced her to work without compensation.

222.    Defendants' conduct in human trafficking and forced labor is extreme and outrageous.

223.    Defendants' conduct caused Ms. Ross severe emotional distress. Specifically, Defendants' conduct has caused Ms. Ross to suffer from Post-Traumatic Stress Disorder.

224.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional and pain and suffering, for which she should be compensated in the amount of $2,250,000, or any other amount to be determined at trial.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XVI and award her at least $2,250,000, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## COUNT XVII
### (Negligent Infliction of Emotional Distress)
### (Against All Defendants)

225.    Ms. Ross incorporates Paragraphs 1 through 120 above as if fully set forth herein.

226.    Defendants acted negligently and/or carelessly in subjecting her to a culture that trafficked her and forced her to work without compensation.

227.    Defendants' conduct in human trafficking and forced labor is extreme and outrageous.

228.    Defendants' conduct caused Ms. Ross severe emotional distress. Specifically, Defendants' conduct has caused Ms. Ross to suffer from Post-Traumatic Stress Disorder.

229.    As a result of Defendants' conduct, Ms. Ross has suffered significant emotional

and pain and suffering, for which she should be compensated in the amount of $2,250,000, or any other amount to be determined at trial.

WHEREFORE, Ms. Ross respectfully requests that this Court enter judgment against Defendants on Count XVII and award her at least $2,250,000, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action.

## JURY TRIAL DEMAND

Ms. Ross hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kendra Ross respectfully demands judgment in her favor, and against Defendants Royall Jenkins; The Value Creators, Inc.; The Value Creators LLC; and The Value Creators Inc. as follows:

(1) Compensatory and special damages in an amount to be proven at trial;

(2) Unpaid wages, including minimum wages and overtime premiums, in an amount to be proven at trial;

(3) Statutory penalties and liquidated damages according to proof at time of trial;

(4) Punitive and exemplary damages in an amount according to proof at the time of trial;

(5) Pre- and post- judgment interest;

(6) Reasonable attorney's fees and costs; and

(7) Such other and further relief as the Court deems just and proper.

Dated: September 14, 2017                          Respectfully submitted,

                                                   s/ **KENDRA ROSS**

                                                   *By Counsel*

/s Gillian Chadwick
Gillian Chadwick, Bar No. 27361
Supervising Attorney
Washburn Law Clinic
Washburn University School of Law
Topeka, Kansas 66621
785/670-1191
gillian.chadwick@washburn.edu

## PRO HAC VICE APPLICATION FILED
## ON SEPTEMBER 14, 2017:

Elizabeth A. Hutson, Esq. (D.C. Bar No. 1024845)
McGUIREWOODS LLP
2001 K Street, NW
Suite 400
Washington, DC 20006
Tel: (202) 857-1700
Fax: (202) 828-2973
E-mail: ehutson@mcguirewoods.com

## VERIFICATION

I, Kendra Ross, am the plaintiff in the above-captioned action. I am and have been a resident and citizen of the United States of America since my birth. I am twenty-six (26) years old and am of sound mind and body to make this verification. I have read the foregoing Complaint, and fully understand the factual allegations, and also understand the legal claims I am asserting in this action. I verify under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2017

Kendra Ross

42

# EVIDENCE C (EXHIBIT C)



Royall's Finest

The search for the "perfect cup" has come to an end!

For both the Everyday Drinker and the Coffee Crusader alike, prepare to be elevated Royally!

Royall's Finest expertly fuses Guarana and Wheatgrass with the high quality of our flavorful bean resulting in an Elevated coffee drinking experience!

Guarana is native to regions of the Amazon and is known to boost energy, improve focus, and metabolism, promote weight loss, reduce fatigue.

Wheatgrass is saluted as one of Nature's "superfoods" and floods the body with valuable nutrients and vitamins.

With Royall's Finest you receive optimum health benefits and please your palate!

Superior in Quality... Supreme in Taste.... Royall's Finest, The Healthiest Coffee in the World!

Visit our website

**INGREDIENTS:**
Instant Coffee Powder, Non-Dairy Creamer, Wheatgrass Powder, Oligosaccharides, Guarana

**DIRECTIONS:**
Empty one sachet into an 8 oz. cup, add hot water and stir until completely dissolved.

100% Organic, Vegan, NON-GMO, BPA free, Fair Trade, Kosher. ®

Store in a cool, dry place.



