## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **EPHRAIM WOODS, JR.,** | |
| **Plaintiff,** | |
| v. | **Case No. 21-2011-DDC-TJJ** |
| **KENDRA ROSS and CHERYL ROSS,** | |
| **Defendants.** | |

| | |
|---|---|
| **FATIMAH MUHAMMAD,** | |
| **Plaintiff,** | |
| v. | **Case No. 21-2012-DDC-TJJ** |
| **KENDRA ROSS and CHERYL ROSS,** | |
| **Defendants.** | |

| | |
|---|---|
| **DWIGHT JOHNSON,** | |
| **Plaintiff,** | |
| v. | **Case No. 21-2013-DDC-TJJ** |
| **KENDRA ROSS and CHERYL ROSS,** | |
| **Defendants.** | |

| | |
|---|---|
| **RAASIKH ROBERTSON,** | |
| **Plaintiff,** | |
| v. | **Case No. 21-2014-DDC-TJJ** |
| **KENDRA ROSS and CHERYL ROSS,** | |
| **Defendants.** | |

<u>**MEMORANDUM AND ORDER**</u>

This Order addresses pending motions in four separate but related cases.  Plaintiffs filed four pro se Petitions[1] in the District Court of Wyandotte County, Kansas, against Kendra Ross and her mother, Cheryl Ross, alleging (1) breach of contract and memorandum of agreement, and (2) defamation and slander.  Defendant Kendra Ross removed each action to federal court under 28 U.S.C. § 1441(a) alleging diversity jurisdiction under 28 U.S.C. § 1332(a).  For clarity, the court cites documents in the first-filed case in our court, *Woods v. Ross*, No. 21-2011 (D. Kan.), unless otherwise specified because the majority of filings do not differ in substance between cases.  Also, because Kendra Ross and Cheryl Ross share a surname, this Order, for clarity, often refers to them simply as "Kendra" and "Cheryl."  The court means no disrespect to either individual by its use of their first names.

Plaintiffs filed these four actions pro se.  The court thus construes their filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not become an advocate for the pro se party.  *Id.*  Plaintiffs' pro se status does not excuse them from complying with the court's rules or facing the consequences of noncompliance.  *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

I.     **BACKGROUND**

These four plaintiffs are individual members of a community, once known as the United Nation of Islam.  This community has included The Value Creators and The Promise Keepers, successor organizations to the United Nation of Islam.  Each plaintiff filed suit in the District

---

[1]     The court uses the term "Petition" because plaintiffs originally filed their actions in the District Court of Wyandotte County, Kansas.  Plaintiffs properly used the term Petition to describe their initial pleadings there, Kan. Stat. Ann. § 60-207(a), so the court uses that term in this Order.

Court of Wyandotte County, Kansas, naming as defendants Kendra Ross and her mother, Cheryl Ross.

Plaintiffs attempt to re-litigate issues already decided by this court in a separate case, *see Ross v. Jenkins*, No. 17-2547 (D. Kan.).  In 2017, Kendra Ross filed a lawsuit against Royall Jenkins, The Value Creators, Inc. (formerly known as The United Nation of Islam, Inc.), The Value Creators LLC, and The Value Creators Inc. alleging violations of state and federal human trafficking law and labor laws.  Complaint, *Ross v. Jenkins*, No. 17-2547 (D. Kan. Sept. 15, 2017), ECF No. 1.  In May 2018, the court granted Kendra's Motion for Default Judgment against the defendants and awarded her nearly $8 million in damages.  Memorandum and Order, *Ross v. Jenkins*, No. 17-2547 (D. Kan. May 23, 2018), ECF No. 40 (awarding Kendra nearly $8 million dollars in damages and attorneys' fees).  Kendra filed a second federal lawsuit against The Promise Keepers, Inc., The Promise Keepers 417 Inc., and The Promise Keepers 417, Inc. after the named defendants in the first federal lawsuit transferred property and assets fraudulently to defendants in the second lawsuit.  Amended Complaint, *Ross v. The Promise Keepers*, No. 19-2091 (D. Kan. Mar. 25, 2019), ECF No. 45.  The court, again, awarded Kendra default judgment and awarded her damages on part of her fraudulent transfer claim.  Memorandum and Order, *Ross v. The Promise Keepers*, No. 19-2091 (D. Kan. July 17, 2017), ECF No. 85.

Plaintiffs—filing suit as individual members of the community—allege Kendra breached a member agreement with the community and committed defamation.  They argue Kendra, once a child member of the United Nation of Islam, must follow a membership agreement (evidenced by an example "savior letter") because they provided food, shelter, and education to her while she was a child member in the United Nation of Islam.  *See* Doc. 1-1 at 28.  Plaintiffs describe the agreement as one requiring lifelong servitude for the community, even when a member joins

the community as a child.  They also allege Kendra defamed the United Nation of Islam and the community when she filed her federal lawsuit in 2017, in her interview on NBC's *Today Show*, and when A&E aired an episode about the United Nation of Islam.  For the following reasons, the court denies all of plaintiffs' motions and grants Kendra's Motions to Dismiss in these four cases.[2]

## II.    PLAINTIFFS' MOTIONS FOR RECUSAL

Plaintiffs filed Motions for Recusal requesting the undersigned judge recuse himself under 28 U.S.C. § 455 in all four cases.  They argue that because the undersigned judge ruled in favor of Kendra in *Ross v. Jenkins*, No. 17-2547 (D. Kan), he cannot consider plaintiffs' claims impartially in these four cases.[3]  Kendra filed Responses and plaintiffs filed Replies.  For the following reasons, the court denies plaintiffs' Motions for Recusal.

Under § 455, a judge must disqualify himself  "in any proceeding in which his impartiality might reasonably be questioned," or "[w]here he has a personal bias or prejudice concerning a party . . . ."  28 U.S.C. § 455(a) & (b)(1).  The test for determining impartiality is an objective one, based on a judge's "outward manifestations and reasonable inferences drawn therefrom."  *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (citation omitted).  Speculation, opinion, and adverse rulings are no reason for recusal under § 455.  *United States v. Cooley*, 1 F.3d 985, 993–94 (10th Cir. 1993).

---

[2]      Defendant Cheryl Ross has not appeared in any of these four actions and she has signed no filings made in them.  So, the court cannot consider the arguments that Kendra raises to support dismissal of the claims against Cheryl.  *See infra* Section V.

[3]      In their Replies, plaintiffs also argue this court "is required to follow the default protocol under 45 CFR 681.10."  Doc. 27 at 2.  Construing their filings liberally, plaintiffs appear to argue that this court must enter default against Kendra and Cheryl for failing to respond in a timely manner.  *Id.*  This argument is without merit, as explained in Section IV, below.

Plaintiffs reason that the undersigned judge ruled in favor of Kendra in *Ross v. Jenkins*, No. 17-2547 (D. Kan.) and thus cannot consider the proceedings in these four cases impartially. They argue Kendra misled the court in her previous federal lawsuits. And, they assert, the undersigned cannot rule in plaintiffs' favor without a conflict of interest because of his rulings in Kendra's prior lawsuits.

But adverse rulings provide no reason for recusal. *See Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (stating that "adverse rulings 'cannot in themselves form the appropriate grounds for disqualification'" (quoting *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992))). *See also Glass v. Pfeffer*, 849 F.2d 1261, 1268 (10th Cir. 1988) (holding district court did not abuse discretion in refusing to recuse because the record was clear that the "recusal motions in fact [were] simply an avenue to attack adverse rulings made in a case pending" before the district court). Plaintiffs identify no other facts that might call into question the undersigned's impartiality or suggest that the undersigned has a bias or prejudice. In sum, plaintiffs have failed to establish any grounds to remove the assigned judge from this case. Therefore, the court denies the following motions:

- Motion for Recusal, *Woods v. Ross*, No. 21-2011 (D. Kan. Mar. 19, 2021), ECF No. 23.
- Motion for Recusal, *Muhammad v. Ross*, No. 21-2012 (D. Kan. Mar. 23, 2021), ECF No. 22.
- Motion for Recusal, *Johnson v. Ross*, No. 21-2013 (D. Kan. Mar. 19, 2021), ECF No. 22.
- Motion for Recusal, *Robertson v. Ross*, No. 21-2014 (D. Kan. Mar. 19, 2021), ECF No. 19.

## III.   PLAINTIFFS' MOTIONS TO REMAND AND MOTIONS TO TRANSFER CASE

Kendra removed these actions from the District Court of Wyandotte County, Kansas, alleging diversity jurisdiction exists under 28 U.S.C. § 1332(a). Doc. 1 at 3 (Notice of Removal

5

¶ 8).  Plaintiffs filed what the court construes as Motions to Remand asking the court send the cases back to the District Court of Wyandotte County, Kansas.  *See generally* Doc. 7 (asserting the court does not have jurisdiction over this action); *see also* Doc. 29 (seeking transfer back to state court).  Plaintiffs' extensive and numerous motions fail to respond to Kendra's argument that diversity jurisdiction exists under 28 U.S.C. § 1332(a).  *See* Docs. 7, 29.  For the following reasons, the court denies plaintiffs' Motions to Remand and Motions to Transfer Case.

       *i.*     *Legal Standard*

The court carries an independent obligation to satisfy itself that subject matter jurisdiction exists.  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  And the court "must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 12(h)(3).  A "party invoking diversity jurisdiction bears the burden of proving its existence by a preponderance of the evidence."  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

A defendant may remove a civil action under 28 U.S.C. § 1441(a) to federal court if the parties originally could have filed it in federal court.  This provision includes cases where diversity jurisdiction exists.  Federal courts have diversity jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States[.]"  28 U.S.C. § 1332(a).  "Diversity jurisdiction requires complete diversity—no plaintiff may be a citizen of the same state as any defendant." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015).  The "relevant time period for determining the existence of complete diversity is the time of the filing

of the complaint." *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015).

"For purposes of diversity jurisdiction, a person is a citizen of a state if the person is domiciled in that state." *Middleton*, 749 F.3d at 1200. "And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Id.* When a court determines "a person's domicile for diversity-jurisdiction purposes, a district court should consider the totality of the circumstances." *Id.* at 1200–01. For an individual, "[r]esidence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile." *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (citation omitted); *see also HFR, Inc. v. Hildyard*, No. 05-2300-JWL, 2007 WL 4374174, at *3 (D. Kan. Dec. 13, 2007) (same). So, when a party invokes diversity jurisdiction and alleges residence, the burden shifts to the party challenging diversity jurisdiction to show "that domicile and citizenship are elsewhere[.]" *Hildyard*, 2007 WL 4374174, at *3 (citing *Kelleam v. Md. Cas. Co.*, 112 F.2d 940, 943 (10th Cir. 1940), *rev'd on other grounds*, 312 U.S. 377 (1941)). The "prima facie case flowing from an allegation of residence must be backed up by a district court finding, at some later point in the proceeding, as to the existence of diversity at the time of the filing of the complaint." *Siloam Springs*, 781 F.3d at 1238.

The court applies this standard to determine whether it has subject matter jurisdiction over these actions under 28 U.S.C. § 1332(a).

*ii.    Analysis*

Kendra removed these actions to federal court under 28 U.S.C. § 1441(a) based on diversity jurisdiction. In all four cases, she alleges the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the plaintiff and both defendants, thus

conferring diversity jurisdiction on this court under 28 U.S.C. § 1332(a).  The court agrees with Kendra.