**Nutrition Facts:**
Serving Size: 20 g (one sachet)
16 sachets per box

| Typical Composition | This pack (20.0g) | 110g (3 1/2 oz) provides |
|---|---|---|
| Energy | 391 kJ / 93 kcal | 193 kJ/465 kcal |
| Protein | 0.9g | 4.4g |
| Carbohydrate of which sugars | 14.0g 7.5g | 15.4g 70.0g |
| Fat | 3.7g | 18.6g |
| Sodium | 19.6mg | 97.9mg |

# EVIDENCE D (EXHIBIT D)

# EVIDENCE E
# (EXHIBIT E)



# EVIDENCE F
# (EXHIBIT F)



The Kansas Department of Agriculture, Food Safety and Lodging, 1320 Research Park Drive, Manhattan, KS 66502 (785)564-6733

## ----- ATTENTION -----

This is a two-part document:
The bottom portion of this document is your OFFICIAL AUTHORIZATION from Kansas Department of Agriculture. Your license MUST be displayed in a conspicuous location at your place of business.

ROYALL TOUCH (THE)
2111 N 10TH ST
KANSAS CITY, KS 66104

Please Display License Below

------------------------------------------------------------

The Kansas Department of Agriculture, Manhattan, Kansas
certifies

## ROYALL TOUCH (THE)

License Number : 24891 - Food Establishment
1113 N 5TH ST
KANSAS CITY, KS 66101

## Owned by: PARAPROFESSIONAL TEACHING INSTITUTE

has met the requirements for

## Licensing Under the Kansas Food, Drug and Cosmetic Act, KSA 65-619 et. seq.

and is hereby granted

## Authority to operate as a Food Establishment

Under Business Registration Number: **24891**

*Jackie McClaskey*

Jackie McClaskey
Secretary of Agriculture

Size: Under 5,000 sq feet

**Effective and Expiration Dates:**
**03-31-2019     03-31-2020**

## NOTICE: THIS LICENSE IS NOT TRANSFERABLE

The Kansas Department of Agriculture, Food Safety and Lodging, 1320 Research Park Drive, Manhattan, KS 66502 (785)564-6733 www.agriculture.ks.gov

Food Establishment LICENSE

www.agriculture.ks
.gov



**BUSINESS LICENSE DIVISION**
Neighborhood Resource Center
Unified Government of Wyandotte County/Kansas City, Kansas
4953 State Ave.  Kansas City, Kansas  66102
p. (913) 573-8780 | f. (913) 573-8622 |  www.wycokck.org/businesslicense

# 2018
# Occupation Tax Receipt
## Exempt

Mailing Address
ATTN: MARVIN KELLER
THE ROYALL TOUCH
1121 QUINDARO BLVD
KANSAS CITY, KS 66104

Date Receipt Issued:  **11/14/2018**

This certifies that

**THE ROYALL TOUCH**
**1113  N 5TH ST**
**KANSAS CITY, KS  66101**

is exempted from the Unified Government Occupation Tax for the privilege of conducting the business of

## EXEMPT 501(c)3 - TEACHING RESTAURANT

in the City of Kansas City, Kansas.  The Occupation Tax expires on:  **12/31/2018**

No fee was required.

Phillip E. Henderson
License Administrator

License #  **18980-01005**

THE ISSUANCE OF AN OCCUPATION TAX RECEIPT DOES NOT CREATE A PRESUMPTION THAT THE
BUSINESS HAS COMPLIED WITH THE UNIFIED GOVERNMENT REGULATORY ORDINANCES .

THIS RECEIPT MUST BE CONSPICUOUSLY DISPLAYED IN THE PLACE OF BUSINESS .
NO REFUNDS AVAILABLE .



**BUSINESS LICENSE DIVISION**
Neighborhood Resource Center
Unified Government of Wyandotte County/Kansas City, Kansas
4953 State Ave.   Kansas City, Kansas  66102
p. (913) 573-8780  |  f. (913) 573-8622  |  www.wycokck.org/businesslicense

# 2019
# Occupation Tax Receipt
## Exempt

Mailing Address
ATTN:  MARVIN KELLER
THE ROYALL TOUCH
1121 QUINDARO BLVD
KANSAS CITY,  KS  66104

Date Receipt Issued:  **3/5/2019**

This certifies that

**THE ROYALL TOUCH**
**1113   N 5TH ST**
**KANSAS CITY,  KS   66101**

is exempted from the Unified Government Occupation Tax for the privilege of conducting the business of

## EXEMPT 501(c)3 - TEACHING RESTAURANT

in the City of Kansas City, Kansas.   The Occupation Tax expires on:  <u>**12/31/2019**</u>

No fee was required.