Plaintiffs filed Motions to Remand arguing this court does not have jurisdiction over private contract disputes.  Doc. 7 at 1.  Plaintiffs then argue that the Constitution, federal statutes, bankruptcy, antitrust, maritime, and admiralty jurisdiction do not exist in these cases.  Plaintiffs also assert that a United States District Court is a "territorial court that has venue over federal enclaves, federal zones and territories" and the alleged "contract breach happened within the County of Wyandotte County in Kansas City which is not a federal enclave, federal zone or territory."  *See id.* at 2–3.  And plaintiffs assert that defense counsel, Christopher Dove, "lacks standing" and has attempted to gain an unfair advantage by moving this action to federal court. *Id.* at 3.  Plaintiffs' remand motions fail to assert any fact or argument that the court could construe as challenging diversity jurisdiction.

Plaintiffs also filed Motions to Transfer Case.  These filings argue this court does not have jurisdiction and the court should return the cases to state court.  *See* Doc. 29.  Plaintiffs reason that there is no jurisdiction unless defendants have "evidence that Kansas lacks state standing and falls under an outlying territorial possession, or a federal enclave or comes under a military district to remove this action from a state court . . . ."  *Id.* at 3.  Plaintiffs also seek "[r]eversal on the decision of the KENDRA ROSS vs. ROYALL JENKINS case" and assert "Christopher S. Dove is trying to evade (not avoid) like the plague from [them] receiving due process in this case[.]"  *Id.* at 4.  Again, nothing in these filings addresses Kendra's assertion of diversity jurisdiction under 28 U.S.C. § 1332(a) in these four actions.

Plaintiffs have failed to provide any binding authority precluding this court's subject matter jurisdiction over diversity cases under 28 U.S.C. § 1332(a).  So, the court need only

consider whether diversity jurisdiction exists to determine whether it has subject matter jurisdiction over these four actions.[4]  The court next explains both reasons leading to this conclusion.

*First*, diversity jurisdiction requires that the amount in controversy exceed $75,000.  28 U.S.C. § 1332(a).  "If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2).  Each plaintiff seeks damages totaling

---

[4]      Plaintiffs have waived any argument that Kendra's Notice of Removal was defective procedurally under 28 U.S.C. § 1446(b).  *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").  Plaintiffs' motions challenge neither the timeliness of removal nor whether both defendants consented to removal—procedural defects—within the required 30 days after removal.

Kendra removed these actions to federal court on January 11, 2021.  Doc. 1 at 1.  Plaintiffs have not served Kendra with service of process.  *See* Doc. 1-1 (all pleadings and documents filed in the District Court of Wyandotte County, Kansas).  Plaintiffs assert they served Kendra and attach a United States Postal receipt which claims to have sent something to McGuire Woods LLP in Washington, D.C.  *See* Doc. 1-1 at 15 (USPS tracking slip with no explanation or copy of what was sent or confirmation from recipient).  Plaintiffs claim Kendra's residence is under protection, *id.* at 10, but also claim they served the summons on Kendra's residence in Virginia, *id.* at 14.  Plaintiffs' contradictory statements and poorly supported Motion for Default Judgment fail to explain how they served Kendra properly.  Since plaintiffs have failed to serve Kendra properly with service, the 30 day time limit has not started running.  *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading[.]").  Regardless, plaintiffs did not challenge the timeliness of removal within the required 30 days and thus they have waived the argument.

Kendra asserts "Cheryl Ross expressly consents to the removal of this case to this federal court."  Doc. 18 at 1 n.1.  But, Kendra did not assert Cheryl consented to removal until February 26, 2021, more than a month after removing the actions to this court.  *See id.*; *see also* Doc. 1 (Notice of Removal filed January 11, 2021).  This delay is inconsequential.  The "lack of unanimous consent is a procedural defect, not a jurisdictional defect."  *Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp.*, 98 F. App'x 752, 756 (10th Cir. 2004) (first citing *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 580 (10th Cir. 1997); then citing *Sheet Metal Workers Int'l Ass'n v. Seay*, 693 F.2d 1000, 1005 n.8 (10th Cir. 1982)).  Plaintiffs have not challenged the unanimous consent requirement, so, plaintiffs have waived this procedural defect argument.  *See id.* (reversing district court's order that granted plaintiff's untimely motion to remand based on lack of unanimity because this omission constituted a procedural and not jurisdictional defect, and plaintiffs thus had waived the procedural defect argument).

$1,740,000, plus pre-judgment interest and all attorney's fees incurred in prosecuting this action. *See* Doc. 1-1 at 34 (Petition); Exhibit A to Notice of Removal (Petition), *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 34; Exhibit A to Notice of Removal (Petition), *Johnson v. Ross*, No. 21-2013 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 30; Exhibit A to Notice of Removal (Petition), *Robertson v. Ross*, No. 21-2014 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 17.  These demands satisfy the amount in controversy requirement for each action.

*Second*, diversity jurisdiction requires complete diversity between plaintiffs and defendants.  Kendra, as the party invoking diversity jurisdiction, holds the burden to show by a preponderance of the evidence that complete diversity exists in each case.  *See Middleton*, 749 F.3d at 1200.

The Notice of Removal in Case No. 21-2011 asserts plaintiff Ephraim Woods, Jr. claims a Kansas domicile and is thus a Kansas citizen.  Doc. 1 at 3; *see also* Doc. 1-1 at 24–25 (Petition) (listing Woods's Kansas City, Kansas address and asserting "at all times relevant to the allegations contained herein, Plaintiff was, and still is, a resident of Wyandotte County").  The Notice of Removal in Case No. 21-2012 asserts plaintiff Fatimah Muhammad claims a Kansas domicile and is thus a Kansas citizen.  Notice of Removal, *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 11, 2021), ECF No. 1 at 3; Exhibit A to Notice of Removal (Petition), *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 24–25 (listing Muhammad's address in Kansas City, Kansas and asserting "Plaintiff was, and still is, a resident of Wyandotte County").  The Notice of Removal in Case No. 21-2013 asserts plaintiff Dwight Johnson alleges a Kansas domicile and is thus a Kansas citizen.  Notice of Removal, *Johnson v. Ross*, No. 21-2013 (D. Kan. Jan. 11, 2021), ECF No. 1 at 3; Exhibit A to Notice of Removal (Petition), *Johnson v. Ross*, No. 21-2013 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 24–25 (listing Dwight

Johnson's Kansas City, Kansas address and asserting he "was, and still is, a resident of Wyandotte County").  The Notice of Removal in Case No. 21-2014 asserts plaintiff Raasikh Robertson alleges a Kansas domicile and is thus a Kansas citizen.  Notice of Removal, *Robertson v. Ross*, No. 21-2014 (D. Kan. Jan. 11, 2021), ECF No. 1 at 4; Exhibit A to Notice of Removal (Petition), *Robertson v. Ross*, No. 21-2014 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 8–9 (listing Robertson's Kansas City, Kansas address and asserting Robertson "was, and still is, a resident of Wyandotte County").  Plaintiffs have not challenged Kendra's assertions about their citizenship or domicile in their filings.  So, Kendra has shown, by a preponderance of the evidence, that each plaintiff is a Kansas citizen for diversity jurisdiction purposes.

All four plaintiffs name Kendra Ross and Cheryl Ross as defendants in their lawsuits. Kendra alleges she is domiciled in the United States but not in Kansas.  Doc. 1 at 3 (Notice of Removal ¶ 10).  Asserting a fear of reprisal by the United Nation of Islam, Kendra "is not willing to reveal her current personal residence and domicile without appropriate Court protections."  *Id.* The court concludes that Kendra sufficiently alleges she is a citizen of a state other than Kansas, thus alleging citizenship that is diverse from plaintiffs.  *See Logsdon v. AT&T Commc'ns of the Sw., Inc.*, No. 02-2519-JWL, 2002 WL 31941059, at *1–2 (D. Kan. Dec. 18, 2002) (holding defendant's removal notice sufficiently alleged diversity jurisdiction by alleging defendant corporation "is incorporated in a state other than Kansas with its principal place of business in a state other than Kansas" (internal quotation marks omitted)); *see also Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 916 n.3 (10th Cir. 1993) (noting "[d]iversity jurisdiction is premised upon the parties being from different states; which states those happen to be is not relevant if the party can be served, as long as it is clear that the possibilities do not include states that would destroy diversity"), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

11

Kendra also asserts that plaintiffs identify "Cheryl Ross as being domiciled in Tennessee[,]" so, she alleges, "Cheryl Ross, therefore is a citizen of Tennessee for diversity purposes." Doc. 1 at 3 (Notice of Removal ¶ 11). Kendra alleges "[c]omplete diversity exists" in these cases because all of the plaintiffs are citizens of Kansas and "neither of the defendants, both of whom are in the United States, are citizens of Kansas." *Id.* (Notice of Removal ¶ 12). But plaintiffs' filings do not explicitly identify Cheryl's domicile as Tennessee. Still, after review of all the Notices of Removal and attached documents, there is sufficient evidence that Cheryl's residence was in Tennessee when plaintiffs filed their actions in September 2020. And nothing in the record shows otherwise.

For instance, plaintiffs served process on Cheryl Ross in Tennessee. Also, all state court documents list a Tennessee address for Cheryl. And, plaintiffs assert Cheryl signed a document that she filed with the state court which listed the same Tennessee address. In their Petitions, plaintiffs assert both defendants once were residents of Wyandotte County, Kansas, but since have moved. On reviewing the Notices of Removal and attached documents, there is sufficient evidence to support a finding—by a preponderance of the evidence—that Cheryl was a resident of Tennessee when plaintiffs filed their lawsuits in September 2020. Since removing these actions, all filings in the cases are consistent with finding Cheryl's residence was in Tennessee when plaintiffs filed their Petitions. Kendra, in her Memorandum in Support of her Motion to Dismiss, confirms that both defendants live far from Kansas. In her Responses to the plaintiffs' Motions to Remand, she contends that complete diversity exists because plaintiffs are citizens of Kansas and neither of the defendants, both of whom are in the United States, are citizens of Kansas. Starting in April 2021, plaintiffs' filings list Cheryl's Tennessee address as her last known address. Neither plaintiffs nor defendants have filed anything with the court asserting (or

implying) Cheryl's residence was anywhere other than Tennessee when plaintiffs filed their Petitions. Cheryl's Tennessee residency is sufficient to support a finding that her citizenship is in Tennessee for purposes of diversity jurisdiction when plaintiffs filed their Petitions.

In sum, each plaintiff seeks more than $75,000 in damages from defendants. And, there is sufficient evidence to support a finding that all plaintiffs are citizens of Kansas and both named defendants—Kendra Ross and Cheryl Ross—are citizens of a state other than Kansas. Thus, the court finds that a preponderance of the evidence establishes diversity jurisdiction over all four actions under 28 U.S.C. § 1332(a).

    *iii.*    *Conclusion*

Kendra has shown diversity jurisdiction exists in these four actions. *See* 28 U.S.C. § 1332(a). So, this court may exercise subject matter jurisdiction over these cases. The court thus denies the following motions:

- Motion to Remand, *Woods v. Ross*, No. 21-2011 (D. Kan. Jan. 22, 2021), ECF No. 7.
- Motion to Remand, *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 22, 2021), ECF No. 7.
- Motion to Remand, *Johnson v. Ross*, No. 21-2013 (D. Kan. Jan. 22, 2021), ECF No. 7.
- Motion to Remand, *Robertson v. Ross*, No. 21-2014 (D. Kan. Jan. 25, 2021), ECF No. 9.
- Motion to Transfer Case, *Woods v. Ross*, No. 21-2011 (D. Kan. May 13, 2021), ECF No. 29.
- Motion to Transfer Case, *Muhammad v. Ross*, No. 21-2012 (D. Kan. May 13, 2021), ECF No. 28.
- Motion to Transfer Case, *Johnson v. Ross*, No. 21-2013 (D. Kan. May 17, 2021), ECF No. 28.
- Motion to Transfer Case, *Robertson v. Ross*, No. 21-2014 (D. Kan. May 13, 2021), ECF No. 25.