License #  **18980-01005**

Phillip E. Henderson
License Administrator

THE ISSUANCE OF AN OCCUPATION TAX RECEIPT DOES NOT CREATE A PRESUMPTION THAT THE
BUSINESS HAS COMPLIED WITH THE UNIFIED GOVERNMENT REGULATORY ORDINANCES.

THIS RECEIPT MUST BE CONSPICUOUSLY DISPLAYED IN THE PLACE OF BUSINESS.
NO REFUNDS AVAILABLE.

BLExtRcptNF.rpt                    License #:   18980-01005                    Date Printed: 3/5/2019

# EVIDENCE G (EXHIBIT G)

 **Gmail**　　　　　　　　　　FOI Requests <heaven.foi.requests@gmail.com>

## National Announcements 12-31-12

6 messages

**Erica Bennerman** <erica.foodforlifesupreme@yahoo.com>　　　　Mon, Dec 31, 2012 at 11:42 AM

Reply-To: Erica Bennerman <erica.foodforlifesupreme@yahoo.com>
To: "\"417hector@gmail.com\"" <417hector@gmail.com>, "\"asiahbutler@yahoo.com\""
<asiahbutler@yahoo.com>, "\"blonnie.karim@gmail.com\"" <blonnie.karim@gmail.com>,
"\"douglas197732@yahoo.com\"" <douglas197732@yahoo.com>, "\"hortensiawilson@yahoo.com\""
<hortensiawilson@yahoo.com>, "\"marktyson7@yahoo.com\"" <marktyson7@yahoo.com>,
"\"marsheelondon@gmail.com\"" <marsheelondon@gmail.com>, "\"nathanielchizer@yahoo.com\""
<nathanielchizer@yahoo.com>, "\"thebangolman@yahoo.com\"" <thebangolman@yahoo.com>, #30 Requests
<temple30requests@gmail.com>, Chelse Belton <yvonneb1997@gmail.com>, "Bro. Counselor"
<waymanfavors@gmail.com>, "Bro. Nathan" <n.ray@mac.com>, Dexter Fairley <soon2know@yahoo.com>,
FOI Requests <heaven.foi.requests@gmail.com>, Evelyn Hopwood <elettinggo@yahoo.com>, "Instr. Griegory"
<griegorylmoten@yahoo.com>, Instructor Kaleb <glasskaleb@gmail.com>, Keith Ab-dul Raheem
<keithabdulraheem@yahoo.com>, Lakia Kelly <lakia_kelly@yahoo.com>, LaOta I
<laotaofthesun@gmail.com>, Akiba Majeed <akibamajeed@hotmail.com>, Marvin McIntosh
<drmarvin04@sbcglobal.net>, Michelle 4X <mi.lynn46@yahoo.com>, Stephen Mullins
<stephensgate777@gmail.com>, "Bro. Nathan" <worldkaratedo@aol.com>, LaOta Rassoull
<laota@foodforlifesupreme.com>, Evelyn Robertson <eyrob55@yahoo.com>, "Sis. Carla"
<carla_holcombe@yahoo.com>, "Sis. Dawn 2X" <littlesquaw@me.com>, "Sis. Willene"
<alittlepower1@gmail.com>, Your Service Station <yoursvcstation@yahoo.com>

> **The following National Announcements are effective as of December 31, 2012 and should be read carefully and adhered to fully:**
> 1. Everyone is to **refrain** from sending **any and all kinds of communications** to 1608 N. 13th St., Kansas City, KS 66102.
>
> 2. The UNOI HQ e-mail address **(unoi_hq@yahoo.com)**, is **no longer accepting communications of any kind.** No further inquiries, updates, nor communications **of any kind** should be directed to this e-mail address.
>
> 3. It is no longer necessary or permissible to send in donations of any kind in the name of the United Nation of Islam, Food for Life Supreme, or any categories of either organizations. Additionally, donations should not be given to any former, local Temple Secretaries. **Any donations received after Dec. 31 will be marked "return to sender" and will not be processed.**
>
> 4. The UNOI Full Time Volunteer Letter should NO LONGER be utilized by anyone, for any purpose, since there are no longer ANY Full Time Volunteers.

5. All National and Local Officials of the United Nation of Islam are properly relieved. This includes, but is not limited to, ALL Instructors, Captains, Lieutenants, Secretaries, Ambassadors, Directors, Officers, Advisors, Counselors, etc.

6. Any former member of the UNOI who was put on any class or status is properly relieved of that class or status effective immediately.