## IV.    PLAINTIFFS' MOTIONS FOR DEFAULT JUDGMENT

Plaintiffs filed motions in the District Court of Wyandotte County asking for default judgment against Kendra and Cheryl under Federal Rule of Civil Procedure 55(a). *See* Doc. 1-1

at 16.  They assert Kendra and Cheryl failed to respond timely to plaintiffs' Petitions filed in the

Kansas state court.  *Id.* at 20.[5]   Kendra filed Responses to plaintiffs' Motions for Default

Judgment.

Kendra asserts three principal arguments against default judgment:  (1)  plaintiffs never

have secured a default under Fed. R. Civ. P. 55(a) against defendants, (2) plaintiffs have not

served Kendra, and (3) the court may decline to enter a default judgment if the complaint fails to

state a claim for relief.  For the following reasons, the court denies plaintiffs' Motions for

Default Judgment.

*First*, before the court can enter default judgment against a party under Fed. R. Civ. P. 55,

the Clerk of the Court must enter a default under Fed. R. Civ. P. 55(a).  10A Wright & Miller,

*Federal Practice and Procedure* § 2682 (4th ed. 2021) ("Prior to obtaining a default judgment

under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by

Rule 55(a).").  Federal Rule of Civil Procedure 55(a) allows a party to seek default from the

Clerk of the Court against a party "whom a judgment for affirmative relief is sought" when the

party "has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise[.]"  Plaintiffs filed their Motions for Default Judgment in the District Court of

Wyandotte County, Kansas.  But the state court never decided these motions nor did it enter

default against defendants, and then Kendra removed these actions to federal court.  Since

---

[5]      The court notes that Cheryl has not entered an appearance since Kendra removed these four cases
from state court on January 11, 2021.  But, plaintiffs allege Cheryl filed a letter with the District Court of
Wyandotte County, Kansas which asserted she would appear in the state court proceedings.  *See* Doc. 1-1
at 5 (correspondence filed with District Court of Wyandotte County which Cheryl Ross, and a notary,
signed).  This letter does not provide a date when Cheryl intended to appear.  *Id.*  Plaintiffs also allege
that "on December 5th, 2020 defendant Cheryl Ross attempted to answer [the] initial complaint with an
unintelligible and nonsensical letter to the court[.]"  Doc. 1-1 at 20.  These statements conflict with
plaintiffs' allegations that Cheryl never has appeared to defend this case.  In any event, default judgment
isn't warranted here, as the court explains in Part IV.

arriving in federal court, plaintiffs never have asked the Clerk of our Court to enter default under Fed. R. Civ. P. 55(a).  So, plaintiffs have not met a threshold requisite for this court to consider default judgment.  The court thus denies plaintiffs' request for default judgments against defendants.

*Second*, plaintiffs haven't even served Kendra properly, so entering a default for her alleged failure to answer plaintiffs' Petitions against her is improper.  "Before a default can be entered, the court must have subject-matter jurisdiction and jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process."  10A Wright & Miller, *Federal Practice and Procedure* § 2682 (4th ed. 2021). Based on the evidence before the court, plaintiffs mailed the state court summons and Petitions to attorneys they believed to represent Kendra.  Doc. 1-1 at 16 (listing in the Petition Gillian Chadwick from the Washburn University School of Law and McGuire Woods LLP and asserting "As [Kendra's] residence is allegedly under protection the above is being served on" her behalf). But, there is no acknowledgement from Kendra, or any attorney on her behalf, that they received this service of process through the mail nor that Kendra waived her right to personal service. Plaintiffs have failed to explain how their attempted service on persons who they believed were Kendra's attorneys can suffice as service of process under the state court's procedural rules or the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 4 (listing service requirements).  Thus, default is not proper against Kendra.[6]

---

[6]      For service on Cheryl, Kendra asserts in a footnote that plaintiffs failed to comply with Kansas's service of process requirements in Kan. Stat. Ann. § 60-312 because the plaintiffs did not return their proof of service on Cheryl in the prescribed 14 days.  *See* Doc. 13 at 6 n.1.  The court declines to consider this argument because Kendra asserts it on behalf of Cheryl who never has appeared in this action.  But, even if the court were to consider the argument, our court has found that failing to return service of process timely does not void otherwise valid service under Kansas law.  *Freeman v. Freeman*, No. 02-2032-JWL, 2002 WL 539061, at *1 n.1 (D. Kan. Mar. 18, 2002) (rejecting defendant's argument that service was ineffective under Kan. Stat. Ann. § 60-312(d) because the return of service was delivered to

*Third*, Kendra argues this court may deny default judgment if plaintiffs fail to state a claim for relief.  She is right.  Even when entry of default is procedurally appropriate, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (internal quotation marks omitted).  If plaintiffs' claims are barred or subject to dismissal under Fed. R. Civ. P. 12(b)(6), then the court may deny default judgment.  *See id.* (affirming district court's denial of default judgment because "plaintiffs' claims were barred or were subject to dismissal under Rule 12(b)(6)").  As discussed below, plaintiffs fail to state a claim for relief against Kendra under Fed. R. Civ. P. 12(b)(6), so, the court also declines to enter a default judgment against Kendra on that basis.

The court thus denies the following motions:

- Motion for Default Judgment, *Woods v. Ross*, No. 21-2011 (D. Kan. Jan. 11, 2021), ECF No. 11.
- Motion for Default Judgment, *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 11, 2021), ECF No. 11.
- Motion for Default Judgment, *Johnson v. Ross*, No. 21-2013 (D. Kan. Jan. 11, 2021), ECF No. 11.

Defendants' Motions for Leave to File Opposition to plaintiffs' Motions for Default Judgment, listed below, are granted.

- Motion for Leave to File Opposition to Motion for Default Judgment, *Woods v. Ross*, No. 21-2011 (D. Kan. Feb. 26, 2021), ECF No. 18.
- Motion for Leave to File Opposition to Motion for Default Judgment, *Muhammad v. Ross*, No. 21-2012 (D. Kan. Feb. 26, 2021), ECF No. 17.
- Motion for Leave to File Opposition to Motion for Default Judgment, *Johnson v. Ross*, No. 21-2013 (D. Kan. Feb. 26, 2021), ECF No. 17.

---

the state court clerk untimely) (citing *Cook v. Freeman*, 825 P.2d 1185, 1188 (Kan. Ct. App. 1992)).  So, even if the court considered Kendra's argument that plaintiffs improperly served Cheryl, the court would reject it.

## V.   DEFENDANT'S MOTIONS TO DISMISS AND REQUEST FOR ORAL ARGUMENT[7]

Plaintiffs assert two causes of action against Kendra Ross and Cheryl Ross:  (1) breach of contract and (2) defamation.  Kendra has filed Motions to Dismiss and Requests for Oral Argument asserting plaintiffs fail to state a claim against her or Cheryl, Kendra's mother. Plaintiffs have not responded to Kendra's Motions to Dismiss and the time to do so has passed. For the following reasons, the court grants Kendra's Motions to Dismiss and dismisses her from these actions with prejudice.

### i.   Facts Alleged in Petitions

The court takes the following facts from plaintiffs' Petitions and views them in the light most favorable to plaintiffs.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (explaining the court "assume[s] the factual allegations are true and ask[s] whether it is plausible that the plaintiff is entitled to relief" on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (internal quotation marks omitted)).

Plaintiffs assert each member of the United Nation of Islam ("UNOI") is informed of the guidelines and terms of the existing conditions to live and operate in the community.  Doc. 1-1 at 25.  Those who choose to join the community, they allege, must agree to the terms of the contract.  *Id.*  And if a member refuses to live by the terms of the contract, then the member is free to leave at any time.  *Id.*  Plaintiffs allege they each joined the UNOI "with the understanding that any goods, services or time invested that were rendered from [their] fleshly being would be donated (whether monetary or physical goods) on a volunteer basis."  *Id.* at 29.

---

[7]    Kendra requests oral argument on her Motions to Dismiss.  *See* Doc. 5 at 1.  D. Kan. Rule 7.2 provides:  "The court may set any motion for oral argument or hearing at the request of a party or on its own initiative."  After reviewing the parties' written submissions, the court finds that oral argument will not assist its work and thus, to grant it, would contradict Fed. R. Civ. P. 1.  The court thus denies Kendra's request for a hearing.

This membership type is "[s]imilar to religious organizations such as the Amish, Hutterites or Mennonites that are not considered 'cults'." *Id.* Kendra and Cheryl allegedly were aware of the "clear steps and information for every potential member" for processing into the community. *Id.* This included attending three meetings, orientation class, and the "processing member then wrote a savior's letter (a written contract/agreement) which was the standard for all UNOI Members that were of the age of majority (18 years) and, then in turn, mailed it to UNOI HQ's for approval." *Id.* Plaintiffs attached two examples of this "UNOI contract/agreement" to the Petitions. *Id.* Only one example contract/agreement is legible. It reads as follows:

> Dear Saviour Allah The Deliverer:
>
> I am in agreement with the wisdom I hear coming from you. I would like to reclaim my own and be with you. I bear witness that there is no God other than Allah and that The Honorable Elijah Muhammad is Thy Lost Messenger and Servant. I pray you accept me and give me my Original name. My slave name is as follows:

Doc. 1-1 at 38 (Exhibit A to Petition).

Cheryl allegedly joined the UNOI with her children, including Kendra, in 1995. *Id.* at 27. Cheryl went through a training course to ensure she knew the terms and conditions of the community. *Id.* The terms provided that if Cheryl chose to become a full time member of the community, then the community would provide housing, medical, food, clothing, and schooling for her and her children—including Kendra. *Id.* Plaintiffs alleged that Cheryl and Kendra received job skills training if they chose membership within the community. *Id.* at 28.