## UPDATE ON CONCEIVING

Due to the motion of accountability and freedom, the hold on conceiving has been lifted, and it is no longer necessary to check before conceiving.

However, what is of the utmost importance before conceiving, is that both husband and wife properly plan and are happy with each other and the idea of having a child. This mutual Love and Positive Vibration will create a Barrier that will Protect the child.

Also, be sure to remember other principals that you have learned such as proper diet and exercise.

## A MESSAGE FROM BRO. JOSEPH KELLY

Greetings Dedicated Ones,

This is an important message from your dear Brother Joseph, formerly known as 'King Joseph'.

Yes, formerly. As new knowledge unfolds, higher levels of growth automatically come with it. Those of us who are seriously committed to this path of success gladly embrace new beginnings, enlightenment and love. In my journey, I was made aware that the title 'King' was given to me, so too was the understanding of 'Being Elijah Muhammad returned'. As my journey has continued I have come to the point of now knowing that I am not the "King of the Planet" nor "Elijah Muhammad returned."

I being one who accepts this readily, is here to share with all the truth as it pertains to myself and my journey. As truth continues to be revealed it is

with all Gratitude to the Divine Creator, that I am eternally thankful and will continue on.   As we all move into a new awareness of self, through higher knowledge, it is important that we all stay updated and in tune with the time; as we have always been taught.   Thank You all for the love and support always shared and received. In this new year that is upon us, it is my will that you all embrace 'the truth' as it comes, with love, light and acceptance. Continue moving on the path to your "Higher Selves' as I am.

With much, much love, Your Brother Always, Joseph.

📑 **National Announcements - 12.31.12.V2.pdf**
   178K

---

**FOI Requests** <heaven.foi.requests@gmail.com>                     Wed, Mar 4, 2015 at 9:54 AM
To: ephraimwoods@gmail.com

[Quoted text hidden]

📑 **National Announcements - 12.31.12.V2.pdf**
   178K

---

**FOI Requests** <heaven.foi.requests@gmail.com>                     Sat, Dec 5, 2015 at 10:27 PM
To: Jacqueline Punch <jacquelinew07@gmail.com>, tydmorrison@gmail.com

---------- Forwarded message ----------
From: **Erica Bennerman** <erica.foodforlifesupreme@yahoo.com>
Date: Mon, Dec 31, 2012 at 11:42 AM
Subject: National Announcements 12-31-12
To: "\"417hector@gmail.com\"" <417hector@gmail.com>, "\"asiahbutler@yahoo.com\""
<asiahbutler@yahoo.com>, "\"blonnie.karim@gmail.com\"" <blonnie.karim@gmail.com>,
"\"douglas197732@yahoo.com\"" <douglas197732@yahoo.com>, "\"hortensiawilson@yahoo.com\""

<hortensiawilson@yahoo.com>, "\"marktyson7@yahoo.com\"" <marktyson7@yahoo.com>,
"\"marsheelondon@gmail.com\"" <marsheelondon@gmail.com>, "\"nathanielchizer@yahoo.com\""
<nathanielchizer@yahoo.com>, "\"thebangolman@yahoo.com\"" <thebangolman@yahoo.com>, #30
Requests <temple30requests@gmail.com>, Chelse Belton <yvonneb1997@gmail.com>, "Bro. Counselor"
<waymanfavors@gmail.com>, "Bro. Nathan" <n.ray@mac.com>, Dexter Fairley
<soon2know@yahoo.com>, FOI Requests <heaven.foi.requests@gmail.com>, Evelyn Hopwood
<elettinggo@yahoo.com>, "Instr. Gregory" <griegorylmoten@yahoo.com>, Instructor Kaleb
<glasskaleb@gmail.com>, Keith Ab-dul Raheem <keithabdulraheem@yahoo.com>, Lakia Kelly
<lakia_kelly@yahoo.com>, LaOta l <laotaofthesun@gmail.com>, Akiba Majeed
<akibamajeed@hotmail.com>, Marvin McIntosh <drmarvin04@sbcglobal.net>, Michelle 4X
<mi.lynn46@yahoo.com>, Stephen Mullins <stephensgate777@gmail.com>, "Bro. Nathan"
<worldkaratedo@aol.com>, LaOta Rassoull <laota@foodforlifesupreme.com>, Evelyn Robertson
<eyrob55@yahoo.com>, "Sis. Carla" <carla_holcombe@yahoo.com>, "Sis. Dawn 2X"
<littlesquaw@me.com>, "Sis. Willene" <alittlepower1@gmail.com>, Your Service Station
<yoursvcstation@yahoo.com>