Plaintiffs claim that Kendra violated this "agreement" when she turned 18 years old and decided to leave the community. *Id.* This "agreement" is the same one Cheryl agreed to when Kendra was a minor and under the "jurisdiction and control of her mother." *Id.* Kendra returned to the UNOI community and married a "Brother." *Id.* But thereafter, Kendra decided to leave the community again. *Id.*

18

In 2017, Kendra still was under the "the memorandum of agreement/contract to which she received the benefits of while as a minor under Mother Cheryl Ross' jurisdiction." *Id.* So, Kendra's 2017 lawsuit in our court occurred years after "being out of the community[.]" *Id.* Kendra never became a member of the Value Creators or Promise Keepers but her actions— claiming human trafficking and labor violations in her federal lawsuit—violated the terms of membership. *Id.* The "memorandum of agreement/contract is the same with the Value Creators and the Promise Keepers." *Id.* Kendra's actions "caused irreparable damage against these communities/people" and has resulted in the loss of "the right to work in the community, schooling, medical treatment from the community, food, housing and etc." *Id.*

Plaintiffs' defamation claims allege that Kendra made false claims in her federal lawsuits in this court. *See* Doc. 1-1 at 30–31 (citing *Ross v. Jenkins*, No. 17-2547 (D. Kan.)). Then, after the court case, the UNOI was profiled as a human trafficking cult. *Id.*; *see* Exhibit A to Notice of Removal, *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 32 (Petition). On October 3, 2018, Kendra decided to "spread her fraudulent claims" when she appeared on NBC's *Today Show* for an interview with Megyn Kelly "without presenting one shred of evidence or 1st hand witness to validate her false allegations[.]" Doc. 1-1 at 31. "Kendra Ross' national television appearance on the NBC Today Show with Megyn Kelly (and her attorney Elizabeth Hutson) paved the way for an episode on the A&E series entitled 'Cults and Extreme Belief' S01:E04 – U.N.O.I. to be broadcast nationwide on cable T.V. and the internet; once again labeling [plaintiffs'] community as a 'cult.'" *Id.*

Plaintiffs each claim to have sustained financial loss from Kendra's allegations in her Complaint in *Ross v. Jenkins*, No. 17-2547, that UNOI was a cult. *Id.* at 32. They allege assets were frozen, business revenues fell, and standing in the broader community declined because

Kendra filed her federal lawsuit in *Ross v. Jenkins*, No. 17-2547 (D. Kan.). *Id.*

ii.     *Legal Standard*

Kendra argues the court should dismiss both of plaintiffs' two claims for failure to state a

claim under Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Thus, mere 'labels and conclusions' and 'a

formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air

Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555

F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is

plausible and not merely possible that the plaintiff is entitled to relief under the relevant law."

(citation omitted)). Essentially, "the complaint must give the court reason to believe that *this*

plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red

Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Accordingly, in examining a

complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to

whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671

F.3d at 1191.

*iii.    Analysis*

Kendra argues the court should dismiss the breach of contract and defamation claims because they fail to state a claim for relief under Kansas law.  The court agrees, explaining why below.  This analysis begins with the choice of law question and then addresses each cause of action, in turn.

a.   Kansas Law Governs Plaintiffs' Causes of Action

Plaintiffs assert defendant Kendra Ross was a Kansas resident "[a]t all times relevant to the allegations contained" in the Petition, and that "the Breach of Contract, Slander, Defamation and Libel were committed" in Wyandotte County, Kansas.  Doc. 1-1 at 25 (Petition).  Kendra argues Kansas's choice of law rules apply Kansas law to both claims.

"In actions where jurisdiction is based on diversity of citizenship, the substantive law, including the choice of law rules, of the forum state is applied."  *Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir. 1989).  Our court is in Kansas and thus applies the substantive law and choice of law rules adopted by Kansas law.

*First*, on the contract claims, "Kansas courts apply the doctrine of *lex loci contractus*, which requires that the Court interpret the contract according to the law of the state in which the parties performed the last act necessary to form the contract."  *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000) (citing *Mo. Pac. R.R. Co. v. Kan. Gas and Elec. Co.*, 862 F.2d 796, 798 n.1 (10th Cir. 1988)).  Here, plaintiffs allege Kendra's mother bound her to the member agreement when she joined the UNOI in 1995.  *See* Doc. 1-1 at 27–28.  And, they assert, at all relevant times to the allegations in their Petitions, plaintiffs and defendants were residents of Wyandotte County, Kansas.  *See id.* at 25.  Plaintiffs' allegations thus allege that the parties formed their alleged contract in Kansas and Kansas law thus governs the contract claims.

*Second*, plaintiffs' tort claims—libel, slander, defamation—also are governed by Kansas law.  For tort claims, Kansas applies "the doctrine of *lex loci delicti*, meaning 'the law of the place where the tort was committed' or where the wrong occurred."  *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1031 (D. Kan. 2018) (quoting *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1046 (D. Kan. 1990) (further citation omitted)).  "Where the wrong occurred is generally considered to be the place where the injury was suffered."  *Id.*  Plaintiffs allege they resided in Wyandotte County, Kansas "at all times relevant to the allegations[,]" and plaintiffs also allege Kendra's tortious conduct occurred in Wyandotte County.  Doc. 1-1 at 25.  So, plaintiffs sustained any injuries in Kansas and the wrong occurred in that state.  These conclusions render Kansas law as the source applying to plaintiffs' tort claims.

b.   Plaintiffs' Breach of Contract Claims[8]

Plaintiffs' contract claims assert Kendra was bound to a member agreement with the

UNOI, Value Creators, and the Promise Keepers because her mother—Cheryl—chose to join the

"community" and agreed to the terms of the contract while Kendra was a minor.  They assert

Kendra violated that agreement by leaving the community when she turned 18 and later filed her

lawsuit alleging human trafficking and labor law violations.  Kendra argues plaintiffs fail to state

a claim for relief because:  (1) plaintiffs do not allege they were parties to the agreements they

are attempting to enforce; and (2) plaintiffs do not allege conduct constituting a breach of

contract.  The court agrees with Kendra on both points, and addresses each of her arguments in

more detail below.

To assert a breach of contract claim under Kansas law, plaintiffs must allege facts that, if

---

[8]      To the extent plaintiffs' Petitions assert an unjust enrichment claim, they fail to state a claim for
relief.  Kendra notes it is possible that plaintiffs assert a claim for unjust enrichment in their Petitions by
stating they seek "damages and full restitution and to be made whole[.]"  *See* Doc. 6 at 5 n.4.  Kendra
argues that if plaintiffs are asserting an unjust enrichment claim, they have failed to allege facts capable of
supporting this cause of action.

An unjust enrichment claim governed by Kansas law requires:  "1) a benefit conferred; 2) an
appreciation or knowledge of the benefit by the one receiving the benefit; and 3) the acceptance or
retention of the benefit under such circumstances as to make it inequitable to retain the benefit without
payment of its value."  *Suture Express, Inc. v. Cardinal Health 200, LLC*, 963 F. Supp. 2d 1212, 1229–30
(D. Kan. 2013).  The first element requires a "benefit conferred upon the defendant by the plaintiff[.]"
*J.W. Thompson Co. v. Welles Prod. Corp.*, 758 P.2d 738, 745 (Kan. 1988); *see also Suture*, 963 F. Supp.
2d at 1230.

Plaintiffs have failed to allege any facts to support a finding or inference of the first two elements
of an unjust enrichment claim.  Plaintiffs bring these suits in their individual capacities.  Their claims fail
to allege that they conferred a benefit on Kendra.  Instead, they allege that UNOI provided benefits to
Kendra while she was a child in the community.  But plaintiffs cannot assert rights other than their own.
*See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (explaining "plaintiff generally must assert his own legal
rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").
Plaintiffs also fail to allege facts supporting the second element because they have not alleged that Kendra
appreciated or knew of the benefit received from the UNOI.  So, if one construes the Petitions liberally to
assert a claim for unjust enrichment, they fail to allege facts sufficient to state a plausible claim under
Kansas law.

true, would establish the following elements:

> (1) the existence of a contract between the parties;
> (2) sufficient consideration to support the contract;
> (3) the plaintiff's performance or willingness to perform in compliance with the contract;
> (4) the defendant's breach of the contract; and
> (5) damages to the plaintiff caused by the breach.

*Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013).  None of plaintiffs' Petitions assert any facts that, if proved true, could establish two elements of this formulation.

*First*, plaintiffs fail to plead any facts that, if true, could support the first element.  In simple terms, this element requires plaintiffs to allege that they are a party to the contract that was breached.  To be sure, plaintiffs allege—at great length—a convoluted theory about how Cheryl joined the UNOI.  Their theory continues, asserting that Kendra benefited from her mother's membership in UNOI.  It concludes by alleging that Kendra "was still under the memorandum of agreement/contract to which she has received the benefits of while as a minor under Mother Cheryl Ross' jurisdiction" even after she had departed from the community.  Doc. 1-1 at 28.  They even assert that while Kendra "was never a member of the Value Creators or that of the Promise Keepers. . . . [H]er action of claiming human trafficking and labor claims against the United Nation of Islam is a contract violation to the agreement of being a member." *Id.*  Even if all of this is true, it can't possibly satisfy plaintiffs' burden to prove that they are parties to a contract that Kendra allegedly breached.  This omission, by itself, means plaintiffs have failed to state a claim upon which the court could grant relief.  But there's more.

*Second*, each plaintiff's Petition fails to allege adequate facts capable of supporting a finding that Kendra breached an adequately pleaded contract.  Plaintiffs never allege any facts identifying the contract that Kendra purportedly violated.  And they never allege facts that, if true, could make Kendra's actions (or omissions) a breach of the contract.  Instead, plaintiffs

simply plead conclusions—*e.g.*, Kendra "breached a contract with the community"—and those won't suffice.

On a motion to dismiss, the court must assume properly pleaded facts are true.  But this duty does not extend to legal conclusions.  *See Khalik*, 671 F.3d at 1191 (on a motion to dismiss, the court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable").  Once one moves past the conclusory statements in the Petitions, the problem—for plaintiffs—is that their Petitions don't contain any of the requisite factual allegations to support a finding of breach.

In sum, plaintiffs have failed to "give the court reason to believe that *this* [group of plaintiffs] has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk*, 493 F.3d at 1177.  Plaintiffs have failed to discharge their burden on two of the five elements required by Kansas law to plead a plausible claim for breach of contract.  Kendra has established that plaintiffs—in the words of Rule 12(b)(6)—have failed to plead a claim upon which the court could grant relief.  The court thus dismisses the breach of contract claims asserted against Kendra in all four Petitions.

This leaves a final question about the contract claims:  Should the court dismiss them with or without prejudice?  Generally, "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile[.]"  *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (internal quotation marks and citation omitted).  Also, the Circuit has cautioned that district courts "generally should [give] leave to amend" to pro se parties, but the corollary is that it's "appropriate to dismiss without allowing amendment where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."

*Id.* (internal quotation marks and citation omitted) (text alteration omitted).  Here, it is obvious that plaintiffs cannot prevail on the facts that they have alleged.

The gravamen of plaintiffs' contract theory alleges that Kendra breached a contract she had formed with someone else, *i.e.*, the UNOI.  No amount of amendment will solve the dispositive failure of that theory of breach.  The court thus finds that giving plaintiffs leave to amend their Petitions would prove futile, so it dismisses all four plaintiffs' contract claims with prejudice under Rule 12(b)(6).

c.   Plaintiffs' Defamation Claims

Plaintiffs' Petitions assert a defamation claim against Kendra for defaming "the community[,]" *i.e.*, the UNOI.  Liberally construed, plaintiffs argue Kendra defamed "the community" by litigating her claims in *Ross v. Jenkins*, No. 17-2547 (D. Kan.), participating in an interview on NBC's *Today Show*, and by virtue of the A&E network's characterization of the UNOI in that network's broadcast of its program, *Cults and Extreme Belief.*  Plaintiff Woods adds an individualized claim, asserting that Kendra specifically defamed him in her federal court lawsuit by identifying him as a member of a defendant in that action—The Value Creators LLC. *See* Doc. 1-1 at 31 ("Kendra Ross'[s] statements falsely claimed that I, Ephraim 'last name woods' was associated" with a violation of federal law).