(Quoted text hidden)

---

📑 **National Announcements - 12.31.12.V2.pdf**
178K

---

**FOI Requests** <heaven.foi.requests@gmail.com>                    Wed, Feb 6, 2019 at 11:58 AM
To: Tyesha Morrison <tydmorrison@gmail.com>, itsconstitutional@gmail.com

———— Forwarded message ————
From: **Erica Bennerman** <erica.foodforlifesupreme@yahoo.com>
Date: Mon, Dec 31, 2012 at 11:42 AM
Subject: National Announcements 12-31-12
To: "417hector@gmail.com" <417hector@gmail.com>, "asiahbutler@yahoo.com"
<asiahbutler@yahoo.com>, "blonnie.karim@gmail.com" <blonnie.karim@gmail.com>,
"douglas197732@yahoo.com" <douglas197732@yahoo.com>, "hortensiawilson@yahoo.com"
<hortensiawilson@yahoo.com>, "marktyson7@yahoo.com" <marktyson7@yahoo.com>,
"marsheelondon@gmail.com" <marsheelondon@gmail.com>, "nathanielchizer@yahoo.com"
<nathanielchizer@yahoo.com>, "thebangolman@yahoo.com" <thebangolman@yahoo.com>, #30
Requests <temple30requests@gmail.com>, Chelse Belton <yvonneb1997@gmail.com>, Bro. Counselor
<waymanfavors@gmail.com>, Bro. Nathan <n.ray@mac.com>, Dexter Fairley <soon2know@yahoo.com>,
FOI Requests <heaven.foi.requests@gmail.com>, Evelyn Hopwood <elettinggo@yahoo.com>, Instr.
Gregory <griegorylmoten@yahoo.com>, Instructor Kaleb <glasskaleb@gmail.com>, Keith Ab-dul Raheem
<keithabdulraheem@yahoo.com>, Lakia Kelly <lakia_kelly@yahoo.com>, LaOta l
<laotaofthesun@gmail.com>, Akiba Majeed <akibamajeed@hotmail.com>, Marvin McIntosh
<drmarvin04@sbcglobal.net>, Michelle 4X <mi.lynn46@yahoo.com>, Stephen Mullins
<stephensgate777@gmail.com>, Bro. Nathan <worldkaratedo@aol.com>, LaOta Rassoull
<laota@foodforlifesupreme.com>, Evelyn Robertson <eyrob55@yahoo.com>, Sis. Carla

<carla_holcombe@yahoo.com>, Sis. Dawn 2X <littlesquaw@me.com>, Sis. Willene
<alittlepower1@gmail.com>, Your Service Station <yoursvcstation@yahoo.com>

[Quoted text hidden]

🗐 **National Announcements - 12.31.12.V2.pdf**
178K

**FOI Requests** <heaven.foi.requests@gmail.com>                    Sun, Feb 10, 2019 at 3:11 PM
To: Marvin McIntosh <drmarvin04@sbcglobal.net>

---------- Forwarded message ----------
From: **Erica Bennerman** <erica.foodforlifesupreme@yahoo.com>
Date: Mon, Dec 31, 2012 at 11:42 AM
Subject: National Announcements 12-31-12
To: "417hector@gmail.com" <417hector@gmail.com>, "asiahbutler@yahoo.com"
<asiahbutler@yahoo.com>, "blonnie.karim@gmail.com" <blonnie.karim@gmail.com>,
"douglas197732@yahoo.com" <douglas197732@yahoo.com>, "hortensiawilson@yahoo.com"
<hortensiawilson@yahoo.com>, "marktyson7@yahoo.com" <marktyson7@yahoo.com>,
"marsheelondon@gmail.com" <marsheelondon@gmail.com>, "nathanielchizer@yahoo.com"
<nathanielchizer@yahoo.com>, "thebangolman@yahoo.com" <thebangolman@yahoo.com>, #30
Requests <temple30requests@gmail.com>, Chelse Belton <yvonneb1997@gmail.com>, Bro. Counselor
<waymanfavors@gmail.com>, Bro. Nathan <n.ray@mac.com>, Dexter Fairley <soon2know@yahoo.com>,
FOI Requests <heaven.foi.requests@gmail.com>, Evelyn Hopwood <elettinggo@yahoo.com>, Instr.
Griegory <griegorylmoten@yahoo.com>, Instructor Kaleb <glasskaleb@gmail.com>, Keith Ab-dul Raheem
<keithabdulraheem@yahoo.com>, Lakia Kelly <lakia_kelly@yahoo.com>, LaOta I
<laotaofthesun@gmail.com>, Akiba Majeed <akibamajeed@hotmail.com>, Marvin McIntosh
<drmarvin04@sbcglobal.net>, Michelle 4X <mi.lynn46@yahoo.com>, Stephen Mullins
<stephensgate777@gmail.com>, Bro. Nathan <worldkaratedo@aol.com>, LaOta Rassoull
<laota@foodforlifesupreme.com>, Evelyn Robertson <eyrob55@yahoo.com>, Sis. Carla
<carla_holcombe@yahoo.com>, Sis. Dawn 2X <littlesquaw@me.com>, Sis. Willene
<alittlepower1@gmail.com>, Your Service Station <yoursvcstation@yahoo.com>