Kendra makes five arguments in her Motions to Dismiss plaintiffs' defamation claims.  In summary form, she argues that:  (1) plaintiffs have failed to plead their defamation claims sufficiently, (2) plaintiffs have failed to plead facts supporting defamation's falsity element, (3) Kansas's one-year statute of limitations bars plaintiffs' claims, (4) Kansas recognizes absolute immunity for statements made in the course of judicial proceedings, and (5) plaintiffs fail to allege reputational damages with requisite specificity.  Below, in part 2, the court analyzes each

statement invoked by plaintiffs' defamation claim.  The court also analyzes Kendra's arguments (except the last one, which the court need not reach).  But first, the court outlines the overarching legal principles that Kansas law applies to defamation claims.

### 1.  Legal Standards Governing Defamation

To plead a legally plausible defamation[9] claim, "plaintiff must satisfy the following elements:  (1) [defendant] uttered or wrote false and defamatory words; (2) [defendant] communicated these statements to a third person; and (3) plaintiff's reputation was injured as a result."  *Dominguez v. Davidson*, 974 P.2d 112, 117 (Kan. 1999) (discussing defamation elements in Kansas law).  The following standards—some procedural and some substantive— inform the court's analysis of plaintiffs' claims and Kendra's arguments supporting her motions to dismiss.

### A.  Pleading Defamation Sufficiently

"The Tenth Circuit has held that in the context of a defamation claim Rule 8(a) [of the Federal Rules of Civil Procedure] 'requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself.'"  *Sanders v. Ally Fin. Inc.*, No. 20-1305-JWL, 2021 WL 2550166, at *4 (D. Kan. June 22, 2021) (quoting *McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989)).  Judge Lungstrum, of our court, applying this federal pleading standard to Kansas defamation claims, explained that plaintiffs sufficiently plead defamation when they allege "specific statements from a particular letter" from one named defendant to another.  *Id.*  And plaintiffs alleged another defendant "expressed similar sentiments in communications" about a different defendant.  *Id.*  Thus, plaintiffs pleaded facts to

---

[9]        "An action for defamation includes libel and slander."  *Smith v. Mission Assocs. Ltd. P'ship*, 225 F. Supp. 2d 1293, 1303 (D. Kan. 2002) (citing *Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1293 (Kan. Ct. App. 1984)).

"provide sufficient notice to defendants . . . and defendants are able to mount their defense[.]" *Id.* Another court in our Circuit also has explained what *McGeorge* requires. *See Carosella v. One World Translation & Assocs., Inc*., No. 16-CV-0805-WJM-KMT, 2017 WL 11545380, at *3 (D. Colo. Mar. 1, 2017) (citing *McGeorge*, 871 F.2d at 955). This case held that the plaintiff had failed to state a plausible defamation claim because plaintiff failed to "identify precisely to whom the alleged 'disparaging remarks' were made, the time and place of the publication, and the alleged defamatory words themselves." *Id.* So, even though defamation is not assessed under a "heightened" pleading standard, the nature of defamation claims require the party claiming defamation to provide sufficient detail about the alleged defamatory conduct to allow defendants to mount a defense. *See McCoy v. Houston*, No. 16CV1377 MCA/LF, 2018 WL 4375111, at *15 (D.N.M. Sept. 13, 2018) (collecting cases assessing defamation pleadings under Rule 8).

## B.  Pleading False and Defamatory Words

"In order to constitute a defamatory statement, the speaker must make a *false* statement." *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp*., 810 F.3d 1161, 1185 (10th Cir. 2016) (affirming dismissal of plaintiff's defamation claim under Kansas law, in part, because plaintiff failed to allege facts supporting falsity). "[W]hen falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false." *Tannerite Sports, LLC v. NBCUniversal News Grp*., 864 F.3d 236, 247 (2d Cir. 2017) (collecting cases). Defamation, under Kansas law, requires falsity. So, plaintiffs must plead facts that, if proven true, would "allow a reasonable person to consider the statement false." *Id.* In assessing whether plaintiff pleads a defamation claim sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a defamation

complaint cannot couch allegations of falsity in vague, conclusory terms." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

### C. Kansas's One-Year Statute of Limitations

Under Kansas law, a plaintiff asserting defamation—libel or slander—must bring the cause of action within one year of it accruing.  Kan. Stat. Ann. § 60-514(a).  "Accrual of this one-year term begins at the time the defamatory acts or remarks take place." *Jones v. Res-Care Kan., Inc.*, No. 20-CV-01017-EFM-KGG, 2020 WL 3034816, at *2 (D. Kan. June 5, 2020) (citing *MNM Invs., LLC v. HDM, Inc.*, No. 18-1267-EFM-KGG, 2019 WL 3430553, at *6 (D. Kan. July 30, 2019) (applying Kansas law)).  "Thus, under Kansas law, any action for defamation pled one year after the alleged defamation is published or spoken is time-barred." *Lee v. Reed*, 221 F. Supp. 3d 1263, 1271 (D. Kan. 2016).

"Each communication of a defamatory statement to a third person generally constitutes a new publication and gives rise to a separate cause of action against the publisher." *Wright v. Bachmurski*, 29 P.3d 979, 984 (Kan. Ct. App. 2001) (first citing 50 Am. Jur. 2d *Libel and Slander* § 260, p.51; then citing Restatement (Second) of Torts § 577A, cmt. a (1977)).  If a person who communicates the original defamatory material "could have reasonably expected" republication "as a natural and probable consequence of the defamatory communication" then liability may attach to that person for republication to the original defamer.  *Id.* at 985 (discussing individual defendants' liability for newspaper's publication after defendants reported defamatory material to a reporter).  But, under the "single publication" rule, a single issue of a newspaper or book gives rise to only one cause of action.  *Id.* (citing Restatement (Second) of Torts § 577A (1977)).  So, if defendant could have reasonably expected republication of his or her defamatory statements, then plaintiff may state a claim against that defendant for a

republished statement within the statute of limitations even if the original statement is time-barred.

### D. Judicial Proceedings Privilege

"Judicial proceedings are absolutely privileged communications, and statements [made] in the course of litigation otherwise constituting an action for slander, libel, or one of the invasion of privacy torts involving publication, are immune from such actions." *Froelich v. Adair*, 516 P.2d 993, 997 (Kan. 1973).  "This absolute privilege extends immunity to parties to private litigation and to anything published in relation to a matter at issue in court, whether said in pleadings, affidavits, depositions or open court." *Id.*  "[R]eports of judicial proceedings are also considered privileged but traditionally a separate, . . . strict[er] rule has obtained as to them in recognizing a qualified privilege." *Gobin v. Globe Publ'g Co*., 531 P.2d 76, 80 (Kan. 1975). "The publication, to be privileged, must contain only that which happened in the due course of the proceedings, and any matter added thereto by the publisher defamatory of plaintiff is not privileged." *Id.* (internal quotation marks and citation omitted).

> 2. Defamation Claims Asserted by Plaintiffs Ephraim Woods, Jr., Dwight Johnson, and Raasikh Robertson

Plaintiffs Ephraim Woods, Jr., Dwight Johnson, and Raasikh Robertson's Petitions all allege that Kendra Ross committed defamatory acts by (1) appearing on NBC's *Today Show* in an interview with Megyn Kelly, (2) "paving the way" for A&E's *Cults and Extreme Belief* broadcast about the UNOI, and (3) litigating her claims in *Ross v. Jenkins*. *See* Doc. 1-1 at 30–33 (Petition); *see also* Exhibit A to Notice of Removal (Petition), *Johnson v. Ross*, No. 21-2013 (D. Kan. Jan. 11, 2021), ECF No. 1-1; Exhibit A to Notice of Removal (Petition), *Robertson v. Ross*, No. 21-2014 (D. Kan. Jan. 11, 2021), ECF No. 1-1.  Plaintiffs allege economic and non-economic damages resulting from this alleged defamatory conduct. *See* Doc. 1-1 at 32–33.

Below, the court considers each instance of alleged defamation.  As the analysis explains, the court concludes that none can withstand Kendra's motions.

A.  Kendra's Interview on NBC's *Today Show*

Plaintiffs Woods, Johnson, and Robertson claim Kendra Ross committed defamation by appearing in an interview with Megyn Kelly on NBC's *Today Show* on October 3, 2018.  Doc. 1-1 at 31.  They contend:  "Kendra Ross decided with *specific intent* to spread her fraudulent claims by appearing on national television by making a personal appearance on the NBC Today Show with Megyn Kelly without presenting one shred of evidence or 1st hand witness to validate her false allegations[.]"  *Id.*  They allege "[n]ot even her biological mother Cheryl Ross as a witness was present[.]"  *Id.*  Plaintiffs have failed to state a claim for relief based on this interview for at least two reasons.

*First*, plaintiffs fail to plead sufficiently the claim that Kendra communicated any false or defamatory material in her interview on October 3, 2018.  Plaintiffs are required to plead facts, that if proven true, "would allow a reasonable person to consider the statement false."  *See Tannerite Sports, LLC*, 864 F.3d at 247; *see also Brokers' Choice*, 861 F.3d at 1105 (explaining "a defamation complaint cannot couch allegations of falsity in vague, conclusory terms")*.*  Plaintiffs assert simply that Kendra spread "fraudulent claims" during this interview, but they fail to provide any facts supporting this conclusory allegation.  Indeed, none of them ever identify the allegedly false statements made during the interview.  *See* Doc. 1-1 at 28–32.  The legal conclusion that Kendra "spread her fraudulent claims" and did not present "one shred of evidence or 1st hand witness to validate her false allegations" fails to plead facts capable of supporting the falsity element of a defamation claim.  *See, e.g.*, *Brokers' Choice*, 861 F.3d at 1105.

31

*Second*, even if Kendra had uttered falsities about each plaintiff during this 2018 interview, Kansas's one-year statute of limitations would bar them from suing for defamation. *See Lee*, 221 F. Supp. 3d at 1271 ("[U]nder Kansas law, any action for defamation pled one year after the alleged defamation is published or spoken is time-barred."). Plaintiffs allege Kendra appeared in an interview with Megyn Kelly on October 3, 2018. *See* Doc. 1-1 at 31. But plaintiffs filed their Petitions in state court during 2020—more than one year after the interview's broadcast. Plaintiff Ephraim Woods, Jr. filed his Petition in the District Court of Wyandotte County, Kansas on September 9, 2020. Doc. 1-1 at 24 (Petition) (stamp reads: "FILED 2020 Sep -9"). The other two plaintiffs filed their actions on September 11, 2020. *See* Exhibit A to Notice of Removal (Petition), *Johnson v. Ross*, No. 21-2013 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 19 (stamp reads: "FILED 2020 Sep 11"); Exhibit A to Notice of Removal (Petition), *Robertson v. Ross*, No. 21-2014 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 8 (same). Thus, this broadcast cannot support an actionable defamation claim. *See Lee*, 221 F. Supp. 3d at 1271.

### B.  A&E's Broadcast of *Cults and Extreme Belief*

Next, these three plaintiffs allege "Kendra Ross' national television appearance on the NBC Today Show with Megyn Kelly (and her attorney Elizabeth Hutson) paved the way for an episode on the A&E series entitled 'Cults and Extreme Belief' S01:E04 – U.N.O.I. to be broadcast nationwide on cable T.V. and the internet; once again labeling our community as a 'cult.'" Doc. 1-1 at 31. Plaintiffs Woods and Johnson allege two web addresses where one may view videos of this broadcast, that label the UNOI community a "cult." *See id.*[10] They allege

---

[10]     The court properly may consider documents or materials plaintiffs reference in their Petitions without converting a motion to dismiss to a motion for summary judgment. *See Brokers' Choice*, 861 F.3d at 1103 (holding on a 12(b)(6) motion the "district court may, however, consider documents attached

that "[a]s of the date of this filing the video can be viewed publically at" the two listed web

addresses.  *Id.* at 31.  The first web address plaintiffs list has since removed the video for public

viewing because the "video contains content from A+E Networks, who has blocked it on

copyright grounds."  *See Cults and Extreme belief (U.N.O.I) United Nation of Islam*, YOUTUBE

(Apr. 6, 2020), https://www.youtube.com/watch?v=lx5dU-UVg60 (last visited July 16, 2021).