[Quoted text hidden]

**National Announcements - 12.31.12.V2.pdf**
178K

---

**FOI Requests** <heaven.foi.requests@gmail.com>                    Sat, May 2, 2020 at 8:21 PM
To: Aereale Jenkins <Airey4business@gmail.com>, Aubrey Jenkins <aubreyjenkins26@icloud.com>, Fatimah
Muhammad <fatimah.e.muhammad@gmail.com>, Kanietra Forbes <kanietra.forbes@gmail.com>, Manuel
Allston <godmanuelallston@gmail.com>, Marcus Forbes <supremelifevalue@gmail.com>, Qawi Robertson
<Qawirobertson123@gmail.com>, Raasikh Robertson <rraasikh@yahoo.com>, Theiron Johnson
<dwightaction@gmail.com>


---------- Forwarded message ----------
From: **Erica Bennerman** <erica.foodforlifesupreme@yahoo.com>
Date: Mon, Dec 31, 2012 at 11:42 AM
Subject: National Announcements 12-31-12
To: "417hector@gmail.com" <417hector@gmail.com>, "asiahbutler@yahoo.com"
<asiahbutler@yahoo.com>, "blonnie.karim@gmail.com" <blonnie.karim@gmail.com>,
"douglas197732@yahoo.com" <douglas197732@yahoo.com>, "hortensiawilson@yahoo.com"
<hortensiawilson@yahoo.com>, "marktyson7@yahoo.com" <marktyson7@yahoo.com>,
"marsheelondon@gmail.com" <marsheelondon@gmail.com>, "nathanielchizer@yahoo.com"
<nathanielchizer@yahoo.com>, "thebangolman@yahoo.com" <thebangolman@yahoo.com>, #30
Requests <temple30requests@gmail.com>, Chelse Belton <yvonneb1997@gmail.com>, Bro. Counselor
<waymanfavors@gmail.com>, Bro. Nathan <n.ray@mac.com>, Dexter Fairley <soon2know@yahoo.com>,
FOI Requests <heaven.foi.requests@gmail.com>, Evelyn Hopwood <elettinggo@yahoo.com>, Instr.
Griegory <griegorylmoten@yahoo.com>, Instructor Kaleb <glasskaleb@gmail.com>, Keith Ab-dul Raheem
<keithabdulraheem@yahoo.com>, Lakia Kelly <lakia_kelly@yahoo.com>, LaOta I
<laotaofthesun@gmail.com>, Akiba Majeed <akibamajeed@hotmail.com>, Marvin McIntosh
<drmarvin04@sbcglobal.net>, Michelle 4X <mi.lynn46@yahoo.com>, Stephen Mullins
<stephensgate777@gmail.com>, Bro. Nathan <worldkaratedo@aol.com>, LaOta Rassouli
<laota@foodforlifesupreme.com>, Evelyn Robertson <eyrob55@yahoo.com>, Sis. Carla
<carla_holcombe@yahoo.com>, Sis. Dawn 2X <littlesquaw@me.com>, Sis. Willene
<alittlepower1@gmail.com>, Your Service Station <yoursvcstation@yahoo.com>


[Quoted text hidden]


**National Announcements - 12.31.12.V2.pdf**
178K

# EVIDENCE H (EXHIBIT H)

# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THAT THE SAID "THE UNITED NATION OF
ISLAM, INC.", FILED A CERTIFICATE OF AMENDMENT, CHANGING ITS
NAME TO "THE VALUE CREATORS, INC." ON THE SIXTH DAY OF JULY,
A.D. 2015, AT 2:17 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID
CORPORATION IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF
DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE
EXISTENCE NOT HAVING BEEN CANCELLED OR DISSOLVED SO FAR AS THE
RECORDS OF THIS OFFICE SHOW AND IS DULY AUTHORIZED TO TRANSACT
BUSINESS.