Plaintiffs' second web address links to a video on After Buzz TV, seemingly unaffiliated with

A&E, which is a podcast discussing A&E's *Cults and Extreme Belief* episode 4 titled "U.N.O.I."

*See Cults and Extreme Belief S:1 | U.N.O.I. E:4 | AfterBuzz TV AfterShow*, AFTERBUZZTV,

https://www.afterbuzztv.com/cults-and-extreme-belief-s1-u-n-o-i-e4-afterbuzz-tv-aftershow/

(last visited July 16, 2021).[11]  Neither source links to the A&E episode plaintiffs describe in their

Petitions.  For at least two reasons, plaintiffs have failed to allege a claim for defamation against

Kendra based on A&E's *Cults and Extreme Belief* broadcast.

     *First*, plaintiffs fail to allege facts sufficient to provide notice of their defamation claim.

To state a defamation claim, plaintiffs must allege facts sufficient to provide notice to defendant.

*See McCoy*, 2018 WL 4375111, at *15 (collecting cases discussing sufficiency requirement for

defamation).  While plaintiffs identify Episode 4 of *Cults and Extreme Belief* as the alleged

defamatory conduct, they fail to plead any other details about the alleged defamation that would

provide sufficient notice to the defendants.  Plaintiffs fail to identify (1) any defamatory

---

to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" (internal quotation marks omitted)).

[11]    It's unclear how the links that plaintiffs list in their Petitions support their defamation claim against Kendra for a *Cults and Extreme Belief* episode about UNOI.  But, even if the court considered these sources as alleged defamatory conduct, plaintiffs fail to plead any facts supporting falsity within them.  So, to the extent these videos constitute another alleged defamatory act, plaintiffs have failed to plead sufficient facts supporting such a claim.  *Brokers' Choice*, 861 F.3d at 1105 (plaintiffs cannot couch claims of falsity in "vague, conclusory terms").

statements, (2) if any statements are attributable to Kendra, or (3) when the defamatory conduct occurred.  *See Bank of Com. & Tr. Co. v. Dominique*, No. CV 07-1332-MLB, 2008 WL 11378844, at *2 (D. Kan. Aug. 22, 2008) (dismissing defamation counterclaim for failing "to allege who made the statements and to whom the statements were made" and for failing "to give a specific time frame for the alleged statements").  Plaintiffs' assertion that Kendra's interview "paved the way" for A&E's episode on the UNOI provides wholly insufficient notice about the defamatory conduct they claim and these allegations thus cannot support a defamation claim.

*Second*, plaintiffs fail to allege any facts supporting defamation's falsity element.  In Kansas, a defamation claim requires false statements.  *Dominguez v. Davidson*, 974 P.2d 112, 117 (Kan. 1999) (requiring defendant communicate "false and defamatory words").  Plaintiffs do not identify any statements within A&E's UNOI episode that a reasonable person could find as false.  *See* Doc. 1-1 at 31 (asserting only that Kendra's interview on NBC's *Today Show* "paved the way" for the episode that labelled the community a "cult").  Thus, plaintiffs have failed to plead any facts supporting falsity based on the A&E episode about the UNOI and thus they have failed to state a defamation claim based on A&E's broadcast.  *See Brokers' Choice*, 861 F.3d at 1105 (explaining "a defamation complaint cannot couch allegations of falsity in vague, conclusory terms").[12]

---

[12]  The court also could dismiss this defamation claim for a third independent reason:  it is time-barred.  The web addresses plaintiffs Woods and Johnson provide for this broadcast do not link to the alleged episode that plaintiffs describe in their Petitions.  But, the court has found the episode at another online address.  *See Cults and Extreme Belief, S 1 E 4 U.N.O.I.*, A&E (June 12, 2018), https://www.aetv.com/shows/cults-and-extreme-belief/season-1/episode-4 (last visited July 16, 2021).  A&E broadcast the episode in question on June 12, 2018.  *Id.*  The court may consider this episode without converting defendant's motion to dismiss to a motion for summary judgment because it comprises the entirety of one of plaintiffs' defamation claims and Kendra does not dispute the episode's authenticity.  *See Brokers' Choice*, 861 F.3d at 1103 (holding on a 12(b)(6) motion the "district court may, however, consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" (internal quotation marks omitted)).  Thus, to the extent plaintiffs contend Kendra committed a defamatory act when A&E

C.  Kendra's Federal Lawsuit, *Ross v. Jenkins*

Last, these three plaintiffs allege Kendra defamed them by associating plaintiffs with the

violations this court listed in its Order, in *Ross v. Jenkins*, No. 17-2547 (D. Kan.).  *See* Doc. 1-1

at 31 (quoting Memorandum and Order at 2, *Ross v. Jenkins*, No. 17-2547 (D. Kan. Mar. 16,

2020), ECF No. 266).  Plaintiffs do not identify any specific defamatory conduct but they do

quote the following language from this court's Order in that lawsuit:

> On September 15, 2017, plaintiff Kendra Ross filed a Complaint against Royall
> Jenkins, The Value Creators, Inc. (f/k/a The United Nation of Islam, Inc.), The
> Value Creators LLC, and The Value Creators, Inc. <u>Doc. 1</u>.  The Complaint asserts
> 16 federal and state law claims.  The federal claims include violations of the
> Trafficking Victims Protection Reauthorization Act ("TVPRA"), <u>18 U.S.C. §§</u>
> <u>1589</u>, <u>1590</u>, and <u>1595</u>, for **human trafficking and forced labor**; the Fair Labor
> Standards Act ("FLSA"), <u>29 U.S.C. §§ 201–219</u>, for **unpaid wages**; and the
> **Racketeer Influenced and Corrupt Organizations Act** ("RICO"), <u>18 U.S.C. §</u>
> <u>1961</u>.  Three groups of claims comprise the state law claims:  **(1) violations of**
> **human trafficking laws; (2) violations of minimum wage laws; and (3)**
> **violations of Kansas tort and quasi-contract law.**  Plaintiff asserted that
> defendants have violated **Kansas, New York, New Jersey, and Ohio human**
> **trafficking laws.**  Plaintiff [Kendra Ross] also claimed that defendants have
> violated minimum wages laws for those same states.  Finally, plaintiff alleged that
> defendants have violated Kansas laws for conversion, unjust enrichment, and both
> intentional and negligent infliction of emotional distress.  On May 23, 2018, the
> court entered default judgment against defendants Royall Jenkins, The Value
> Creators, Inc. f/k/a The United Nation of Islam, Inc., The Value Creators LLC, and
> The Value Creators, Inc (the "Judgment Debtors").  *See* <u>Doc. 41</u>.

*See* Doc. 1-1 at 31–32 (quoting Memorandum and Order at 2, *Ross v. Jenkins*, No. 17-2547 (D.

Kan. Mar. 16, 2020), ECF No. 266 (adding emphasis)).  Plaintiffs assert Kendra "knew after at

least 15 years of participation and membership with the United Nation of Islam that all of the

abovementioned statement . . . is false, misleading and is a complete breach of contract."  Doc.

1-1 at 32.  And, plaintiffs allege they suffered financial loss "due to the slanderous statements

made by Kendra Ross in her filing of August 17th, 2017 'VERIFIED COMPLAINT' in the

---

broadcasted the episode about the UNOI, Kansas's one-year statute of limitations would bar it because
plaintiffs didn't file their lawsuit until 2020—much more than a year after the episode aired.

UNITED STATES DISTRICT COURT[.]"  Doc. 1-1 at 32 (referencing Complaint, *Ross v. Jenkins*, No. 17-2547 (D. Kan. Sept. 15, 2017), ECF No. 1).  Liberally construing plaintiffs' Petitions, plaintiffs allege Kendra committed defamation when litigating her claims in *Ross v. Jenkins*.  These defamation claims fail to plead a plausible claim for at least three reasons.

*First*, plaintiffs fail to allege any facts alleging that Kendra—the only defendant at issue in this Order—made any false statements in her 2017 Complaint.  When a defamation claim includes a falsity element, plaintiffs must plead facts that, if proven true, permit a reasonable jury to find the statements are false.  *See Tannerite Sports, LLC*, 864 F.3d at 247.  Plaintiffs assert, repeatedly, that Kendra made false statements.  But they never allege any *facts* supporting this legal conclusion.  True, they allege general facts about accepting membership with the UNOI and take issue with how the community is profiled as a cult based on Kendra's lawsuit.  But plaintiffs never identify any falsity within Kendra's filings or her other statements as part of the lawsuit that would allow a reasonable person to believe Kendra made a false statement.  In short, plaintiffs have failed to plead facts supporting a defamation claim.

*Second*, Kansas's statute of limitation bars any defamation claim based on Kendra's 2017 Complaint in *Ross v. Jenkins*.  As discussed above, plaintiffs filed their Petitions in state court on September 9, 2020, and September 11, 2020.  *See supra* Section A.  Plaintiffs list damages resulting from Kendra's "VERIFIED COMPLAINT," which they assert that Kendra filed on August 17, 2017.  *See* Doc. 1-1 at 32.  According to this court's docket, Kendra filed her Complaint in *Ross v. Jenkins* on September 15, 2017.  Complaint, *Ross v. Jenkins*, No. 17-2547 (D. Kan. Sept. 15, 2017), ECF No. 1.[13]  So, even if the court uses the later date—September 15,

---

[13]      The court "may 'take judicial notice of its own files and records, as well as facts which are a matter of public record,' without converting a motion to dismiss into a motion for summary judgment."  *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006)).  "However, '[t]he documents may only be considered to show their contents, not to

2017—plaintiffs' claims still are time-barred because they filed their Petitions more than one-year after the alleged defamatory conduct occurred.  *See Lee*, 221 F. Supp. 3d at 1271 ("[U]nder Kansas law, any action for defamation pled one year after the alleged defamation is published or spoken is time-barred.").

*Third*, Kendra's statements made in the course of judicial proceedings—including filings—cannot form the basis for a defamation claim because they are absolutely immune from liability under Kansas law.  Plaintiffs' Petitions assert Kendra committed defamation in *Ross v. Jenkins*'s judicial proceedings and they lost revenues "due to the slanderous statements made by Kendra Ross in her filing of August 17th, 2017 'VERIFIED COMPLAINT[.]'"  Doc. 1-1 at 32–33.  But Kansas law confers absolute immunity on a private litigant's statements made in the course of judicial proceedings—which includes court filings.  *See Froelich*, 516 P.2d at 997.  So, plaintiffs' claims based on Kendra's statements in court filings cannot support a defamation claim and the court thus dismisses this cause of action with prejudice.