Jeffrey W. Bullock, Secretary of State

2340181  8320
SR# 20165904595

Authentication: 203042237
Date: 09-22-16

You may verify this certificate online at corp.delaware.gov/authver.shtml

# Delaware

**PAGE 1**

*The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "THE VALUE CREATORS, INC." IS DULY
INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN
GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE
RECORDS OF THIS OFFICE SHOW, AS OF THE TWELFTH DAY OF AUGUST,
A.D. 2015.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE
BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES
HAVE BEEN PAID TO DATE.

2340181   8300

151164610

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State
**AUTHENTICATION: 2639845**

**DATE: 08-12-15**

| RN 53-24 | **KANSAS SECRETARY OF STATE**<br>**Not-For-Profit Corporation**<br>**Certificate of Reinstatement** | 3647 01<br>053 024<br>$20.00   1 | **FILED BY KS SOS**<br>**08-10-2015**<br>**04:02:59 PM**<br>**FILE#: 2517910** |
|---|---|---|---|

**Kansas Office of the Secretary of State:**

Memorial Hall, 1st Floor    (785) 296-4564
120 S.W. 10th Avenue    kssos@sos.ks.gov
Topeka, KS 66612-1594    www.sos.ks.gov

04244841

**Instructions: All information must be completed or this document will not be accepted for filing.**

| 1. | **Business entity ID number:**<br>Not Federal Employer ID Number (FEIN). | 2517910 |
|---|---|---|
| 2. | **Name of corporation:**<br>Must match name on record with Secretary of State. | The United Nation of Islam, INC. |
| 3. | **State/Country of organization** | Delaware |

4. **Name of resident agent and address of registered office in Kansas**
Must be a Kansas street address. A P.O. Box is unacceptable.

Name: Gregory Moten
Street Address: 1121 Quindaro Blvd
City: Kansas City    State: KS    Zip: 66104

5. **Reason for forfeiture**

The corporation's existence or authority to conduct business in the state of Kansas (SELECT ONLY ONE):

☒ Has been forfeited for failure to timely file a correct annual report and/or pay the annual report fee or franchise tax.

☐ Has expired or will expire on | Month | Day | Year |

☐ Has been forfeited for failure to designate or maintain a resident agent and registered office.

6. **Duration of corporation**    ☒ Perpetual    ☐ Date the corporation will cease: | Month | Day | Year |

7. **This certificate is filed by the authority of duly elected directors or members of the governing body of the corporation in compliance with the provisions of K.S.A. 17-7002.**

8. **I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true and correct and that I have remitted the required fee.**

| Signature of Authorized Officer | Name of Signer (Printed or Typed) | Month | Day | Year |
|---|---|---|---|---|
| *[signature]* | Ephraim Woods | 07 | 31 | 2015 |

**1 / 1**    K.S.A. 17-7002
Rev. 5/27/15 tc

Please review to ensure completion.

KANSAS SECRETARY OF STATE
NON-CERTIFIED WEB COPY
9/5/2020 12:16:01 PM

**KANSAS SECRETARY OF STATE**
**AN** **Not-For-Profit Corporation**
**53-16** **Certificate of Amendment**

| 3647   02 | FILED BY KS SOS |
| 053   016 | 08-18-2015 |
| $20.00 | 1 04:03:08 PM |
|  | FILE#: 2517910 |

04244842

**Kansas Office of the Secretary of State:**

Memorial Hall, 1st Floor
120 S.W. 10th Avenue
Topeka, KS 66612-1594

(785) 296-4564
kssos@sos.ks.gov
www.sos.ks.gov

This form must be complete and accompanied by the correct filing fee or the document will not be accepted for filing.

| 1. | **Business entity ID number** | |
| | Not Federal Employer ID Number (FEIN). | 2517910 |

| 2. | **Name of corporation** | |
| | Must match name on record with Secretary of State. | The United Nation of Islam, INC |

**3.   The articles of incorporation are amended as follows:**

This correspondence is to notify the Kansas Office of the Secretary of State that We, the Board of Directors of the entity formerly known as The United Nation of Islam, INC (Business entity ID#: 2517910 & FEIN#: 52-18____) hereby agree that this aforesaid name shall be officially changed to the following name:
The Value Creators, INC.
A Certificate of Amendment has been filed and accepted by the State of Delaware Division of Corporations. We now request that upon receipt of the aforementioned, the Kansas Office of the Secretary of State update its records to accurately reflect this change. A copy of the State of Delaware filing and a 'permission for usage of name' statement accompanies this correspondence.