### D.  Summary

In short, all three defamation claims asserted by plaintiffs Dwight Johnson and Raasikh Robertson fail to state a plausible claim for relief.  The court thus grants defendant Kendra Ross's Motions to Dismiss the defamation claims asserted in their Petitions in Case Nos. 21-2013 and 21-2014.  The court likewise grants Kendra's motion seeking to dismiss plaintiff Ephraim Woods, Jr.'s defamation claims in Case No. 21-2011 that Kendra defamed "the community" in her interview with Megyn Kelly on NBC's *Today Show*, in the A&E network's broadcast entitled *Cults and Extreme Belief*, and in her lawsuit before this court, Case No. 17-

---

prove the truth of matters asserted therein.'"  *Tal*, 453 F.3d at 1264 n.24 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).  This principle extends to the date of such filings.

2547.

>3.   Plaintiff Ephraim Woods, Jr.'s Individualized Claim for Defamation

The analysis above leaves an individualized claim asserted only by plaintiff Ephraim

Woods, Jr.  He alleges Kendra defamed him in her 2017 Complaint in *Ross v. Jenkins* when she

"name[d]" him as a defendant and falsely claimed "'all named **Defendants** directly and

knowingly benefitted financially and otherwise from trafficking Ms. Ross[.]'"  Doc. 1-1 at 30.[14]

He also alleges Kendra "subsequently harassed me and my family at my home and other

locations for two and a half years (and counting) with hundreds of *false* claim court documents,

phone calls, [and] depositions[.]"  *Id.* at 31.  Mr. Woods also asserts Kendra "terrorized [him]

personally with Federal Marshal[ ] law enforcement officers coming to [his] home and . . .

arresting [him] in the federal court building District of Kansas, Kansas City Division under the

guise of mistaken identity . . . ."  *Id.*  Mr. Woods's claim fails for at least three reasons.

*First*, plaintiff Woods has failed to plead facts supporting falsity, defamation's first

element.  The Petition filed by Mr. Woods never identifies any of Kendra's allegedly false

statements.  *See* Doc. 1-1 at 30–31.  Instead, he asserts merely that he and his family were

harassed "with hundreds of *false* claim court documents[.]"  *Id.* at 31.  On a motion to dismiss,

the court assumes all properly pleaded facts are true but it may ignore conclusory statements.

*See Khalik*, 671 F.3d at 1191 (on a motion to dismiss, the court "will disregard conclusory

statements").  And, as explained above, defamation plaintiffs must plead sufficient facts that, "if

proven true, would allow a reasonable person to consider the statement false."  *Tannerite Sports,*

*LLC*, 864 F.3d at 247; *see Brokers' Choice*, 861 F.3d at 1105 (explaining "a defamation

---

[14]      Contrary to Mr. Woods's allegation, Kendra's Complaint in 2017 didn't name Ephraim Woods, Jr. as a defendant.  *See* Complaint, *Ross v. Jenkins*, No. 17-2547 (D. Kan. Sept. 15, 2017), ECF No. 1. Instead, it alleged that defendant The Value Creators LLC "had at least three members:  Defendant Jenkins, Mr. Ephraim Woods, and Mr. William Green."  *Id.* at 5.

complaint cannot couch allegations of falsity in vague, conclusory terms").  Plaintiff Woods's

conclusion that Kendra defamed him through "*false* claim court documents" alleges no such

facts.  He has failed to allege that Kendra made a false statement and thus fails to plead

defamation sufficiently.

*Second*, Mr. Woods's defamation claims based on Kendra's Complaint are time-barred.

Mr. Woods does not identify any of Kendra's "*false* claim court documents" other than her

Complaint.  *See* Doc. 1-1 at 30–31.  Kendra filed her Complaint on September 15, 2017.

Complaint, *Ross v. Jenkins*, No. 17-2547 (D. Kan. Sept. 15, 2017), ECF No. 1.  And Mr. Woods

filed his Petition in the District Court of Wyandotte County, Kansas on September 9, 2020,

almost three years after Kendra filed her Complaint.  Doc. 1-1 at 24 (Petition) (stamp reads:

"FILED 2020 Sep -9").  *See Lee*, 221 F. Supp. 3d at 1271 ("Thus, under Kansas law, any action

for defamation pled one year after the alleged defamation is published or spoken is time-

barred.").  So, Kansas's one-year statute of limitations bars plaintiff Woods's defamation claim

based on Kendra's 2017 Complaint.

*Third*, Kendra's statements in *Ross v. Jenkins*'s judicial proceedings are absolutely

immune from defamation liability and thus cannot support a defamation claim.  Kansas law

recognizes absolute immunity for private litigant's statements made in the course of judicial

proceedings which includes court filings.  *See Froelich*, 516 P.2d at 997.  Plaintiff Woods alleges

he suffered damages from Kendra's "slanderous" actions in *Ross v. Jenkins*.  But, this cannot

support a claim for defamation against Kendra because Kendra's statements made in the course

of judicial proceedings are absolutely immune from liability.  The court thus dismisses this cause

of action with prejudice.

In sum, plaintiff Ephraim Woods, Jr.'s individualized claim for defamation in Case No.

21-2011 fails to state a claim on which relief may be granted.  The court thus grants Kendra

Ross's Motion to Dismiss Mr. Woods's claim that she defamed him by naming him as a

defendant in Case No. 17-2547 or by causing "false claim documents" to issue.

4.   Plaintiff Fatimah Muhammad's Defamation Claim

The analysis to-date leaves several claims made only by plaintiff Fatimah Muhammad.

All of the claims made in Ms. Muhammad's Petition rely solely on Kendra's federal lawsuit,

*Ross v. Jenkins*, No. 17-2547.  Ms. Muhammad avers that "the Kendra vs Jenkins Verified

Complaint . . . . labeled [the UNOI] as 'radicals' which is intently misrepresenting the United

Nation of Islam and the people associated with the United Nation of Islam."  Exhibit A to Notice

of Removal (Petition), *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at

32.  In response to Kendra's federal lawsuit, Ms. Muhammad alleges, "[m]any customers and

businesses that used to patronize us no longer patronize."  *Id.*  She contends "[m]any former

customers have gone as far as calling our establishments cursing us out because of what they

read online concerning the Kendra Ross court case, causing unnecessary stress."  *Id.*  Ms.

Muhammad purports to "have 1st hand knowledge of the impact that the court case has on our

community and Members because [she] was one of the few that received the degrading calls

from prior customers informing us of what they have read online concerning the court case and

due to the impact of what they read we were then profiled as a human trafficking cult."  *Id.*  Ms.

Muhammad asserts that this profiling "can be verified by following [certain] links on the

internet[.]"  *Id.*  She lists six articles and two episodes of *Cults and Extreme Belief*, but she never

identifies any defamatory conduct attributable to Kendra.  *Id.* (listing articles and episodes from

A&E's *Cults and Extreme Belief* which "profile" the community as a cult but failing to assert

that Kendra made any defamatory statements in these sources).  Ms. Muhammad asserts that

seeing her community "torn down and slandered" and "all on the account of a lie from Kendra and a lack of proper investigation on Kendra Ross'[s] lawyers' part" created a stressful experience for her. *Id.* at 33. The court grants the Motion to Dismiss Ms. Muhammad's defamation claim, which rests on Kendra's federal lawsuit in *Ross v. Jenkins* for the following three reasons.

*First*, Ms. Muhammad fails to plead any facts capable of supporting a finding of falsity. Ms. Muhammad does not identify any false statement by Kendra, nor does she aver any facts that would permit a jury to find (or infer) that Kendra made such false statements. *See Tannerite Sports, LLC*, 864 F.3d at 247; *see also Brokers' Choice*, 861 F.3d at 1105 (explaining "a defamation complaint cannot couch allegations of falsity in vague, conclusory terms").

*Second*, Kansas's one-year statute of limitations bars Ms. Muhammad's defamation claim based on Kendra's 2017 Complaint. "[U]nder Kansas law, any action for defamation pled one year after the alleged defamation is published or spoken is time-barred." *Lee*, 221 F. Supp. 3d at 1271. Ms. Muhammad filed her Petition on September 11, 2020, so any defamatory conduct published before September 11, 2019, is time-barred. *See* Exhibit A to Notice of Removal (Petition), *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 11, 2021), ECF No. 1-1 at 24 (stamp reads: "FILED 2020 Sep 11"). Kendra filed her Complaint in *Ross v. Jenkins* on September 15, 2017. Complaint, *Ross v. Jenkins*, No. 17-2547 (D. Kan. Sept. 15, 2017), ECF No. 1. So, Kansas's one-year statute of limitations bars any defamation claim based on this Complaint.

*Third*, Kansas law precludes liability against Kendra for any defamatory statement made in the course of judicial proceedings and anything published about such proceedings. "[A]bsolute privilege extends immunity to parties to private litigation and to anything published in relation to a matter at issue in court, whether said in pleadings, affidavits, depositions or open

court." *Froelich*, 516 P.2d at 997.  Ms. Muhammad alleges Kendra defamed "the community"
by filing her federal lawsuit and through Kendra's allegations in her 2017 Complaint.  *See*
Exhibit A to Notice of Removal (Petition), *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan. 11,
2021), ECF No. 1-1 at 32.  But Kansas provides absolute immunity from liability for such
statements, even if these statements would otherwise constitute defamation.  *Id.*  And Kansas law
provides absolute immunity to Kendra for anything published based on her statements made in
the course of judicial proceedings.  *See id.*[15]

Plaintiff Fatimah Muhammad's Petition fails to allege a defamation claim that can
withstand Kendra's Motion to Dismiss.  The court thus dismisses all defamation claims against
Kendra Ross in Case No. 21-2012.

### 5.   Summary of Plaintiffs' Defamatory Claims

In sum, the court dismisses all of the defamation claims asserted in Case Nos. 21-2011,
21-2012, 21-2013, and 21-2014 with prejudice.  "[D]ismissal with prejudice is appropriate where
a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be
futile[.]"  *Knight*, 749 F.3d at 1190 (internal quotation marks omitted).  As discussed above,
Kansas's one-year statute of limitations bars plaintiffs' defamation claims based on Kendra's
2017 complaint and interview with Megyn Kelly.  No amount of amendment could reset the
calendar and cure these claims' statute of limitation problems.  And, plaintiffs cannot support a

---

[15]    Ms. Muhammad's Petition also alleges that eight sources "verify" the profiling of the UNOI as a
human trafficking cult.  *See* Exhibit A to Notice of Removal, *Muhammad v. Ross*, No. 21-2012 (D. Kan.
Jan. 11, 2021), ECF No. 1-1 at 32–33.  The vast majority of these sources were published more than a
year before Ms. Muhammad filed suit on September 11, 2020.  So, even if plaintiff could sue Kendra for
statements written by others, Kansas's one-year statute of limitations would bar a defamation claim based
on these articles.  *See id.* (listing articles dated between May 25, 2018 to September 10, 2019); *Lee*, 221
F. Supp. 3d at 1271.  As for the few undated sources cited in Ms. Muhammad's Petition, plaintiff never
alleges that Kendra made any defamatory statements in them.  In short, Ms. Muhammad has failed to
plead facts sufficient to support a defamation claim against Kendra for these sources.

defamation claim against Kendra for "pav[ing] the way" for A&E's characterization of the UNOI. *See* Doc. 1-1 at 31. Plaintiffs haven't cited any authority supporting the gist of this defamation claim, *i.e.*, that Kendra is legally responsible for statements that others made. No amendment could fix this deficiency in plaintiffs' Petitions. So, the court dismisses plaintiffs' defamation claims with prejudice.