**4.   The amendment was adopted in accordance with the provisions of K.S.A. 17-6602, 17-1606, or 17-7302.**

| 5. | **Effective date** | ☒ Upon filing | ☐ Future effective date | Month | Day | Year |

**6.   I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true and correct, and that I have remitted the required fee.**

Signature of Authorized Officer
x _Ephraim Woods (signature)_

| Month | Day | Year |
| 07 | 31 | 2015 |

Name of Signer (printed or typed)
**Ephraim Woods**

Phone Number
**(913) 314-____**

*(watermark: KANSAS SECRETARY OF STATE NON-CERTIFIED WEB COPY 9/5/2020 12:20:54 PM)*

Please review to ensure completion.

# EVIDENCE I
# (EXHIBIT I)

| CERTIFICATE OF INSURANCE | | | | ISSUE DATE | | |
|---|---|---|---|---|---|---|
| | | | | | | 4/3/2018 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUDER, AND THE CERTIFICATE HOLDER.

IMPORTANT: IF THE CERTIFICATE HOLDER IS AN ADDITIONAL INSURED, THE POLICY(IES) MUST BE ENDORSED. IF SUBROGATION IS WAIVED, SUBJECT TO THE TERMS AND CONDITIONS OF THE POLICY, CERTAIN POLICIES MAY REQUIRE AN ENDORSEMENT. A STATEMENT ON THIS CERTIFICATE DOES NOT CONFER RIGHTS TO THE CERTIFICATE HOLDER IN LIEU OF SUCH ENDORSEMENT(S).

| PRODUCER | INSURER(S) AFFORDING COVERAGE | |
|---|---|---|
| Bolt Insurance Agency<br>10 Waterside Drive<br>#202<br>Farmington, CT 06032 | INSURER A: | Scottsdale Insurance Company |
| **INSURED**<br>The Value Creators, Inc.<br>DBA Supreme Eatery<br>6816 Fox Meadow Rd<br>Gwynn Oak, MD 21207 | INSURER B: | N/A |
| | INSURER C: | N/A |
| | INSURER D: | N/A |
| | INSURER E: | N/A |

**COVERAGES**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE | LIMITS | |
|---|---|---|---|---|---|---|
| A | General Liability | CPS2909336 | 10/4/2017 | 10/4/2018 | General Aggregate | $2,000,000 |
| | | | | | Products-Com/Op Agg. | $1,000,000 |
| | | | | | Personal & Adv. Injury | $1,000,000 |
| | | | | | Each Occurrence | $1,000,000 |
| | | | | | Damage Prem Rented To You | $100,000 |
| | | | | | Med Expense (Any one person) | $5,000 |
| B | Personal Liability | | | | Combined Single Limit | |
| | | | | | Medical Payments To Others | |
| | | | | | | |
| C | Excess Liability | | | | Each Occurrence | |
| | | | | | Aggregate | |
| D | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| E | Property | | | | Building | |
| | | | | | Contents | |
| | | | | | Loss Of Use | |

**Description of Operations / Specialty Items**
Restaurants with no sale of alcoholic beverages without table service with seating

| **Certificate Holder**<br>Salontra Select Suites<br>5471 Baltimore National Pike<br>Baltimore, MD 21229 | Should any of the above described policies be cancelled before the expiration date thereof, notice will be delivered in accordance with the policy provisions.<br>**Authorized Signature** |
|---|---|



## CERTIFICATE OF SERVICE

I, Ephraim "last name of woods" come before the clerk of court in the county of WYANDOTTE

in the year of Lord 2020 AD in the month of September and on this day of 8th will be served by

process.

_____Date 9/5/2020

Ephraim "last name of woods"
2111 N. 10th Street
Kansas City, KS [66104]


Cc


Cheryl Ross: Mother
Private Individual
3547 Spottswood Ave.
Memphis, TN 38111

Kendra Ross: Daughter
Private Individual
782 Saxon Court
Charlottesville, VA 22901

Addresses in c/o:

Gillian Chadwick
Washburn University School of Law
1700 SW College Avenue
Topeka, KS 66621

*and*

MCGUIREWOODS LLP
Jonathan T. Blank, Katlyn Farrell, Benjamin P. Abel, Elizabeth A. Hutson
2001 K Street NW, Suite 400
Washington, DC 20006
As her residence is under protection; the above guardian's are being served on her behalf.