The court's analysis, above, explains the reasons warranting this result. The chart below summarizes the court's reasons for its ruling on each claim of defamation.

| Alleged Conduct | Failure to Plead Sufficiently | Failure to Plead Falsity | Time-Barred | Judicial Proceeding |
|---|---|---|---|---|
| Kendra's 2018 interview on NBC's *Today Show* | | X | X | |
| A&E's *Cults and Extreme Belief* Season 1 Episode 4 U.N.O.I. | X | X | | |
| 2017 Complaint in *Ross v. Jenkins* | | X | X | X |
| 2017 Complaint in *Ross v. Jenkins* listing Ephraim Woods | | X | X | X |

  *iv.*    *Conclusion*

For reasons explained by this Order, the court concludes that all four plaintiffs have failed to assert a claim for breach of contract or defamation that can survive Kendra's Motions to Dismiss. In sum, none of those claims state a claim on which the court could grant relief. The court thus grants the following four Motions to Dismiss and the request within each motion to dismiss all claims against defendant Kendra Ross:

- Motion to Dismiss, *Woods v. Ross*, No. 21-2011 (D. Kan. Jan. 15, 2021), ECF No. 5.

- Motion to Dismiss, *Muhammad v. Ross*, No. 21-2012 (D. Kan. Jan.15, 2021), ECF No. 5.
- Motion to Dismiss, *Johnson v. Ross*, No. 21-2013 (D. Kan. Jan. 15, 2021), ECF No. 5.
- Motion to Dismiss, *Robertson v. Ross*, No. 21-2014 (D. Kan. Jan. 15, 2021), ECF No. 4.

Consistent with this ruling, the court directs the Clerk of the Court to terminate Kendra Ross as a defendant in these four actions.  Also, the court denies Kendra Ross's request for oral argument on her Motions to Dismiss.

## VI.   PLAINTIFFS' MOTIONS TO STRIKE

All four plaintiffs ask the court to "strike or quash all of KENDRA Ross' paperwork/filings on the grounds of wrong jurisdiction and wrong venue per 18 USC 3231." Doc. 21 at 5.  Plaintiffs cite 18 U.S.C. § 3231 and argue that this statute requires that "the court that we are to be in is 'district courts **of** the United States' not the 'UNITED STATES **FOR** THE DISTRICT OF KANSAS.'"  *Id.* at 1.  Also, they argue dismissal is warranted because this is not a court of the State and removal was untimely.  *Id.*  Plaintiffs' Motions to Strike also assert that Royall Jenkins, who is not a party to this case, was denied due process when the court did not allow him to practice law without a license on behalf of UNOI and successor organizations.  *See id.*  Plaintiffs also argue that Kendra prevailed in her 2017 lawsuit based on a due process violation and fraud affecting Mr. Jenkins's protected rights.  *Id.* at 3.

Plaintiff Ephraim Woods, Jr. separately argues Kendra's 2017 Complaint—in *Ross v. Jenkins*, No. 17-2547 (D. Kan. Sept. 15, 2017), ECF No. 1—included such offensive material and constituted "slander, defamation, avarice, self-aggrandizement, religious persecution, racial bias, Actual and Constructive fraud" perpetuated by Kendra's attorneys.  *See* Doc. 26 at 7.  He argues, "BECAUSE these actions were launched against a peaceful Righteous community the damages go beyond scandalous; [they're] actually demonic and devilish to the nth degree[.]"  *Id.*

44

His motion asserts, egregiously, that "[i]n today's climate with the David Chauvin trial in progress and other upheavals all over the world taking place; it is not going to bode well for these law firms, school OR any house negro, uncle Tom, pseudo Black person that support this type of wrongdoing[,]" and further that "[a]ny 'reasonably prudent person' would NOT want to be on that side of history when it is written." *See* Doc. 26 at 8.

These invectives provide no reason for the court to grant plaintiffs' Motions to Strike. The court denies plaintiffs' Motions to Strike for the following reasons.

Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The court finds no such material in any of Kendra's filings in her case. Likewise, plaintiffs have failed to identify any such material in these lawsuits. All plaintiffs argue that Royall Jenkins's rights were violated in *Ross v. Jenkins*, No. 17-2547 (D. Kan.). But, the *Ross v. Jenkins* case is closed. Kendra prevailed in that case because the defendants in that action chose not to respond to the Complaint as required by the Federal Rules of Civil Procedure. In short, the defendants chose not to contest the claims asserted against them there. The plaintiff, Kendra, won by default. These plaintiffs—none of whom were named as defendants in that action—have no standing to reopen that civil action. Nor may they make arguments on Royall Jenkins's behalf. So, the court denies plaintiffs' Motions to Strike.

Plaintiffs also argue that Christopher Dove, Kendra's attorney, failed to sign documents in compliance with Rule 11. *See* Doc. 26 at 8. Our local rules allow attorneys to sign filings electronically. See D. Kan. Rule 5.4.8(b). On review, Mr. Dove's filings comply with our local rules for signatures. Plaintiffs' argument has no merit.

In sum, the court denies the following Motions to Strike:

- Motion to Strike, *Woods v. Ross*, No. 21-2011 (D. Kan. Mar. 17, 2021), ECF No. 21.
- Motion to Strike, *Muhammad v. Ross*, No. 21-2012 (D. Kan. Mar. 17, 2021), ECF No. 20.
- Motion to Strike, *Johnson v. Ross*, No. 21-2013 (D. Kan. Mar. 17, 2021), ECF No. 20.
- Motion to Strike, *Robertson v. Ross*, No. 21-2014 (D. Kan. Mar. 17, 2021), ECF No. 17.

## VII.   PLAINTIFFS' MOTIONS FOR MISCELLANEOUS RELIEF

Finally, on May 27, 2021, each plaintiff filed a "Motion for district court to Rule that Attorney Christopher S. Dove violated 45 CFR 681.10 and failed to validate his claim by Failure to Prosecute." *See* Doc. 31.  Plaintiffs argue "removal from the county court is in violation of 45 CFR 681.10 for unlawful removal and," for Rule 11 sanctions on Mr. Dove for "abuse and the misuse of this district court and this party to deny a fair and impartial court hearing[.]"  *Id.* at 1.  For the above reasons, plaintiffs move "for one of the following:  1. Step down and replace with another judge who can be impartial or, 2. Set a speedy trial by jury/jury trial or, 3. Render a court order and grant [them] a default judgment."  *Id.* at 3.   In seeking relief, plaintiffs assert "Kendra Ross was not a victim as her attorneys have misled this district court to believe and the facts are pointing to this being a cover up to prevent these entities/firms from being sued for false misleading and abuse and use of this district court."  *Id.* at 3.  Kendra has responded.  *See* Doc. 33.  The court denies plaintiffs' motions for two independent reasons.

*First*, plaintiffs cite "45 CFR 681.10" to support their request.  *Id.* at 1.  But 45 C.F.R. § 681.10's penalties for failing to file an answer apply to administrative proceedings seeking to impose "civil penalties and assessments against persons who make, submit, or present, or cause to be made, submitted or presented, false, fictitious, or fraudulent claims or written statements to [The National Science Foundation]."  *See* 45 C.F.R. § 681.1.  This lawsuit is not an administrative proceeding.

*Second*, plaintiffs' request for sanctions fails under Rule 11.  "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  Plaintiffs ask the court for multiple forms of relief in this motion.  But plaintiffs have failed to describe specific conduct violating Rule 11(b).  So, the court denies plaintiffs' motions.

The court denies all of the following Motions for Miscellaneous Relief:

- Motion for Miscellaneous Relief, *Woods v. Ross*, No. 21-2011 (D. Kan. May 27, 2021), ECF No. 31.
- Motion for Miscellaneous Relief, *Muhammad v. Ross*, No. 21-2012 (D. Kan. May 27, 2021), ECF No. 30.
- Motion for Miscellaneous Relief, *Johnson v. Ross*, No. 21-2013 (D. Kan. May 27, 2021), ECF No. 30.
- Motion for Miscellaneous Relief, *Robertson v. Ross*, No. 21-2014 (D. Kan. May 27, 2021), ECF No. 27.

## VIII.   CONCLUSION

Kendra Ross has sufficiently alleged diversity jurisdiction exists for the court to have subject matter jurisdiction.  The court thus may exercise jurisdiction over these four cases.  The Petitions in all four actions fail to state a claim for relief under Kansas law, so the court dismisses all of plaintiffs' claims against Kendra Ross.  The court finds plaintiffs' filings are without merit, for the above reasons, so, the court denies all of plaintiffs' motions, as listed below.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the following motions in *Woods v. Ross*, No. 21-2011, are decided as follows:

- Defendant's Motion to Dismiss (Doc. 5) is granted.  The court dismisses with prejudice defendant Kendra Ross from Case No. 21-2011.

- Plaintiff's Motion to Remand (Doc. 7) is denied.

- Plaintiff's Motion for Default Judgment (Doc. 11) is denied.

- Defendant's Motion for Leave to File Opposition to Motion for Default Out of Time (Doc. 18) is granted.

- Plaintiff's Motion to Strike (Doc. 21) is denied.

- Plaintiff's Motion for Recusal (Doc. 23) is denied.

- Plaintiff's Motion to Transfer Case (Doc. 29) is denied.

- Plaintiff's Motion for Miscellaneous Relief (Doc. 31) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** the following motions in *Muhammad v. Ross*, No. 21-2012, are decided as follows:

- Defendant's Motion to Dismiss (Doc. 5) is granted.  The court dismisses with prejudice defendant Kendra Ross from Case No. 21-2012.

- Plaintiff's Motion to Remand (Doc. 7) is denied.

- Plaintiff's Motion for Default Judgment (Doc. 11) is denied.

- Defendant's Motion for Leave to File Opposition to Motion for Default Out of Time (Doc. 17) is granted.

- Plaintiff's Motion to Strike (Doc. 20) is denied.

- Plaintiff's Motion for Recusal (Doc. 22) is denied.

- Plaintiff's Motion to Transfer Case (Doc. 28) is denied.

- Plaintiff's Motion for Miscellaneous Relief (Doc. 30) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** the following motions in *Johnson v. Ross*, No. 21-2013, are decided as follows:

- Defendant's Motion to Dismiss (Doc. 5) is granted.  The court dismisses with prejudice defendant Kendra Ross from Case No. 21-2013.

- Plaintiff's Motion to Remand (Doc. 7) is denied.

- Plaintiff's Motion for Default Judgment (Doc. 11) is denied.

- Defendant's Motion for Leave to File Opposition to Motion for Default Out of Time (Doc. 17) is granted.

- Plaintiff's Motion to Strike (Doc. 20) is denied.

- Plaintiff's Motion for Recusal (Doc. 22) is denied.

- Plaintiff's Motion to Transfer Case (Doc. 28) is denied.

- Plaintiff's Motion for Miscellaneous Relief (Doc. 30) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** the following motions in *Robertson v. Ross*, No. 21-2014, are decided as follows:

- Defendant's Motion to Dismiss (Doc. 4) is granted.  The court dismisses with prejudice defendant Kendra Ross from Case No. 21-2014.

- Plaintiff's Motion to Remand (Doc. 9) is denied.

- Plaintiff's Motion to Strike (Doc. 17) is denied.

- Plaintiff's Motion for Recusal (Doc. 19) is denied.

- Plaintiff's Motion to Transfer Case (Doc. 25) is denied.

- Plaintiff's Motion for Miscellaneous Relief (Doc. 27) is denied.

**IT IS SO ORDERED.**

**Dated this 20th day of July, 2021, at Kansas City, Kansas.**

s/Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**